UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TYRONE RODRIGUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-359 (ESH) |
| | ) | |
| MICHAEL CHERTOFF, | ) | |
| | ) | |
| Secretary, Department of | ) | |
| Homeland Security, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Michael Chertoff, through counsel, the United States Attorney for the District of Columbia, respectfully moves for summary judgment pursuant to Fed. R. Civ. P. 56, as there are no genuine issues of material fact and Defendant is entitled to judgment as a matter of law. Attached in support of this motion are a Memorandum of Points and Authorities and a Statement of Material Facts As To Which There Is No Genuine Issue.

Respectfully submitted,

___/s /_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

___/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

___/s/_____
ALEXANDER D. SHOAIBI, D.C. BAR #423587
Assistant United States Attorney
501 Third Street, N.W., Rm E-4218
Washington, D.C. 20530
(202) 514-7236
UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TYRONE RODRIGUEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-359 (ESH) |
| | ) |
| MICHAEL CHERTOFF, | ) |
| | ) |
| Secretary, Department of | ) |
| Homeland Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Michael Chertoff, Secretary of the Department of Homeland Security (hereinafter "Defendant" or "Agency"), respectfully moves to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted, or, in the alternative, for summary judgment based on the following points and authorities.

## I. STATEMENT OF THE CASE

A.    The Complaint

Plaintiff makes the following allegations in the section of his Complaint entitled "Brief Facts of the Case." He applied for a position with the Agency[1] in 1992. Prior to applying for a position with the Agency, Plaintiff was employed by the Department of Justice, Bureau of Prisons, as a Senior Correctional Officer/Case Manager. At the time Plaintiff applied for a position with the Agency, he had two college degrees, was fluent in Spanish, had served as a "State of Florida Investigator" and "former Army Combat Veteran," and was entitled to priority

---

[1] Although Plaintiff refers to the Agency as "Immigration and Naturalization Service" or "INS," INS was abolished in March 2003, and its functions were transferred to three newly created agencies within the Department of Homeland Security. Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 471, 116 Stat. 2135, 2192, 2205 (codified at 6 U.S.C. §§ 251, 271, 291 (2006)).

placement with the Agency.  Complaint (hereinafter "Compl.") at sentence 6 (sentence 1 on second page).  Plaintiff alleges that the application process was unreasonably delayed for years and that he had to submit to the background investigation and medical examination processes several times because the Agency claimed to have accidentally removed Plaintiff's name from the register and then refused to place Plaintiff "on a priority hire status based on the unreasonable delays[.]"  Plaintiff alleges that these facts indicate he was discriminated against for prior Equal Employment Opportunity ("EEO") activity.  Compl. at sentence 7 (sentence 2 on second page).

Plaintiff next alleges that the Agency "repeatedly" denied him employment and hired Mexican-American applicants, many of whom were not current Department of Justice employees.  Plaintiff alleges that the Agency "clearly showed through there [sic] rejection report" that a reason it did not hire Plaintiff was because of his prior EEO activity.  Plaintiff alleges that the Agency violated "ADA regulations" by relying on the opinion of its physician, while ignoring a positive recommendation by its "expert physician," Dr. Bartlett.  Compl., sentences 9-11 (sentences 1-3 on third page).  Plaintiff alleges that the Agency also violated "ADA policy and OPM policy" by not informing him of the "non-selection process." Compl. at sentence 12 (sentence 4 on third page).  Finally, Plaintiff alleges the Agency violated "ADA policy and good faith practices" when it did not ask Dr. Bartlett to evaluate Plaintiff a second time.  Compl. at sentence 14 (sentence 6 on third page).

In the section of his Complaint entitled "Conclusion," Plaintiff reiterates that the Agency "violated ADA practices" and discriminated against him and "labeled him disabled."  Compl. at sentence 19 (sentence 2 on fourth page).

