# R.E. Ballentine, M.D.

631 Palm Springs Drive, Suite 107
Altamonte Springs, FL 32701
(407) 331-9100

May 31, 1995

Joseph F. Hatem, Jr.
Regional Probation and Parole Administrator
Florida Department of Corrections
400 W. Robinson Street
Suite N909 Hurston-North Tower
Orlando, FL 32801

RE: Psychiatric Evaluation of Tyrone Rodriquez

Dear Mr. Hatem:

I evaluated Tyrone Rodriquez at my office on May 24, 1995 to determine whether he was able to perform his assigned duties as a Correction Probation Officer with the Florida Department of Corrections and whether he was dangerous. He was evaluated by means of psychiatric interview, mental status examination, Minnesota Multiphasic Personality Inventory (MMPI), review of Position Description-Caseload Officer and his letters (January 10, 1995 and May 6, 1995), and May 26, 1995 telephone conversation with Ms. Mary Lynn Brady from the Department of Corrections.

Psychosocial History
Tyrone Rodriquez was a 31 year old married Hispanic male, who gave no history of violence or mental illness. In August 1993 while working at a federal corrections facility in Colorado, he began to think people were alleging he was a drug dealer, and a pedophile. These thoughts continued (plus that he was untrustworthy and had AIDS) after he moved to the Florida Department of Corrections as a Pre-Sentence Investigator in September 1994. He claimed to have documentation and corroboration of these incidents and mentioned specific names and dates, but I was not aware of anyone actually supporting his claims. As a result of the perceived harassment he filed complaints with the Federal Government and Florida State Government.

As a result of these complaints there was concern regarding his mental stability, dangerousness, and ability to function as a corrections officer.

He was a high school graduate, rose E-4 after two years in the army, graduated from college with a BS in Criminal Justice, worked as an investigator in Public Assistance Fraud, and said

he would have been hired by the DEA if not for a hiring freeze. While he believed there was an country-wide retaliatory effort by the Bureau of Prisons to "destroy my reputation and create a hostile work environment for me", he denied similar problems in any other positions.

He was under a lot of stress from the reaction his complaints received, felt some bitterness, and experienced insomnia and elevated blood pressure. He reported that he continued to do his job well and had no intentions of responding in any way other than going through proper channels. Ms. Brady indicated that his beliefs had adversely affected his work with supervisors, peers, the courts and the public.

He denied any head trauma, drug or alcohol use, or family history of mental illness.

Mental Status Examination
Mr. Rodriquez was a neatly groomed, neatly dressed Hispanic male who while upset about having a psychiatric evaluation was cooperative. His affect and mood were appropriate and euthymic. He had no speech, gait, or posture disturbance. He was alert, and oriented to person, time, place, and situation. His memory was good for past, recent, and immediate events. His thoughts were concrete and logical with some self-referential and persecutory overvalued ideas, which appear to be false, and while he indicated he was open to other explanations, his beliefs seemed to be fixed. He had no suicidal or homicidal ideation or plans. He denied any auditory or visual hallucinations. He had some insight and good impulse control.

MMPI
This was a valid profile, with the most significant elevation on the K subscale, indicating an effort to present himself in a favorable light. After correction for this, none of the other subscales indicated any psychopathology.

Conclusion
Based on the information that I had, even with the normal looking MMPI, it was my clinical opinion with a reasonable degree of certainty that Tyrone Rodriquez was suffering from a DSM IV diagnosis of Delusional Disorder-Persecutory Type, and the delusions interfered with his ability to deal rationally with other people in the job of a Caseload Officer (the Position Description I was sent) and in the job of a Pre-Sentence Investigator. At the time of the evaluation he was not dangerous to himself or others.

I hope this information is helpful.

Sincerely,

R. E. Ballentine, M.D.

3. If Mr. Rodriguez can perform these duties will the activities of same result in further complications?

   Response: Probably

4. Does Mr. Rodriguez present a threat to the safety of other employees, offenders or the general public?

   Response: Not at this time

5. Please provide additional information from your evaluation which we should consider in making our determination regarding Mr. Rodriguez.

   Response:

Re: Evaluation of Tyrone Rodriguez,
Correctional Probation Officer
Florida Department of Corrections

1. The performance of duties assigned to a Correctional Probation Officer requires the following abilities:

   a) to describe facts and events accurately.

   b) to communicate effectively, verbally and in writing.

   c) investigative skills which include effective interviewing, communication and organizational abilities.

   Please provide your evaluation of Mr. Rodriguez's ability in the above mentioned areas.

   Response:

   a) His sensitivity to possible allegations could distort his perception of facts and events.

   b) His belief that people are accusing him of indiscretions can interfere with his effective verbal and written communication.

   c) His investigative skills should not be affected.

2. Given the attached job description and performance standards, can Mr. Rodriguez perform these duties?

   Response:

   Most of these duties involve contact with offenders who at this time have not been incorporated into his beliefs, so he can effectively perform these duties. He apparently has had difficulty with supervisors, peers and the courts because of his beliefs and this has affected his work performance, and will probably continue to affect his performance.