```
AME RODRIGUEZ, TYRONE NMN                    | CASE # 96001848 | PAGE  25
ATES OF INVESTIGATION 03/18/96 - 04/05/96 | SID 0426 | ORG ID A80 | REPORT #  1
```

## MEDICAL/PSYCHIATRIC

```
ITEM: 018                                                    SOURCE: 017
  NAME FLORIDA DEPARTMENT OF CORRECTIONS, PERSONNEL, 400 W. ROBINSON AVE,
       ORLANDO, FL
  MEDICAL RECORD
  PROVIDER FRANCES BROWN, PERSONNEL AID
  SPECIFIC RELEASE

MEDICAL/PSYCHIATRIC INFORMATION
   INFORMATION CANNOT BE RELEASED TO SUBJECT

ISSUE(S) 07A 12

NAME VERIFIED      SSN VERIFIED      DOB VERIFIED      POB NOT SHOWN

TREATMENT DATE(S) NOT SHOWN

INITIAL COMPLAINT OF CONDITION
NOT SHOWN

DIAGNOSIS
NOT SHOWN

TREATMENT PRESCRIBED
NOT SHOWN

TREATMENT LOCATION SAME AS ABOVE

PROGNOSIS
NOT SHOWN
```

ON 8/24/95, HE HAD A PHYSICAL EXAM CONDUCTED BY A MEDICAL DOCTOR WHO FOUND HIM TO BE CAPABLE OF PERFORMING THE ESSENTIAL FUNCTIONS OF THE OFFICE POSITION FOR WHICH HE HAS BEEN CONDITIONALLY SELECTED. HE HAD A DRUG TEST CONDUCTED ON 8/22/94 WHICH CAME BACK NEGATIVE.

FILE CONTAINED A LETTER FROM DR RALPH E. BALLENTINE TO THE FLORIDA DEPARTMENT OF CORRECTIONS, DATED 5/31/95, CONCERNING A PSYCHIATRIC EVALUATION OF THE SUBJECT (SEE ATTACHMENT A, PAGES ONE THROUGH TWO). ATTACHED TO THE LETTER WAS A LIST OF ADDITIONAL QUESTIONS THAT DR. BALLENTINE WAS ASKED TO RESPOND TO AND INCLUDED DR. BALLENTINE'S ANSWERS.
1. THE PERFORMANCE OF DUTIES ASSIGNED TO A CORRECTIONAL PROBATION OFFICER REQUIRES THE FOLLOWING DUTIES:
A) DESCRIBE FACTS AND EVENTS ACCURATELY.
B) TO COMMUNICATE EFFECTIVELY, VERBALLY AND IN WRITING.
C) INVESTIGATIVE SKILLS WHICH INCLUDE EFFECTIVE INTERVIEWING,

```
RODRIGUEZ, TYRONE NMN                        | CASE # 96001848 | PAGE  26
TES OF INVESTIGATION 03/18/96 - 04/05/96 | SID 0426 | ORG ID A80 | REPORT # 1
```

COMMUNICATING AND ORGANIZATIONAL ABILITIES.

DR. BALLENTINE'S RESPONSES:
A) HIS SENSITIVITY TO POSSIBLE ALLEGATIONS DISTORTS HIS PERCEPTION OF FACTS AND EVENTS.
B) HIS BELIEF THAT PEOPLE ARE ACCUSING HIM OF INDISCRETIONS CAN INTERFERE WITH HIS EFFECTIVE VERBAL AND WRITTEN COMMUNICATION.
C) HIS INVESTIGATIVE SKILLS SHOULD NOT BE AFFECTED.

2. CAN MR. RODRIGUEZ PERFORM HIS JOB DUTIES?
DR. BALLENTINE'S RESPONSE: MOST OF THESE DUTIES INVOLVE CONTACT WITH OFFENDERS WHO AT THE TIME HAVE NOT BEEN INCORPORATED IN TO HIS BELIEFS, SO HE CAN EFFECTIVELY PERFORM THESE DUTIES. HE APPARENTLY HAS HAD DIFFICULTY WITH SUPERVISORS, PEERS AND THE COURTS BECAUSE OF HIS BELIEFS. THIS HAS AFFECTED HIS WORK PERFORMANCE AND WILL PROBABLY CONTINUE TO AFFECT HIS PERFORMANCE.

3. IF MR. RODRIGUEZ CAN PERFORM THESE DUTIES, WILL THE ACTIVITIES OF SOME RESULT IN FURTHER COMPLICATIONS?
DR. BALLENTINE'S RESPONSE: PROBABLY.

