## AFFIDAVIT

**DISTRICT OF COLUMBIA**

I, Velmenia J. Stanley (female; African American; no prior EEO activity; no disabilities) Supervisory Personnel Staffing Specialist, GS-13, Special Hiring Unit, Employment and Recruitment Services, Human Resources, HQ, INS, DOJ, make the following statement freely and voluntarily to Peter M. Schilling, who has identified himself to me as a Contract EEO Investigator for the following federal agency: INS investigating a complaint of discrimination filed by Tyrone Rodriguez, knowing that this statement may be used in evidence. I understand that this statement is not confidential, and that it may be shown to the interested parties, those with a legal right to know. I hereby solemnly swear:

1. How long have you been in your current position?

1. I have been in my current position as Supervisory Personnel Staffing Specialist, GS-13, since 1980.

2. Who are your current first and second level supervisors?

2. My current first level supervisor is Harry Hoskins, GS-14, Acting Chief of Employment and Recruitment Services. My current second level supervisor is Steven Park, Chief of Human Relations, GS-15.

3. Briefly describe the work of your Unit.

3. My Unit used to be called the Special Examining Unit. About a year ago they changed the name to the Special Hiring Unit. We still do essentially the same work. Our job is to review and process all the applications for the Border Patrol. We will review the medical records, basic qualifications and have the Security Officer review each application to make sure the individual can pass the Security Clearance. We will make an appointment offer if the person is found basically qualified for the position, meets medical and security requirements.

4. Were you involved in the determination regarding the qualification of Tyrone Rodriguez

in his application to the Border Patrol?

4. Yes. There was some question raised in the background information as to whether to grant him a Security Clearance or not. We had some concerns based on medical information he provided as to whether he would be a danger to himself or someone else. I asked the representative at Headquarters of the Employee Assistance Program to do an assessment of the information in the file, which related to the psychological fitness of Mr. Rodriguez. Using information that Mr. Rodriguez had provided to us, the EAP person made a recommendation that we should get additional input on Mr. Rodriguez. We then contacted Dr. Bruce Butler, who reviews the medical documentation for our Public Health Section. Dr. Butler did a large writeup on his evaluation of the information in the file on Mr. Rodriguez, including medical documentation and information on past positions held by Mr. Rodriguez. It was his judgement in an opinion letter of November 12, 1997, that Mr. Rodriguez was not suitable for employment with the Border Patrol. Once we get a determination like this from Dr. Butler, the procedure is for us to then go to OPM, and ask for a final judgement as to the suitability of this candidate based on Dr. Butler's decision. We recommended not employing Mr. Rodriguez. OPM agreed in a decision dated February 19, 1998. It is up to OPM to notify Mr. Rodriguez directly, which it did. According to OPM, Mr. Rodriguez posed an unacceptable safety and healthy risk because of the psychological issues presented in the review.

5. Were you aware that Mr. Rodriguez went to the EEO Office to file a formal complaint about not being hired by the Border Patrol in July of 1994?

5. No.

6. Was any action that you took in regard to the processing of Mr. Rodriguez's

p 2 of 3                                    Init

2

application to the Border Patrol discrimination against him on the basis of reprisal for this prior contact with the EEO Office regarding his hiring?

6. No.

I HAVE READ THE ABOVE STATEMENT CONSISTING OF 3 PAGES AND IT IS TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE. I UNDERSTAND THAT THIS STATEMENT IS NOT CONFIDENTIAL, AND THAT IT MAY BE SHOWN TO THE INTERESTED PARTIES.

*Velmenia J. Stanley*

Velmenia J. Stanley

Subscribed and sworn to me

At Washington, D.C. on this 3

Day of February 1999

*Janice Rowe*

Witness or Notary

p 3 of 3

Init—

3

## PRIVACY ACT NOTICE TO EEO COMPLAINT INTERVIEW WITNESSES
### (OTHER THAN COMPLAINANT)
### FOR DISCRIMINATION COMPLAINT INVESTIGATIONS

### GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974; for individuals supplying information in a system of records.

### AUTHORITY

The authority to collect the information requested by affidavit, statement or other type of testimony is derived from one or more of the following:

Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1613.216; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478 as amended.

### PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the equal employment opportunity (EEO) complaint of discrimination and/or reprisal. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the EEO complaint of discrimination and/or reprisal. The information may also be discussed to any agency of the Federal Government having a working relationship with regard to EEO Commission activities, to the intelligence agencies of the Federal Government, or to others for uses as published in the Federal Register.

### EFFECTS OF NONDISCLOSURE

Disclosure of the information sought is voluntary; however, failure to furnish the information will result in a direction by the head of the agency or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you up to and including removal. Applicants in such cases may be refused employment.

Disclosure of information by present or prospective Government contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into contracts, or termination of an existing contract.

Signature of Interviewer  
Date: 2/1/99

Signature of Witness  
Place: