```
                    0 0 9 9 6 2 3 7 0 5 5
```

| | |
|---|---|
| NAME RODRIGUEZ, TYRONE NMN | CASE # 96001848  PAGE 1 |
| DATES OF INVESTIGATION 03/18/96 - 04/05/96 | SID 0426 | ORG ID A80 | REPORT # 1 |

## TESTIMONIES

ITEM: 001           PERSONAL SUBJECT INTERVIEW           SOURCE: 001
INTERVIEW CONDUCTED UNDER OATH ON 03/27/96 AT U.S. OFFICE OF PERSONNEL
MANAGEMENT, 500 WINDERLY PLACE, SUITE 219, MAITLAND, FL
32751

ISSUE CODE(S) 03B 070 09A 12

HE WORKED FOR THE BUREAU OF PRISONS (BOP) IN MIAMI, FL FROM 7/90 TO
8/93. SHORTLY AFTER HE BEGAN WORKING FOR THE BOP, A BACKGROUND
INVESTIGATION WAS CONDUCTED ON HIM FOR POSSIBLE EMPLOYMENT AS AN AGENT
WITH THE DRUG ENFORCEMENT AGENCY (DEA). AT THE TIME, SEVERAL OTHER
EMPLOYEES OF THE BOP HAD ALSO APPLIED FOR EMPLOYMENT WITH THE DEA BUT
HAD NOT BEEN SUCCESSFUL IN GAINING EMPLOYMENT WITH THIS AGENCY. HE
FELT THAT SOME OF THESE EMPLOYEES WERE JEALOUS AND ENVIOUS OF HIM
BECAUSE HE WAS BEING CONSIDERED FOR EMPLOYMENT WHERE THEY HAD FAILED.
THIS IS WHEN HE BEGAN EXPERIENCING A CERTAIN TYPE OF HARASSMENT.
SUPERVISORS, CORRECTIONAL OFFICERS AND INMATES CONSISTENTLY MADE
DEROGATORY COMMENTS TOWARDS HIM. HE WAS ACCUSED OF SUCH THINGS OF
BEING A PERVERT, A PIMP, A DRUG DEALER, AND EVEN A PEDOPHILE.

WHEN THE DEA COMPLETED THE BACKGROUND INVESTIGATION, THERE WAS A
HIRING FREEZE IN THE DEA. HE DID NOT GET THE JOB AS AN AGENT WITH DEA
BUT THE HARASSMENT TOWARDS HIM CONTINUED AT THE FEDERAL PRISON IN
MIAMI.

ANOTHER POSSIBLE REASON OTHERS AT THE WORKPLACE IN MIAMI WERE
HARASSING HIM WAS BECAUSE ONE OF HIS CO-WORKERS (WHO WAS ALSO A CLOSE
FRIEND) HAD BEEN FIRED FOR SUSPICION OF BRINGING CONTRABAND (ILLEGAL
DRUGS) INTO THE PRISON FOR SALE TO THE INMATES. HE (SUBJECT) HAD
ABSOLUTELY NO INVOLVEMENT OR KNOWLEDGE WHATSOEVER OF THIS CO-WORKER'S
MISCONDUCT.

HE TRANSFERRED WITH THE BOP FROM MIAMI TO THE FEDERAL PRISON IN
FLORENCE, CO IN 8/93. WHILE AT THE PRISON IN CO, HE WAS HARASSED WITH
THE SAME TYPE OF COMMENTS AND ACCUSATIONS THAT HE ENDURED WHILE
WORKING IN MIAMI, FL. HE BELIEVES THAT SOMEONE FROM MIAMI MUST HAVE
CONTACTED EMPLOYEES IN CO AND CONVINCED HIS SUPERVISORS AND CO-WORKERS
OF THE LIES AND UNTRUE ACCUSATIONS ABOUT HIM IN ORDER TO CONTINUE THE
HARASSMENT AGAINST HIM. WHILE WORKING FOR THE BOP IN CO, HE FILED AN
INTERNAL COMPLAINT WITH THE BOP BECAUSE OF THE CONTINUING CONSTANT
HARASSMENT. THE BOP CONDUCTED A WEAK INVESTIGATION WHICH ONLY ASKED
YES OR NO TYPE QUESTIONS. HE WAS NOT SATISFIED WITH THIS
INVESTIGATION, SO HE FILED AN EXTERNAL COMPLAINT AGAINST THE BOP
THROUGH THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (EEOC) SHORTLY
BEFORE HE RESIGNED IN 9/94. THIS COMPLAINT/INVESTIGATION IS STILL
PENDING.