## II. <u>STATEMENT OF FACTS</u>

In 1992, Plaintiff applied for the position of Border Patrol Agent with the Immigration and Naturalization Service ("INS" or "Agency").[2] Complaint (hereinafter "Compl.") at sentence 6; Exhibit A, p. 2..  By letter dated August 27, 1993, the Agency informed Plaintiff that "it has been almost a year since any individuals have been hired as trainee Agents," and requested that Plaintiff complete an attached inquiry form and return it to the Agency if Plaintiff was still interested in a Border Patrol Agent position. Exhibit B.  Subsequently, in a letter dated July 11, 1994, Plaintiff was informed by the Agency that he must reapply under a new application system.  Exhibit C.

On July 27, 1994, Plaintiff contacted and was interviewed by an Equal Employment Opportunity ("EEO") counselor in the Agency's EEO office.  During that interview, Plaintiff provided that he believed he was not selected by the Agency because he was Hispanic. Exhibit D, pp. 2-4.  By letter dated August 11, 1994, Plaintiff was notified that the Agency had tentatively selected him for the position of Border Patrol Agent (Trainee), pending satisfactory completion of the Agency's security requirements, medical examination and drug testing. Exhibit E.

During the Agency's background investigation of Plaintiff, Plaintiff told the investigator that while working for the Bureau of Prisons ("BOP") in Miami, Florida from 1990 to 1993, Plaintiff was subjected to harassment because other employees and inmates were jealous that he had applied for a position with the Drug Enforcement Agency.  Plaintiff told the investigator he

---

[2] Immigration and Naturalization Service was abolished in March 2003, and its functions were transferred to three newly created agencies within the Department of Homeland Security.  The U.S. Border Patrol was transferred to U.S. Customs and Border Protection, an agency within the Department of Homeland Security.  Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 471, 116 Stat. 2135, 2192, 2205 (codified at 6 U.S.C. §§ 251, 271, 291 (2006)).

was accused of "being a pervert, a pimp, a drug dealer, and even a pedophile." Plaintiff stated that in 1993, he transferred to a federal prison in Colorado, where he was subjected to the same type of harassment. According to Plaintiff, he resigned and began working for the Florida Department of Corrections ("DOC") in 1994. Plaintiff stated that while employed by DOC, he was subjected to the same sort of harassment he experienced while employed by BOP, and was additionally accused of having AIDS. Plaintiff speculated that someone at BOP was retaliating against him by spreading lies about him to his coworkers at DOC. Exhibit F.

Plaintiff stated that in May of 1995, he wrote a letter to the Secretary of DOC that was not well written because Plaintiff had been drinking, and was misinterpreted as threatening. Plaintiff stated that as a result of this letter and another incident, he was evaluated by a psychiatrist, Dr. Ballentine, and thereafter dismissed by DOC for not successfully completing his probationary period. Plaintiff stated that he went to another psychiatrist, Dr. Saavedra, for a second opinion. Plaintiff provided that Dr. Saavedra prescribed Plaintiff medication, but when he realized it was an anti-psychotic drug, he decided not to take it. Id.

By letter dated May 19, 1995, DOC requested that a psychiatrist, R.E. Ballentine, M.D., evaluate Plaintiff to determine whether he was able to perform his assigned duties as a Correctional Probation Officer. The letter advised Dr. Ballentine that Plaintiff wrote a letter to the Secretary of DOC which raised concerns regarding Plaintiff's ability to perform his assigned duties, his welfare and the safety of other employees. Exhibit G.

Dr. Ballentine's report of May 31, 1995, states that it is his opinion that Plaintiff was suffering from "a DSM IV diagnosis of Delusional Disorder-Persecutory Type," and that Plaintiff's delusions interfered with his ability to deal rationally with other people on the job. Exhibit H. The Agency's background investigator reported that psychiatrist Lillian Saavedra,

5

M.D., stated that she agreed with Dr. Ballentine's diagnosis of Plaintiff, but that Dr. Saveedra did not advise Plaintiff of such because she was afraid of how he might react. Exhibit I, pp. 3-4.