4. DOES MR. RODRIGUEZ PRESENT A THREAT TO THE SAFETY OF OTHER EMPLOYEES, OFFENDERS OR THE GENERAL PUBLIC?
DR. BALLENTINE'S RESPONSE: NOT AT THIS TIME.

ITEM: 018    INVESTIGATOR'S NOTE                          SOURCE: 018

DR. RALPH BALLENTINE WAS CONTACTED BUT WOULD NOT PROVIDE ANY RECORD OR PERSONAL INFORMATION. ACCORDING TO GLENDA BALLENTINE, DR. BALLENTINE'S OFFICE MANAGER, THE EVALUATION DR. BALLENTINE COMPLETED ON THE SUBJECT WAS REQUESTED AND PAID FOR BY THE FLORIDA DEPARTMENT OF CORRECTIONS AND THAT INFORMATION COULD NOT BE RELEASED TO ANYONE OTHER THAN TO THE FL DEPARTMENT OF CORRECTIONS. DR. BALLENTINE HAD NO ADDITIONAL CONTACT WITH THE SUBJECT.

ITEM: 019                                                  SOURCE: 019
NAME ORLANDO PSYCH GROUP, 1316 S. ORANGE AVE, ORLANDO, FL
MEDICAL RECORD
PROVIDER LILLIAN T. SAAVEDRA, PSYCHIATRIST
SPECIFIC RELEASE

MEDICAL/PSYCHIATRIC INFORMATION
    INFORMATION CANNOT BE RELEASED TO SUBJECT

ISSUE(S) 12

NAME VERIFIED     SSN DISCREPANT     DOB VERIFIED     POB NOT SHOWN

TREATMENT DATE(S) 07/95 - 07/95

```
RODRIGUEZ, TYRONE NMN                              | CASE # 96001848 | PAGE  27
TES OF INVESTIGATION 03/18/96 - 04/05/96 | SID 0426 | ORG ID A80 | REPORT #  1
```

INITIAL COMPLAINT OF CONDITION
I AM HERE FOR EVALUATION FOR WORK.

DIAGNOSIS
NOT SHOWN

TREATMENT PRESCRIBED
NOT SHOWN

TREATMENT LOCATION  SAME AS ABOVE

PROGNOSIS
NOT SHOWN

SOCIAL SECURITY NUMBER WAS SHOWN AS 

TWO ONE ON ONE SESSIONS WITH HIM (7/12/95 AND 7/24/95).

7/12/95:  STATES HE HAS BEEN A CORRECTIONAL OFFICER AND WAS FIRED FROM
HIS JOB AFTER HE FILED A COMPLAINT OF VERBAL ABUSE AND DISRESPECT AND
HARASSMENT.

7/24/95:  PATIENT CAME IN AND STATES IS NOT AS PREOCCUPIED AND STATES
HE STILL HAS DIFFICULTY ACCEPTING THE FIRING.  HE FEELS CAUTIOUS.


EM: 019                                                        SOURCE: 020
NAME LILLIAN T. SAAVEDRA, PSYCHIATRIST, ORLANDO PSYCH GROUP, P.A., 1315
      SOUTH ORANGE AVE, ORLANDO, FL
SPECIFIC RELEASE

ISSUE(S) 06A 07C 12
PRIMARY ASSOCIATION PSYCHOLOGIST
AVERAGE EXTENT OF CONTACT MINIMAL
SPAN OF CONTACT TWO VISITS IN 7/95

DOES NOT RECOMMEND BECAUSE A JOB IN A SENSITIVE POSITION MAY BE MORE
STRESSFUL THAT SOMEONE WITH THIS TYPE OF DISORDER CAN HANDLE AND
BECAUSE HE APPEARS TO HAVE A LOT
OF BUILT UP ANGER AND FRUSTRATION INSIDE OF HIM.

MEDICAL/PSYCHIATRIC INFORMATION
   INFORMATION CANNOT BE RELEASED TO SUBJECT

SAAVEDRA MET HIM WHEN HE CAME TO SAAVEDRA'S OFFICE TO BE EVALUATED BY
SAAVEDRA.  SAAVEDRA TALKED TO HIM ON ONE OCCASION SO SAAVEDRA COULD
EVALUATE HIM.  HE CAME BACK A COUPLE OF WEEKS LATER TO PICK UP A
 RMAL EVALUATION REPORT FROM SAAVEDRA AND TALKED TO SAAVEDRA FOR A
SHORT TIME.  SAAVEDRA DID NOT PREPARE A WRITTEN EVALUATION FOR HIM SO

```
RODRIGUEZ, TYRONE NMN                              | CASE # 96001848 | PAGE   28
```
\*TES OF INVESTIGATION 03/18/96 - 04/05/96 | SID 0426 | ORG ID A80 | REPORT #  1

HE DID NOT RECEIVE ANYTHING FROM SAAVEDRA'S OFFICE. THAT WAS THE LAST CONTACT SAAVEDRA HAD WITH HIM.