REPORT OF INVESTIGATION
PROPERTY OF U.S. OFFICE OF PERSONNEL MANAGEMENT
P.O. BOX 886, WASHINGTON, D.C. 20044



GOVERNMENT EXHIBIT F



EXHIBIT

```
NAME RODRIGUEZ, TYRONE NMN                           | CASE # 96001848 | PAGE  2
DATES OF INVESTIGATION 03/18/96 - 04/03/96 | SIO 0426 | ORG ID A00 | REPORT #  1
```

HE RESIGNED HIS EMPLOYMENT WITH THE BOP WHEN HE WAS HIRED BY THE FLORIDA (FL) DEPARTMENT OF CORRECTIONS IN 9/94.

HE WORKED FULL TIME AS A PROBATION OFFICER FOR THE STATE OF FL DEPARTMENT OF CORRECTIONS IN TITUSVILLE, FL FROM 9/94 TO 6/95. IN 2/95, HE WORKED ONE DAY ON A WEEKEND AT THE ADVO INC FACTORY IN ORLANDO, FL AS A BINDERY WORKER. HE RESIGNED HIS EMPLOYMENT FROM ADVO INC BECAUSE HE WAS DID NOT LIKE THE JOB AND HE DID NOT WANT IT TO INTERFERE WITH HIS JOB AS A PROBATION OFFICER.

HE WAS FIRED FROM HIS JOB WITH THE STATE OF FL DEPARTMENT OF CORRECTIONS IN 6/95 BECAUSE HE WAS COMPLAINING OF HARASSMENT AND BECAUSE OF RETALIATION FOR FILING A COMPLAINT AGAINST THE FL DEPARTMENT OF CORRECTIONS WITH THE EEOC. HE WAS RECEIVING HARASSMENT SIMILAR TO THE HARASSMENT HE ENDURED WHILE WORKING FOR THE BOP FROM 1990 TO 1994.

THE HARASSMENT WITH THE FL DEPARTMENT OF CORRECTIONS BEGAN IMMEDIATELY AFTER HE STARTED WORK THERE. HIS SUPERVISOR, LARRY CROFT ASKED HIM SEVERAL TIMES ABOUT THE RESULTS OF HIS TUBERCULOSIS (TB) AND KEPT TELLING HIM THAT HE WOULD COME UP POSITIVE FOR TB. ALSO, CROFT TOLD HIM THAT PEOPLE WITH AIDS ALWAYS COME UP POSITIVE FOR TB. CROFT ALSO MADE SOME OTHER COMMENTS ABOUT PERVERTS AND PEDOPHILES WHICH HE (SUBJECT) THOUGHT WERE VERY INAPPROPRIATE WHEN TRAINING A NEW EMPLOYEE. WHILE WORKING FOR THE BOP, HE WAS CONSTANTLY HARASSED ABOUT HAVING AIDS AND ABOUT BEING A PERVERT.

HE ATTENDED TRAINING CLASSES ON A WEEKLY BASIS AT THE ACADEMY IN VERO BEACH, FL FROM 10/94 TO 12/94. WHILE IN THE CLASS, SEVERAL OF HIS CLASSMATES MADE COMMENTS TO HIM WHICH WERE VERY DISTURBING. ONE CLASSMATE TOLD HIM THAT THE CLASSMATE KNEW THAT HE (SUBJECT) WAS A DRUG DEALER AND THAT HE (SUBJECT) WAS GOING TO ORLANDO ON THE WEEKENDS TO SELL ILLEGAL DRUGS. THE CLASSMATE ALSO TOLD HIM THAT HE (SUBJECT) WOULD SOON BE FIRED BECAUSE HE WAS A DRUG DEALER. ANOTHER CLASSMATE TOLD HIM THAT SHE (THE CLASSMATE) KNEW THAT HE STAYED UP LATE IN HIS ROOM WATCHING PORNOGRAPHIC MOVIES ALL NIGHT, INSINUATING THAT HE WAS SOME SORT OF PERVERT. HE (SUBJECT) DID NOT TAKE THESE COMMENTS AS A JOKE OR AS SOMETHING TO BE DISMISSED BECAUSE THE COMMENTS WERE THE SAME TYPE OF VULGAR AND OUTRAGEOUS COMMENTS THAT HE WAS SUBJECTED TO WHILE WORKING FOR THE BOP.