By letter dated February 21, 1997, Plaintiff was informed that before the Agency could make a final determination regarding his application, he must complete a psychological and psychiatric examination to be conducted by "Dr. Ted Bartlett." Exhibit J. Clinical psychologist Edmund S. Bartlett, Ph.D., conducted a psychological examination of Plaintiff on March 3, 1997, and reported that Plaintiff was within the range of acceptability for the position of Border Patrol Agent. Bartlett's report makes no mention of the harassment Plaintiff claimed to have been subjected to while employed by BOP and DOC. According to the report, Bartlett agreed with Plaintiff not to discuss Plaintiff's firing from DOC. Exhibit K.

By report dated May 21, 1997, Ted Schwartz, ACSW, reviewed Plaintiff's background investigation materials and concluded that Bartlett did not have sufficient background information, which rendered him unable to uncover Plaintiff's delusional disorder. Exhibit L, p.2.

In May 1997, Plaintiff was told by Security Officer Larry Kitt that Kitt believed it was unlikely Plaintiff would be hired by the Agency based on the results of Plaintiff's background investigation. Exhibit M, p. 6. Plaintiff sought EEO counseling on June 2, 1997, alleging that he was discriminated against on the bases of national origin (Puerto Rican) and reprisal for prior EEO activity when he was told he would not likely be hired by the Agency by Larry Kitt. Exhibit M, pp. 1-2. On August 14, 1997, Plaintiff filed his formal EEO complaint. Exhibit N.

By report dated November 12, 1997, Agency Medical Review Officer Bruce Butler, M.D., M.P.H., stated that he believed there was sufficient evidence to support Plaintiff's diagnosis of delusional disorder with persecutory features, that a delusional disorder is

incompatible with the safe and efficient performance of the duties and responsibilities of a Border Patrol Agent, and that he firmly recommends against placing Plaintiff in the position of Border Patrol Agent. Exhibit O, p. 1.

By letter dated December 31, 1997, the Agency accepted Plaintiff's complaint of discrimination on the bases of national origin (Puerto Rican) and reprisal (for previously seeking EEO counseling).  The issue to be investigated was as follows: "In May of 1997, you were informed that you may not be hired for the position of Border Patrol Agent (Trainee) as a result of your background investigation."  Exhibit P. [3]

On January 15, 1998, Velmenia Stanley, Chief, Border Patrol Hiring Unit, submitted an Agency Request to Pass Over a Preference Eligible or Object to an Eligible to the Office of Personnel Management ("OPM"), in which the Agency objected to Plaintiff's eligibility based on his mental/emotional condition.  Exhibit Q, Exhibit R, p. 2.  By letter dated March 9, 1998, Phillip Spottswood of OPM notified Plaintiff of OPM's conclusion that Plaintiff's medical condition presents an unacceptable safety and health risk and is likely to adversely affect his ability to perform the full range of duties required for the position of Border Patrol agent. Exhibit S.   By order dated June 8, 2000, the EEOC Administrative Judge granted Plaintiff's request to amend his complaint to include as a basis "perceived as a disabled individual." Exhibit T.

---

[3] While the documents in the Agency's possession do not indicate that Plaintiff's EEO complaint was ever amended to include the issue of his actual non-selection, the Agency will accept for purposes of this motion that it is Plaintiff's non-selection, not his receiving information that he *may not be* selected, which is at issue in this case.

### III. <u>STANDARD OF REVIEW</u>

A.    Motion to Dismiss for Failure to State a Claim

Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. <u>Browning v. Clinton</u>, 292 F.3d 235, 242 (D.C. Cir. 2002). The Court will accept as true all factual allegations in the complaint, and give the plaintiff the benefit of all inferences that can be drawn from the facts alleged. See <u>id</u>. at 1965; <u>Atchinson v. Dist. of Columbia</u>, 73 F.3d 418, 422 (D.C. Cir. 1996). A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) may be granted if it is beyond doubt that a plaintiff can demonstrate no set of facts that supports his claim for relief. See <u>Sparrow v. United Air Lines, Inc.</u>, 216 F.3d 1111, 1117 (D.C. Cir. 2000). However, "the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by the facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions." <u>Akintomide v. United States</u>, 99-MS-0055 (PLF), 2000 WL 1693739, at *1 (D.D.C. Oct. 31, 2000) (citing <u>National Treasury Employees Union v. United States</u>, 101 F.3d 1423, 1430 (D.C. Cir. 1996); <u>Kowal v. MCI Communication Corp.</u>, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). A complaint must present "enough facts to state a claim to relief that is plausible on its face," and "above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1965, 1974 (2007).