HE HAD BEEN EVALUATED BY DR. BALLENTINE AND WAS VERY ANGRY WITH DR. BALLENTINE BECAUSE HE DISAGREED WITH DR. BALLENTINE'S DIAGNOSIS OF HIM. HE PROVIDED SAAVEDRA WITH A COPY OF DR. BALLENTINE'S EVALUATION. DR. BALLENTINE DIAGNOSED HIM AS BEING DELUSIONAL WITH PERSECUTORY TYPE TENDENCIES. HE WAS FIRED FROM HIS JOB BECAUSE OF DR. BALLENTINE'S EVALUATION OF HIM.

HE WANTED TO BE EVALUATED BY SAAVEDRA IN ORDER TO REFUTE DR. BALLENTINE'S ASSESSMENT OF HIM. AFTER TALKING TO HIM FOR ONE SESSION, SAAVEDRA AGREED WITH DR. BALLENTINE'S DIAGNOSIS OF DELUSIONAL DISORDER - PERSECUTORY TYPE BUT DID NOT INFORM THE SUBJECT OF HER (SAAVEDRA'S) DIAGNOSIS.

DURING THEIR SESSIONS, HE TALKED ABOUT DISCRIMINATION AND HARASSMENT THAT HE FELT HE WAS SUBJECTED TO ON HIS JOB BUT GAVE NO FACTUAL EXPLANATIONS. HE HAS A DISTORTED VIEW OF HOW PEOPLE RELATE TO HIM. HE PERCEIVED SOMEONE SAYING "GOOD MORNING" IN A TONE THAT HE DID NOT LIKE AS BEING DISRESPECTFUL. HE BELIEVED THAT THE HARASSMENT AND DISCRIMINATION HE WAS HAVING ON HIS JOB WAS A CONTINUING PROBLEM FROM PREVIOUS EMPLOYERS. HE THOUGHT SOMEONE WAS OUT TO GET HIM BUT GAVE NO MEANINGFUL EXPLANATION FOR BELIEVING THIS.

SAAVEDRA REFRAINED FROM TELLING HIM THAT SAAVEDRA ALSO BELIEVED THAT HE WAS PARANOID AND SUFFERING FROM A DELUSIONAL TYPE DISORDER BECAUSE HE WOULD NOT HAVE ACCEPTED THAT OPINION FROM SAAVEDRA. SAAVEDRA GENTLY SUGGESTED A MEDICATION CALLED RISPERDOL FOR HIM TO HELP HIM WITH HIS PARANOIA BUT HE DID NOT COME TO SAAVEDRA FOR TREATMENT OR FOR ANY KIND OF MEDICATION AND REFUSED TO TAKE THE MEDICATION. HIS ONE AND ONLY OBJECTIVE FOR COMING TO SAAVEDRA WAS TO PROVE DR. BALLENTINE WAS INCORRECT AND DID NOT WANT TO DEAL WITH THE REALITY THAT DR. BALLENTINE MAY HAVE BEEN RIGHT. SAAVEDRA DID NOT WANT TO GIVE HIM SAAVEDRA'S PROFESSIONAL OPINION BECAUSE SAAVEDRA WAS AFRAID OF HOW HE WOULD HAVE REACTED TO THE EVALUATION. HE APPEARS TO HAVE A LOT OF BUILT UP ANGER INSIDE OF HIM WHICH IS COMMON IN PEOPLE WHO SUFFER FROM THIS DISORDER. SAAVEDRA WAS CAUTIOUS BECAUSE SAAVEDRA BELIEVED THAT HE MAY PERCEIVE SAAVEDRA AS BEING AGAINST HIM AND TRY TO GET BACK AT SAAVEDRA IN SOME VIOLENT MANNER. SAAVEDRA EMPHASIZED THAT SHE DID NOT KNOW IF HE WOULD EVER REACT IN A VIOLENT WAY OR NOT, BUT OTHERS DIAGNOSED WITH THIS DISORDER HAVE BEEN KNOWN TO REACT IN VIOLENT WAYS WHEN THEY PERCEIVE SOMEONE IS AGAINST THEM.

SAAVEDRA BELIEVED THAT HIS DISORDER COULD EASILY BE TREATED WITH MEDICATION, AND ONE ON ONE THERAPY, IF HE WAS WILLING TO ACCEPT THE DIAGNOSIS. HOWEVER, HIS JUDGMENT AND RELIABILITY IS TEMPERED BY THE WAY HE PERCEIVES REALITY.