BEFORE HE WENT TO WORK FOR THE BOP, HE HAD NEVER BEEN TREATED LIKE THIS BEFORE. HE WAS VERY SUSPICIOUS OF THIS HARASSMENT HE WAS RECEIVING FROM THE FL DEPARTMENT OF CORRECTIONS BECAUSE IT WAS SO SIMILAR TO THE HARASSMENT AND COMMENTS HE WAS SUBJECTED TO WITH THE BOP.

IN EARLY 1995, HE REQUESTED AN INTERNAL INVESTIGATION BE CONDUCTED BY THE FL DEPARTMENT OF CORRECTIONS BECAUSE THE HARASSMENT WAS SO SIMILAR

REPORT OF INVESTIGATION
PROPERTY OF U.S. OFFICE OF PERSONNEL MANAGEMENT
P.O. BOX 886, WASHINGTON, D.C. 20044

```
JJJ95239055
```

| NAME RODRIGUEZ, TYRONE NMN | CASE # 96001846 | PAGE 3 |
|---|---|---|

DATES OF INVESTIGATION 03/18/96 - 04/05/96 | SID 0426 | ORG ID A80 | REPORT # 1

TO THE HARASSMENT HE RECEIVED WHILE EMPLOYED WITH THE BOP. HE SPECULATED THAT THE INVESTIGATION WOULD PROVE RETALIATION ON THE PART OF SOMEONE FROM THE BOP. THE TIMING OF THE HARASSMENT (IMMEDIATELY AFTER LEAVING THE BOP) AND THE EXACT SAME OUTRAGEOUS AND VULGAR COMMENTS MADE HIM BELIEVE THAT SOMEONE CONNECTED WITH THE BOP WAS POSSIBLY TRYING TO DELIBERATELY DEFAME HIS CHARACTER AND HIS REPUTATION.

HE WAS CONVINCED THAT SOMEONE FROM THE BOP MUST HAVE CONTACTED HIS CLASSMATES AND TOLD HIS CLASSMATES OUTRAGEOUS LIES ABOUT HIM BECAUSE NONE OF THE CLASSMATES HAD EVER MET HIM OR KNOWN OF HIM BEFORE THEY MET HIM AT THE ACADEMY. HE FOUND IT VERY STRANGE THAT HIS CLASSMATES WOULD COME UP WITH THE SAME SORT OF LIES AND VULGAR COMMENTS ABOUT HIM THAT SURFACED WHEN HE WORKED FOR THE BOP.

AN INVESTIGATOR (INVESTIGATOR SPURLOCK) FROM THE FL DEPARTMENT OF CORRECTIONS I.G. OFFICE CAME TO HIS OFFICE IN TITUSVILLE, FL SHORTLY AFTER HE FILED THE INTERNAL COMPLAINT. SPURLOCK TOLD HIM THAT SPURLOCK WOULD READ SUBJECT'S COMPLAINT AFTER SPURLOCK WAS DONE WITH ANOTHER INVESTIGATION SPURLOCK WAS WORKING ON. WHILE HE (SUBJECT) WAS TELLING SPURLOCK ABOUT HIS COMPLAINT, SPURLOCK APPEARED TO BE SLEEPING AND VERY UNINTERESTED. BEFORE SPURLOCK LEFT HIS OFFICE, SPURLOCK QUESTIONED HIM ABOUT SPURLOCK'S OTHER CASE WHICH INVOLVED A CORRUPT PROBATION OFFICER WHO WAS ARRESTED FOR ATTEMPTED SEXUAL BATTERY. HE THOUGHT THAT THIS WAS VERY STRANGE BECAUSE HE (SUBJECT) HAD ONLY WORKED IN THE SAME OFFICE WITH THIS CORRUPT PROBATION OFFICER FOR A WEEK AND DID NOT KNOW HIM (THE CORRUPT PROBATION OFFICER).