B.    <u>Summary Judgment</u>

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, (1986); <u>Diamond v. Atwood</u>, 43 F.3d 1538, 1540 (D.C. Cir. 1995). A disputed

issue of fact is genuine and material, precluding summary judgment, if a reasonable jury could find in favor of the non-moving party on that issue from the record evidence, and that finding could determine the outcome of the trial. Anderson, 477 U.S. at 248.

As a general rule, a court must assume the truth of all statements proffered by the party opposing summary judgment and construe all evidence in the light most favorable to the non-moving party.  Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999).  Indeed, it must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  There is an exception to this rule, however.  Greene, 164 F.3d at 675.  A plaintiff may not rely on unsubstantiated, conclusory allegations to generate "specific facts showing there is a genuine issue for trial,"  Fed. R. Civ. P. 56(e).  In the employment discrimination context, this means that a plaintiff "must support his allegations of superior qualifications with facts in the record; a mere unsubstantiated allegation of superior qualifications creates no genuine issue of fact and will not withstand summary judgment." See Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993). "Accepting such conclusory allegations as true, therefore, would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." Greene, 164 F.3d at 675.  In short, a plaintiff must establish more than a "mere existence of a scintilla of evidence" in support of his claims. Anderson, 477 U.S. at 252.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted).  "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial[,][and] [t]he moving party is 'entitled to judgment as a matter of law.'" Celotex Corp., 477 U.S. at 323 (citations omitted).

I.      McDonnell-Douglas:  Allocation of Burdens of Production and Persuasion

In order to survive summary judgment, Plaintiff must produce some evidence to show that the Agency intentionally discriminated against him on the basis of his national origin or perceived disability, or retaliated against him for having engaged in EEO activity.  Plaintiff may produce direct evidence of discrimination or Plaintiff may rely on the McDonnell Douglas burden shifting framework in the absence of direct evidence.  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see McGill v. Munoz, 203 F.3d 843, 845 (D.C. Cir. 2000) (discussing proof required for Rehabilitation Act claims); Mitchell v. Baldrige, 759 F.2d 80, 84-85 (D.C. Cir. 1985) (applying the McDonnell Douglas burden shifting framework to Title VII claims).  No direct evidence of intentional discrimination exists here.  Accordingly, to meet his threshold burden of demonstrating evidence of discrimination, Plaintiff must meet all the elements of the McDonnell Douglas test.

Under this test, Plaintiff has the initial burden of proving by a preponderance of the evidence a "*prima facie*" case of discrimination.  Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).  If the plaintiff is able to establish a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions.  Id.  If the defendant meets this burden of production, the burden shifts back to the plaintiff to present evidence that the stated reason for its actions was pretextual and that discrimination was a motivating factor.  Id.  "It is not enough for the plaintiff to show that the reason given for a job action is not just, fair, or sensible.  He must show that the explanation given is a phony reason."  Fischbach v. District of Columbia Dep't of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996).  At

all times, the plaintiff retains the ultimate burden of persuasion to demonstrate that he was in fact the victim of intentional discrimination.  Burdine, supra, 450 U.S. at 252-53.[4]

## II.    Limited Review in Employment Discrimination Cases

Employment discrimination statutes do not transform federal courts into review boards for local employment decisions.  "Title VII, it bears repeating, does not authorize a federal court to become 'a super-personnel department that reexamines an entity's business decisions.'" Barbour v. Browner, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (quoting Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986), cert. denied, 479 U.S. 1066 (1987)).  To the contrary, a court "may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.'"  Fischbach, 86 F.3d at 1183 (quoting Milton v. Weinberger, 696 F.2d 94, 100 (D.C. Cir. 1982)).