\*\*\*\* END OF REPORT \*\*\*\*

000274

REPORT OF INVESTIGATION
PROPERTY OF U.S. OFFICE OF PERSONNEL MANAGEMENT

```
ME RODRIGUEZ, TYRONE NMN                              | CASE # 96001848 | PAGE   29
TES OF INVESTIGATION 03/18/96 - 04/05/96 | SID 0426 | ORG ID A80 | REPORT #  1
```

TRANSMITTED: 04/05/96                 PRINTED: 04/07/96

000275

## R.E. Ballentine, M.D.
631 Palm Springs Drive, Suite 107
Altamonte Springs, FL 32701
(407) 331-9100

ATTACHMENT A
pAge 1 of 2
96 001848
RODRIGUEZ
CD 4/5/96

May 31, 1995

Joseph F. Hatem, Jr.
Regional Probation and Parole Administrator
Florida Department of Corrections
400 W. Robinson Street
Suite N909 Hurston-North Tower
Orlando, FL 32801

RE: Psychiatric Evaluation of Tyrone Rodriquez

Dear Mr. Hatem:

I evaluated Tyrone Rodriquez at my office on May 24, 1995 to determine whether he was able to perform his assigned duties as a Correction Probation Officer with the Florida Department of Corrections and whether he was dangerous. He was evaluated by means of psychiatric interview, mental status examination, Minnesota Multiphasic Personality Inventory (MMPI), review of Position Description-Caseload Officer and his letters (January 10, 1995 and May 6, 1995), and May 26, 1995 telephone conversation with Ms. Mary Lynn Brady from the Department of Corrections.

### Psychosocial History
Tyrone Rodriquez was a 31 year old married Hispanic male, who gave no history of violence or mental illness. In August 1993 while working at a federal corrections facility in Colorado, he began to think people were alleging he was a drug dealer, and a pedophile. These thoughts continued (plus that he was untrustworthy and had AIDS) after he moved to the Florida Department of Corrections as a Pre-Sentence Investigator in September 1994. He claimed to have documentation and corroboration of these incidents and mentioned specific names and dates, but I was not aware of anyone actually supporting his claims. As a result of the perceived harassment he filed complaints with the Federal Government and Florida State Government.

As a result of these complaints there was concern regarding his mental stability, dangerousness, and ability to function as a corrections officer.

He was a high school graduate, rose E-4 after two years in the army, graduated from college with a BS in Criminal Justice, worked as an investigator in Public Assistance Fraud, and said

000276   6

APR-08-'96 MON 14:2  PM FID ORLANDO FL.    TEL NO:40    2584    #078 P06    f.g2

96001848
RODRIGUEZ
CD 4/5/96

he would have been hired by the DEA if not for a hiring freeze. While he believed there was an country-wide retaliatory effort by the Bureau of Prisons to "destroy my reputation and create a hostile work environment for me", he denied similar problems in any other positions.

He was under a lot of stress from the reaction his complaints received, felt some bitterness, and experienced insomnia and elevated blood pressure. He reported that he continued to do his job well and had no intentions of responding in any way other than going through proper channels. Ms. Brady indicated that his beliefs had adversely affected his work with supervisors, peers, the courts and the public.

He denied any head trauma, drug or alcohol use, or family history of mental illness.

Mental Status Examination
Mr. Rodriquez was a neatly groomed, neatly dressed Hispanic male who while upset about having a psychiatric evaluation was cooperative. His affect and mood were appropriate and euthymic. He had no speech, gait, or posture disturbance. He was alert, and oriented to person, time, place, and situation. His memory was good for past, recent, and immediate events. His thoughts were concrete and logical with some self-referential and persecutory overvalued ideas, which appear to be false, and while he indicated he was open to other explanations, his beliefs seemed to be fixed. He had no suicidal or homicidal ideation or plans. He denied any auditory or visual hallucinations. He had some insight and good impulse control.

MMPI
This was a valid profile, with the most significant elevation on the K subscale, indicating an effort to present himself in a favorable light. After correction for this, none of the other subscales indicated any psychopathology.

Conclusion
Based on the information that I had, even with the normal looking MMPI, it was my clinical opinion with a reasonable degree of certainty that Tyrone Rodriquez was suffering from a DSM IV diagnosis of Delusional Disorder-Persecutory Type, and the delusions interfered with his ability to deal rationally with other people in the job of a Caseload Officer (the Position Description I was sent) and in the job of a Pre-Sentence Investigator. At the time of the evaluation he was not dangerous to himself or others.

I hope this information is helpful.

Sincerely,

R. E. Ballentine, M.D.

000277

7