BECAUSE HE FELT THAT SPURLOCK SHOWED SUCH LITTLE CONCERN FOR HIS COMPLAINT, HE FILED AN EXTERNAL COMPLAINT WITH THE EEOC IN MIAMI, FL IN FEBRUARY OF 1995. THE COMPLAINT WAS BASED ON DISCRIMINATION BECAUSE OF HIS NATIONAL ORIGIN AND BECAUSE OF RETALIATION ON THE PART OF THE DEPARTMENT OF CORRECTIONS.

HE BELIEVES THAT HONESTY, CHARACTER AND REPUTATION ARE EXTREMELY IMPORTANT IN ANY TYPE OF LAW ENFORCEMENT POSITION. HE FELT THAT THE LIES, UNFOUNDED ACCUSATIONS AND OUTRAGEOUS COMMENTS MADE ABOUT HIM WOULD RUIN HIS CAREER IN LAW ENFORCEMENT AND THAT HE NEEDED TO DO SOMETHING TO ENSURE THAT HIS CHARACTER AND REPUTATION WOULD REMAIN INTACT.

HIS CONCERN FOR HIS REPUTATION AND THE STRANGE SIMILARITIES OF THE HARASSMENT FROM BOTH EMPLOYMENTS PROMPTED HIM TO HIRE A PRIVATE INVESTIGATOR IN 2/95. THE PRIVATE INVESTIGATOR CONTACTED HIS THREE PREVIOUS EMPLOYERS WHICH WERE THE BOP IN FLORENCE, CO, THE BOP IN MIAMI, FL AND THE OFFICE OF THE AUDITOR GENERAL. (SUBJECT PROVIDED A COPY OF THE PRIVATE INVESTIGATOR'S REPORT DURING THE SUBJECT INTERVIEW). ALL OF THE CONTACTS WERE FAVORABLE EXCEPT THE CONTACT WITH KARL BELFONTI, HIS PREVIOUS SUPERVISOR FROM THE BOP IN FLORENCE, CO. WHEN BELFONTI WAS ASKED IF HE (SUBJECT) WAS OF GOOD CHARACTER,

REPORT OF INVESTIGATION
PROPERTY OF U.S. OFFICE OF PERSONNEL MANAGEMENT
P.O. BOX 886, WASHINGTON, D.C. 20044

3

```
J 0 0 9 6 2 3 9 0 5 5
```

NAME RODRIGUEZ, TYRONE NMN | CASE # 96001848 | PAGE 4
DATES OF INVESTIGATION 03/18/96 - 04/05/96 | SID 0426 | ORG ID A80 | REPORT # 1

CO. WHEN BELFONTI WAS ASKED IF HE (SUBJECT) WAS OF GOOD CHARACTER, BELFONTI RESPONDED BY SAYING "I'LL LEAVE THAT QUESTION OPEN". ALSO, BELFONTI NOTED THAT HE (SUBJECT) HAD A LITTLE BIT OF PROBLEMS WITH CO-WORKERS, WHICH BELFONTI BELIEVED STEMMED FROM SOME PROBLEMS HE (SUBJECT) HAD FROM THE PRIOR INSTITUTION THAT HE WORKED AT IN MIAMI. HE (SUBJECT) WAS VERY SENSITIVE TO WHAT THE STAFF WOULD SAY TO HIM AND ALWAYS TOOK EVERYTHING OUT OF CONTEXT, EVEN IF IT WAS A JOKE. ACCORDING TO BELFONTI, HE AND BELFONTI NEVER HAD A PROBLEM.