---

[4] By relying on the McDonnell Douglas test to evaluate whether plaintiff can produce sufficient inferential evidence to raise a legitimate question of motive that requires trial, defendant does not contend that plaintiff must prove that discrimination was the sole reason for his non-selection or that this is a single-motive case. See Porter v. Natsios, 414 F.3d 13, 20 (D.C. Cir. 2005); Fogg v. Gonzales, __F.3d__, 2007 WL 1855062 (D.C.Cir.) *5 n.* ("A plaintiff may also, of course, use evidence of pretext and the McDonnell Douglas framework to prove a mixed-motive case.")

IV. <u>ARGUMENT</u>

A.    <u>Plaintiff Fails to State a Claim of Disability Discrimination</u>

Plaintiff asserts his claim of disability discrimination against the Agency under the

Americans with Disabilities Act ("ADA"), 42 U.S.C.S. § 12131 et seq.  Compl. ¶ 1.  Plaintiff,

cannot seek relief under the ADA, however, because the statute is not applicable to the Agency.

See 42 U.S.C. § 12111(5)(B)(I) (defining "employer," which determines coverage, to exclude

"the United States"), see also <u>Thrash v. Library of Congress</u>, 2006 U.S. Dist. LEXIS 9988 (Feb.

24, 2006) (citing <u>Lester v. Natsios</u>, 290 F. Supp. 2d 11, 23 n.2 (D.D.C. 2003).  The

Rehabilitation Act of 1973 ("RHA"), 29 U.S.C.S. § 701, provides the exclusive remedy for

employment discrimination based on a disability for federal employees.  <u>Ward v. Kennard</u>, 133

F. Supp. 2d. 54, 57 (D.D.C. 2000); <u>Rattner v. Bennett</u>, 701 F. Supp. 7, 9 (D.D.C. 1988).

Therefore, the Court should dismiss the plaintiff's disability discrimination claim.  <u>Raines v.

United States DOJ</u>, 424 F. Supp. 2d 60, 64-65 (D.D.C. 2006) (dismissing plaintiff's

discrimination claim under ADA because RHA provides the exclusive remedy for discrimination

claims brought against federal employers).


B. <u>Plaintiff Cannot Establish a Prima Facie Case of Discrimination Based on
   National Origin</u>


To establish a *prima facie* case of discrimination, Plaintiff must show that (1) he is a

member of a protected class; (2) he applied for and was qualified for an available position; (3)

despite his qualifications he was rejected; and (4) either someone not of his protected class filled

the position or the position remained vacant and the employer continued to seek applicants. <u>See

McDonnell Douglas</u>, 411 U.S. at 802; <u>Kolstad v. American Dental Association</u>, 108 F.3d 1431,

1436 (D.C. Cir. 1997), rev'd in part on other grounds en banc, 139 F.3d 958 (D.C. Cir. 1998), en banc opinion vacated, 119 S. Ct. 2118 (1999). Plaintiff states that his Complaint "is filed pursuant to violation of Title VII National Origin discrimination[.]"  Compl. at sentence 3. Beyond this statement, however, he has made no factual allegations whatsoever to support a claim of discrimination based on his national origin. While Plaintiff states that the Agency denied him employment and "hired substantial Mexican American applicants [sic]," he neither alleges that he is a member of a protected class with respect to national origin, nor states what national origin he claims.  Based on the administrative record below, however, the Agency accepts for the purposes of this motion that Plaintiff is a member of a protected class (Puerto Rican) and that he applied for a position with the Agency (Border Patrol Agent Trainee).  The Agency, however, determined that Plaintiff was not qualified for the position, and Plaintiff cannot show that he was qualified.[5]

As set forth in the Defendant's Statement of Facts to Which There is No Genuine Issue, attached hereto, by report dated May 31, 1995, psychiatrist R.E. Ballentine, M.D., stated that Plaintiff was suffering from "a DSM IV diagnosis of Delusional Disorder-Persecutory Type," and that Plaintiff's delusions interfered with his ability to deal rationally with other people on the job.  Exhibit H.  Plaintiff told the Agency's background investigator that he went to another psychiatrist, Lillian Saavedra, M.D., for a second opinion.  Exhibit F.  The Agency's background investigator reported that Dr. Saavedra stated that she agreed with Dr. Ballentine's diagnosis of Plaintiff, but that Dr. Saveedra did not advise Plaintiff of such because she was afraid of how he might react.  Exhibit I, pp. 3-4.  By report dated November 12, 1997, Agency Medical Review

---

[5] Neither can Plaintiff show that someone not of his protected class filled the position or that the position remained vacant and the Agency continued to seek applicants.  Additionally, as provided during the processing of Plaintiff's EEO complaint, the Agency did not collect information regarding applicants whose national origin is Puerto Rican. Exhibit U, pp. 2-3.