THE HARASSMENT WITH THE FL DEPARTMENT OF CORRECTIONS CONTINUED AT WORK TO THE POINT THAT HE TOOK THE TIME IN 5/95 TO WRITE A LETTER TO THE DIRECTOR OF THE FL DEPARTMENT OF CORRECTIONS, HARRY SINGLETARY, DETAILING THE HARASSMENT. IN HINDSIGHT, HE REALIZED THAT HIS LETTER WAS SOMEWHAT INAPPROPRIATE. HE WROTE THE LETTER AFTER DRINKING TWO OR THREE BEERS AND WHEN HE WAS ANGRY. THE LETTER DETAILED HIS PROBLEMS WHILE EMPLOYED WITH THE DEPARTMENT OF CORRECTIONS. THE LETTER WAS NOT VERY WELL WRITTEN BECAUSE HE HAD WRITTEN IT AFTER HE HAD BEEN DRINKING. THE DIRECTOR MISCONSTRUED SOME OF HIS WORDING AND BELIEVED HE (SUBJECT) HAD BEEN THREATENING IN HIS LETTER. HE WAS NEVER GIVEN AN OPPORTUNITY TO TALK TO ANYONE IN MANAGEMENT TO EXPLAIN HIS WORDING AND THAT HE DID NOT PUT HIS THOUGHTS IN THE PROPER WORDS.

ABOUT THE SAME TIME THAT HE WROTE THE LETTER, SOMEONE HAD PUT A SCREW IN THE WHITEWALL PORTION OF ONE OF HIS TIRES ON HIS CAR WHILE HE WAS IN THE OFFICE IN TITUSVILLE. HE MADE THE COMMENT THAT IF HE EVER SAW SOMEONE DOING THIS TO HIS CAR THAT HE WOULD TAKE CARE OF THEM.

SHORTLY AFTER HE WROTE THE LETTER AND AFTER THIS INCIDENT WITH HIS CAR, HE WAS TOLD BY THE REGIONAL ADMINISTRATOR THAT HE WOULD BE PUT ON ANNUAL LEAVE PENDING A PSYCHIATRIC EVALUATION. TWO DAYS LATER, HE WAS EVALUATED BY DR. BALLENTINE, A PSYCHIATRIST AND A LAWYER WHO WORKS UNDER CONTRACT FOR THE FL DEPARTMENT OF CORRECTIONS. HE TALKED TO DR BALLENTINE FOR ABOUT 20 MINUTES AND DR BALLENTINE PERFORMED AN MMPI TEST ON HIM.

AFTER THE EVALUATION, HE WAS TOLD TO REMAIN ON ANNUAL LEAVE UNTIL FURTHER NOTICE. APPROXIMATELY A WEEK AFTER THE EVALUATION, HE WAS NOTIFIED IN A LETTER THAT HE WAS DISMISSED BECAUSE HE DID NOT SUCCESSFULLY COMPLETE HIS PROBATIONARY PERIOD OF ONE YEAR.

HE FILED FOR UNEMPLOYMENT COMPENSATION AFTER HE WAS DISMISSED. ON HIS UNEMPLOYMENT COMPENSATION PAPERS, THE FL DEPARTMENT OF CORRECTIONS LISTED HIS REASON FOR TERMINATION AS UNSATISFACTORY WORK PERFORMANCE.

ALSO, AFTER HE WAS DISMISSED, HE ORDERED A COPY OF HIS PSYCHIATRIC EVALUATION FROM DR. BALLENTINE. HE RECEIVED A COPY OF THE DOCTOR'S EVALUATION IN THE SUMMER OF 1995. HE PROVIDED A COPY OF THE PSYCHIATRIC EVALUATION DURING THE SUBJECT INTERVIEW.

IN THE REPORT, DR BALLENTINE NOTED THAT HE EVALUATED THE SUBJECT ON

JJJ9323905S

| NAME RODRIGUEZ, TYRONE NMN | CASE # 96001848 | PAGE 5 |

DATES OF INVESTIGATION 03/18/96 - 04/05/96 | SID 0426 | ORG ID A80 | REPORT # 1

5/24/95 TO DETERMINE WHETHER HE (SUBJECT) WAS ABLE TO PERFORM HIS ASSIGNED DUTIES AND WHETHER HE WAS DANGEROUS.