Officer Bruce Butler, M.D., M.P.H., stated that he believed there was sufficient evidence to support Plaintiff's diagnosis of delusional disorder with persecutory features, that a delusional disorder is incompatible with the safe and efficient performance of the duties and responsibilities of a Border Patrol Agent, and that he firmly recommends against placing Plaintiff in the position of Border Patrol Agent.  Exhibit O, p. 1.

Thereafter, on January 15, 1998, Velmenia Stanley, Chief, Border Patrol Hiring Unit, submitted an Agency Request to Pass Over a Preference Eligible or Object to an Eligible to the Office of Personnel Management ("OPM"), in which the Agency objected to Plaintiff's eligibility based on his mental/emotional condition.  In her request, Ms. Stanley stated that "[a]ny mental or emotional condition affecting cognitive reasoning ability and judgmental processes which would impair the full performance of duties and responsibilities of the position is disqualifying[.]  Exhibit Q; Exhibit R, p. 2.  By letter dated March 9, 1998, Phillip Spottswood of OPM notified Plaintiff of OPM's conclusion that Plaintiff's medical condition presents an unacceptable safety and health risk and is likely to adversely affect his ability to perform the full range of duties required for the position of Border Patrol Agent.  Exhibit S.

In defense of his qualifications, Plaintiff argues that the Agency "ignored a positive recommendation by an expert physician, Dr. Bartlett which they hired [sic]."  Compl. at sentence 11 (sentence 3 on third page).  While it is true that clinical psychologist Edmund S. Bartlett, Ph.D., who is not a physician, conducted a psychological examination of Plaintiff and reported that Plaintiff was within the range of acceptability for the position of Border Patrol Agent, Bartlett's report makes no mention of the harassment Plaintiff claimed to have been subjected to while employed by the Bureau of Prisons ("BOP") and the Florida Department of Corrections ("DOC"), and according to his report, Bartlett agreed with Plaintiff not to discuss Plaintiff's

firing from DOC. Exhibit K. The Agency reviewed Plaintiff's background investigation materials and Bartlett's report, and concluded that Bartlett did not have sufficient background information, which rendered him unable to uncover Plaintiff's delusional disorder. Exhibit L, p.2. Thereafter, Agency Medical Review Officer Bruce Butler, M.D., M.P.H., reported that he believed there was sufficient evidence to support Plaintiff's diagnosis of delusional disorder with persecutory features, that a delusional disorder is incompatible with the safe and efficient performance of the duties and responsibilities of a Border Patrol Agent, and that he firmly recommends against placing Plaintiff in the position of Border Patrol Agent. Exhibit O, p. 1. OPM agreed, and concluded that Plaintiff's medical condition presented an unacceptable safety and health risk and was likely to adversely affect his ability to perform the full range of duties required for the position of Border Patrol Agent. Exhibit S. Plaintiff cannot show that during the time relevant to this complaint, he did not suffer from delusional disorder with persecutory features and was therefore qualified for the position of Border Patrol Agent. As a result, Plaintiff cannot make a *prima facie* case of discrimination based on national origin.

C.    Plaintiff Cannot Establish a Prima Facie Case of Discrimination Based on Disability

Even assuming plaintiff properly raised a claim of discrimination on the basis of disability, it would fail. The Rehabilitation Act protects individuals with a disability, defined as someone who (1) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 29 C.F.R. § 1630.2(g).  In the present case, Plaintiff contends that Defendant regarded him as having a disability.  Under this theory, Plaintiff must show that: (1) he was perceived to have a physical or mental impairment, and (2) the impairment was perceived to substantially limit one or more of his major life activities. Mack v. Strauss, 134 F. Supp. 2d 103, 110, (D.D.C. 2001) (citing Siragy v. Georgetown Univ., 1999 U.S. Dist. LEXIS 21021, 1999 WL 767831, *4 (D.D.C. Aug. 20, 1999)).  While the Agency agrees that it perceives Plaintiff as having a mental impairment[6], Plaintiff cannot, as a matter of law, show that this impairment was perceived by the Agency to substantially limit one or more of Plaintiff's major activities.