DR. BALLENTINE CONCLUDED THAT IT WAS HIS CLINICAL OPINION WITH A REASONABLE DEGREE OF CERTAINTY THAT THE SUBJECT WAS SUFFERING FROM A DIAGNOSIS OF DELUSIONAL DISORDER - PERSECUTORY TYPE, AND THE DELUSIONS INTERFERED WITH HIS ABILITY TO DEAL RATIONALLY WITH OTHER PEOPLE IN THE JOB OF A CASELOAD OFFICER AND IN THE JOB OF A PRE-SENTENCE INVESTIGATOR. AT THE TIME OF THE EVALUATION, HE (SUBJECT) WAS NOT DANGEROUS TO HIMSELF OR OTHERS.

HE BELIEVED THAT DR. BALLENTINE DID NOT GIVE HIM A FAIR EVALUATION BECAUSE DR. BALLENTINE ONLY TALKED TO HIM FOR ABOUT 20 MINUTES. HE FELT THAT THIS WAS ONLY DR. BALLENTINE'S OPINION AND THAT DR. BALLENTINE DID NOT PROPERLY EVALUATE HIM.

IN THE SUMMER OF 1995, HE WENT TO ANOTHER PSYCHIATRIST IN ORDER TO GET A SECOND OPINION. HE SAW DR. L. SAAVEDRA IN ORLANDO, FL ONE TIME FOR AN EVALUATION. HE TALKED TO DR. SAAVEDRA FOR ABOUT 20 MINUTES. DR. SAAVEDRA PRESCRIBED THE MEDICATION CALLED RISPERDOL FOR HIM. HE FOUND OUT LATER THAT THE MEDICATION WAS AN ANTI PSYCHOTIC DRUG AND DECIDED NOT TO TAKE IT. HE WENT BACK TO DR. SAAVEDRA'S OFFICE TO GET THE DOCTOR'S EVALUATION REPORT BUT THE DOCTOR HAD NOT COMPLETED IT. SINCE THEN, HE HAS HAD NO OTHER PSYCHIATRIC EVALUATION OR SOUGHT ANY PROFESSIONAL HELP FOR ANY MENTAL OR EMOTIONAL PROBLEM.

INVESTIGATOR SPURLOCK EVENTUALLY COMPLETED HIS INVESTIGATION IN 12/95. THE EEOC REVIEWED THIS INVESTIGATION AND DETERMINED THAT THERE WAS NO DISCRIMINATION. THE EEOC COMPLAINT WAS DISMISSED IN EARLY 1996. HE WAS GIVEN 90 DAYS TO FILE A LAWSUIT AGAINST THE FL DEPARTMENT OF CORRECTIONS WHICH HE PLANS TO DO. HE NOTIFIED THE FL DEPARTMENT OF CORRECTIONS IN A LETTER DATED 3/14/96 THAT HE PLANS TO FILE A LAWSUIT AND REQUESTED THE DEPARTMENT OF CORRECTIONS RELEASE TO HIM THE INVESTIGATION THAT WAS CONDUCTED BY THE I.G. OFFICE. AT THE PRESENT TIME, HE HAS NOT RECEIVED ANY CORRESPONDENCE FROM THE DEPARTMENT OF CORRECTIONS IN REPLY TO HIS LETTER FROM 3/96.

FROM 6/95 TO 12/95, HE WAS UNEMPLOYED. DURING THIS TIME, HE COLLECTED UNEMPLOYMENT COMPENSATION BENEFITS AND WAS ACTIVELY SEEKING A FULL TIME JOB.

FROM 12/95 TO 1/96, HE WORKED FULL TIME AS AN INVESTIGATOR FOR THE BEYMER AND BOND INVESTIGATIONS COMPANY IN MAITLAND, FL.