While not set forth by Plaintiff in his Complaint, presumably, Plaintiff believes the major activity at issue in this case is that of working.  To establish that an impairment substantially limits the ability to work, Plaintiff must "allege and prove that in his particular circumstances … his impairment prevents him from performing a 'substantial class' or 'broad range' of jobs otherwise available to him." Thompson v. Rice, 422 F. Supp. 2d 158, 171 (D.D.C. 2006) (citing Duncan v. Washington Metro. Area Transit Auth., 240 F.3d 1110, 1115 (D.C. Cir. 2001)).  To be

---

[6] The EEOC regulations define a mental impairment as including any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities. 29 C.F.R. § 1630.2(h).  The Agency Medical Review Officer stated that he believed there was sufficient evidence to support Plaintiff's diagnosis of delusional disorder with persecutory features.  Exhibit O, p. 1.  Therefore, the Agency perceived Plaintiff as having a mental or psychological disorder under EEOC regulations.

substantially limited in working, "one must be precluded from more than one type of job, a specialized job, or a particular job of choice." Id., (citing Sutton v. United Air Lines, Inc., 527 U.S. 471, 492 (1999)).   In making its determination, a court may consider factors such as "the geographical area to which the individual has reasonable access and 'the number and types of jobs utilizing similar training, knowledge, skills or abilities, within the geographical area, from which the individual is also disqualified.'" Id. (citing Duncan, 240 F.3d at 1114).  The plaintiff must "produce some evidence of the number and types of jobs in the local employment market in order to show that he is disqualified from a substantial class or broad range of such jobs." Id. (citing Duncan 240 F.3d at 1115-16.)  Plaintiff can make no such showing here.

   D.   Plaintiff Cannot Establish a Prima Facie Case of Retaliation Based on Prior EEO Activity

   Plaintiff carries the initial burden of establishing a *prima facie* case of retaliation by showing (1) he engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action. Woodruff v. Peters, 482 F.3d 521, 529 (D.C. Cir. 2007) (citing to Smith v. District of Columbia, 430 F.3d 450, 455 (D.C. Cir. 2005)).  The Agency will accept for the purposes of this motion that Plaintiff engaged in protected activity prior to his non-selection by the Agency[7] and that he was subjected to an adverse action when he was not selected for the position of Border Patrol Agent Trainee.  However, Plaintiff can provide no evidence that there was a causal link between his prior EEO activity and his non-selection.

---

[7] By letter dated July 11, 1994, Plaintiff was informed by the Agency that he must reapply under a new application system.  Exhibit C.  Thereafter, on July 27, 1994, Plaintiff contacted and was interviewed by an EEO counselor in the Agency's EEO office.  During that interview, Plaintiff provided that he believed he was not selected by the Agency because he was Hispanic. Exhibit D, pp. 2-4.  Because Plaintiff does not provide any details regarding his prior EEO activity, the Agency will assume for the purposes of this motion that Plaintiff's prior EEO activity was his 1994 interview with the Agency's EEO counselor.

E.    The Agency Had Legitimate, Non-Discriminatory Reasons For Not Selecting Plaintiff

Even if Plaintiff were able to establish a *prima facie* case of discrimination based on national origin, discrimination based on perceived disability, or retaliation based on prior EEO activity, the Agency had a legitimate, non-discriminatory and non-retaliatory reason for not selecting Plaintiff in that Plaintiff was not qualified for the position due to his mental disorder. As set forth in Defendant's Statement of Facts As to Which There is No Genuine Issue, by letter dated May 19, 1995, the Florida Department of Corrections ("DOC") requested that a psychiatrist, R.E. Ballentine, M.D., evaluate Plaintiff to determine whether he was able to perform his assigned duties as a Correctional Probation Officer. The letter advised Dr. Ballentine that Plaintiff wrote a letter to the Secretary of DOC which raised concerns regarding Plaintiff's ability to perform his assigned duties, his welfare and the safety of other employees. Exhibit G. Dr. Ballentine's report of May 31, 1995, states that Plaintiff was suffering from "a DSM IV diagnosis of Delusional Disorder-Persecutory Type," and that Plaintiff's delusions interfered with his ability to deal rationally with other people on the job. Exhibit H.