HE WAS DISMISSED FROM HIS JOB AS AN INVESTIGATOR WITH BEYMER AND BOND INVESTIGATIONS BECAUSE HIS SUPERVISORS BELIEVED THAT HE WAS NOT PROGRESSING IN HIS WORK AS FAST AS THEY THOUGHT HE SHOULD HAVE BEEN DOING. HE COULD NOT AFFORD TO PURCHASE ALL OF THE EQUIPMENT THAT THE COMPANY REQUIRED HIM TO HAVE IN ORDER TO DO THE JOB. HE WAS REQUIRED TO PURCHASE VIDEO EQUIPMENT, CAMERA EQUIPMENT AND VARIOUS OTHER TOOLS

REPORT OF INVESTIGATION
PROPERTY OF U.S. OFFICE OF PERSONNEL MANAGEMENT
P.O. BOX 886, WASHINGTON, D.C. 20044

5

```
                        00952239055
```

| | | |
|---|---|---|
| NAME RODRIGUEZ, TYRONE NMN | CASE # 96001848 | PAGE 6 |
| DATES OF INVESTIGATION 03/18/96 - 04/05/96 | SIO 0426 | ORG ID A80 | REPORT # 1 |

OF THE TRADE WHICH AMOUNTED TO ABOUT $1400. ALSO, ON THE FIRST DAY OF WORK, HE WAS REQUIRED TO PAY $200 FOR HIS INVESTIGATOR'S LICENSE. HE DISCUSSED WITH HIS SUPERVISORS HIS FINANCIAL DIFFICULTIES OF PURCHASING ALL THIS EQUIPMENT WHEN HE HAD JUST STARTED WORKING AGAIN. ALSO, WHEN HE WAS ON SURVEILLANCE A COUPLE OF TIMES, HE LOST THE PERSON HE WAS FOLLOWING IN THE CAR. HE WOULD NOT CROSS THE MEDIAN TO DO A U-TURN TO CONTINUE TO FOLLOW THE PERSON BECAUSE HE DID NOT WANT TO DRIVE IN AN UNSAFE MANNER. HE SPECULATED THAT BECAUSE OF HIS INABILITY TO PURCHASE ALL THE EQUIPMENT AND BECAUSE HE LOST THE PERSON HE WAS FOLLOWING A COUPLE OF TIMES, THE MANAGEMENT DECIDED TO DISMISS HIM.

FROM 1/96 TO 2/17/96, HE WAS UNEMPLOYED. HIS WIFE WORKED FULL TIME DURING THIS TIME TO FINANCIALLY SUPPORT HIM AND THEIR FAMILY. HE SPENT ALL OF HIS TIME LOOKING FOR A JOB. SINCE 2/18/96, HE HAS BEEN EMPLOYED FULL TIME AS A STORE DETECTIVE AT THE CARNIVAL SHOE STORE IN ORLANDO, FL.

IN APPROXIMATELY 2/95, HE WAS CHARGED WITH SPEEDING IN BITHLO (ORANGE COUNTY), FL. HE ATTENDED A DRIVING SCHOOL AND PAID A FINE OF $165. HE HAS HAD NO OTHER ARRESTS OR ANY OTHER PROBLEMS WITH LAW ENFORCEMENT OFFICIALS.

IN 8/95, HE AND HIS WIFE VOLUNTARILY FILED FOR A JOINT CHAPTER SEVEN BANKRUPTCY IN ORLANDO, FL. WHILE WORKING FULL TIME, HE AND HIS WIFE HAD INCURRED CREDIT CARD DEBTS BUT HAD NO PROBLEM MAKING THE MONTHLY PAYMENTS. HOWEVER, AFTER HE WAS DISMISSED FROM HIS JOB WITH THE FL DEPARTMENT OF CORRECTIONS, HE HAD TO WAIT ABOUT 6 TO 8 WEEKS BEFORE HE COULD COLLECT UNEMPLOYMENT COMPENSATION BENEFITS. WHILE UNEMPLOYED AND WAITING TO COLLECT HIS UNEMPLOYMENT COMPENSATION PAYMENTS, HE AND HIS WIFE BEGAN EXPERIENCING FINANCIAL DIFFICULTIES. THEY COULD NOT CONTINUE TO PAY ALL OF THEIR MONTHLY PAYMENTS ON THEIR CREDIT CARD BILLS AND WERE CONSTANTLY BEING HOUNDED BY THE CREDITORS. HE AND HIS WIFE TALKED TO A LAWYER WHO ADVISED THEM TO FILE FOR A CHAPTER SEVEN BANKRUPTCY. HE AND HIS WIFE REAFFIRMED THE LOANS ON THEIR AUTOMOBILES AND A LOAN THEY HAD ON THEIR FURNITURE. ALSO, HIS STUDENT LOAN WAS NOT INCLUDED IN THE BANKRUPTCY. HE HAD THE STUDENT LOAN DEFERRED FOR SIX MONTHS. THE BANKRUPTCY AMOUNTED TO APPROXIMATELY $25,000. SINCE THEN, HE HAS BEEN CURRENT AND UP TO DATE ON ALL OF HIS FINANCIAL ACCOUNTS. PRIOR TO THIS BANKRUPTCY, HE HAD EXCELLENT CREDIT. THE BANKRUPTCY WAS A DIRECT RESULT OF HIS DISMISSAL FROM HIS JOB WITH THE FL DEPARTMENT OF CORRECTIONS.