The Agency's background investigator reported that psychiatrist Lillian Saavedra, M.D. stated that she agreed with Dr. Ballentine's diagnosis of Plaintiff, but that Dr. Saveedra did not advise Plaintiff of such because she was afraid of how he might react. Exhibit I, pp. 3-4. Agency Medical Review Officer Bruce Butler, M.D., M.P.H., believed there was sufficient evidence to support Plaintiff's diagnosis of delusional disorder with persecutory features, and stated that a delusional disorder is incompatible with the safe and efficient performance of the duties and responsibilities of a Border Patrol Agent, and that he firmly recommends against placing Plaintiff in the position of Border Patrol Agent. Exhibit O, p. 1. Velmenia Stanley,

Chief, Border Patrol Hiring Unit, submitted an Agency Request to Pass Over a Preference
Eligible or Object to an Eligible to OPM, in which the Agency objected to Plaintiff's eligibility
based on his mental/emotional condition.  Ms. Stanley set forth the various responsibilities of a
Border Patrol Agent, the stressors Border Patrol Agents are subjected to, and the need for Agents
to be free of "mental/emotional manifestations that impair judgment in the performance of their
duties and responsibilities." Exhibit Q, p. 2.  Ms. Stanley additionally provided that the use of
medications to control the effects of mental or emotional conditions are incompatible with the
duties and responsibilities of Border Patrol Agents as many psychotropic drugs have side effects
which affect the central nervous system and peripheral nervous system, and can affect cognitive
reasoning abilities in complex situations.  Exhibit Q, p. 2.  OPM agreed with the Agency's
determination, and concluded that Plaintiff's medical condition presented an unacceptable safety
and health risk and was likely to adversely affect his ability to perform the full range of duties
required for the position of Border Patrol Agent.  Exhibit S.  Therefore, the Agency had a
legitimate, non-discriminatory and non-retaliatory reason for not selecting Plaintiff.

      F.    <u>Plaintiff Cannot Establish Pretext</u>

      Once a defendant has produced credible evidence that its actions were taken for a
legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to present evidence
that the stated reason for its actions was pretextual.  <u>Burdine</u>, 450 U.S. at 252-53. Plaintiff
simply cannot overcome the legitimate, non-discriminatory reason offered by defendant for not
selecting Plaintiff, specifically found in three separate reports from physicians, two of whom are
psychiatrists who examined Plaintiff, indicating that Plaintiff suffers from delusional disorders.
Exhibits H, I, and O.  These findings that Plaintiff suffered from delusional disorder
"incompatible with the safe and efficient performance of the duties and responsibilities of a

Border Patrol Agent" were then reviewed by the Chief of the Border Patrol Hiring Unit, who explained both the incompatibility of this type of disorder with the duties of a Border Patrol Officer, as well and the negative side effects from medications to treat disorder. Id. The existence of separate medical reports confirming a mental condition incompatible with the requirements of position, and stating that medication for the condition causes unacceptable side effects, clearly demonstrate that defendant had legitimate, non-pretextual reasons for its decision not to hire plaintiff as a Border Patrol Agent.

## V.    CONCLUSION

Based on the foregoing, Defendant respectfully requests that plaintiff's complaint be dismissed or, in the alternative, that he be granted summary judgment on all claims herein.

Respectfully submitted,

___/s /_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


__/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


__/s/_____
ALEXANDER D. SHOAIBI, D.C. BAR #423587
Assistant United States Attorney
501 Third Street, N.W., Rm E-4218
Washington, D.C.  20530
(202) 514-7236