ITEM: 002                                                                SOURCE: 002
NAME CYPRESS RUN APARTMENTS, 7100 GATESHEAD CIRCLE, ORLANDO, FL
RENTAL RECORD
PROVIDER MARIA SERRANO, LEASING CONSULTANT

ACCEPTABLE

REPORT OF INVESTIGATION
PROPERTY OF U.S. OFFICE OF PERSONNEL MANAGEMENT
P.O. BOX 886, WASHINGTON, D.C. 20044

Case # 96001848
RODRIGUEZ
CD 4/5/96

Standard Form 86
Revised September 1995
U.S. Office of Personnel Management
5 CFR Parts 731, 732, and 736

# UNITED STATES OF AMERICA
## AUTHORIZATION FOR RELEASE OF MEDICAL INFORMATION

Carefully read this authorization to release information about you, then sign and date it in ink.

### Instructions for Completing this Release

This is a release for the investigator to ask your health practitioner(s) the three questions below concerning your mental health consultations. Your signature will allow the practitioner(s) to answer only these questions.

Dr. L. Saavedra
1315 S. Orange Ave
Orlando, FL

I am seeking assignment to or retention in a position with the Federal government which requires access to classified national security information or special nuclear information or material. As part of the clearance process, I hereby authorize the investigator, special agent, or duly accredited representative of the authorized Federal agency conducting my background investigation, to obtain the following information relating to my mental health consultations:

  Does the person under investigation have a condition or treatment that could impair his/her judgement or reliability, particularly in the context of safeguarding classified national security information or special nuclear information or material?

  If so, please describe the nature of the condition and the extent and duration of the impairment or treatment.

  What is the prognosis?

I understand the information released pursuant to this release is for use by the Federal Government only for purposes provided in the Standard Form 86 and that it may be redisclosed by the Government only as authorized by law.

Copies of this authorization that show my signature are as valid as the original release signed by me. This authorization is valid for 1 year from the date signed or upon termination of my affiliation with the Federal Government, whichever is sooner.

Case # 96001848
RODRIGUEZ
CD 4/5/96

**CONSENT TO INSPECTION, COPYING AND RELEASE
OF MEDICAL CONFIDENTIAL INFORMATION**

EMPLOYEE NAME (Printed) Tyrone Rodriguez   SS#: 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

NAME OF COMPANY OR PERSON(S) AUTHORIZED: OPM
US Government

REASON FOR INFORMATION: Background Investigation

The undersigned hereby authorizes and consents to the disclosure to the above of any and all information, records, documents, reports, clinical abstracts, histories and charts, of every kind and description, including any information relating to HIV testing, AIDS and any AIDS-related syndromes, relating to my condition, care, confinement and treatment. I also consent to the release of alcohol, drug, psychiatric, and psychological information. In addition, I consent to the inspection and copying of same by said company or person(s) or representatives or agents and to the furnishing to them of photostatic or other copies of same.

In furtherance of this authorization, I hereby waive all provisions of law and privileges relating to the disclosures hereby authorized.

Employee's Signature

STATE OF FLORIDA, COUNTY OF Orange. The foregoing instrument was acknowledged before me this ___ (date) by ___ who is personally known to me or who has produced FLA Drivers Lic. (type of identification) as identification and who did (did not) take an oath.

Notary's Signature
Notary's Name
Notary's Title or Rank
Comm. No. CC 229872
Serial number, if any

(Side 2)