UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED
OCT 1 9 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Tyrone Rodriguez, Sr.
Appellant,
1405 W. Donegan Avenue, Apt. D
Kissimmee, Florida 34741
Tel: 407-744-5238

Case No: 06-cv-359 (ESH)

v.

Date: October 17, 2007

Michael Chertoff, Department of Homeland Security,
Appellee,
_____/

**JURY TRIAL DEMANDED**

## NOTICE OF CHANGE OF ADDRESS AND PLAINTIFF'S MOEORANDUM OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AMD PLAINTIFF ALSO FILES A MOTION TO COMPEL DISCOVERY AND MOTION FOR A CONTINUANCE OF SUMMARY JUDGEMENT ATTACHED

RODRIGUEZ notifies the court that his new address is captioned above. COMES NOW PLAINTIFF, Tyrone Rodriguez, Sr., Pro Se/Forma Pauperis, who request that this honorable Court deny efendant's Motion for Summary Judgment for the reasons set below.

### I. PLAINTIFF'S ALLEGATIONS

Plaintiff RODRIGUEZ alleges that the defendant refused to hire him as a Border Patrol Agent because of his record of disability or because they regarded him as a disabled in violation of the Americans with Disabilities Act 9ADA), 42 U.S.C 1201, et.seq.; the Rehabilitation Act 29 U.S.C. 794; as well as the defendant discriminated against him based on his national origin (Puerto Rican), his prior EEOC activity, or reprisal when it failed to select him or give him, and violated internal agency policy when they failed to notify him of the non-selection process per Code of Federal Regulations 731.303 (e).

1

## II. ISSUES MATERIAL FACT WHICH PRECLUDE SUMMARY JUDGMENT

1. Defendant wishes the court to dismiss the case based on possible technical issues in the complaint. RODRIGUEZ filed an amended complaint before this motion for summary judgment and if that new complaint is not technically acceptable, the court should not entertain a dismissal without allowing a Pro Se Plaintiff more than one opportunity to amend there complaint as a matter of law and right. RODRIGUEZ wishes the court to use the amended complaint as a guide for background and for statements of the facts of the case.

2. Defendants sole defense is there reason for not hiring RODRIGUEZ was based on three reasons, I. He was booted out of the register via computer with no justification, II. He was not selected based on background information and past medical history of 2 to 3 years old, III. The agency also did not select RODRIGUEZ based on the consideration of there agency Medical Review Officer's Report Dr. Bruce Butler, which is not a psychologist or otherwise qualified mental health expert and in fact just a general physician. Please see exhibits 1 through 17.

3. The agency contracted there own expert on Mach 7, 1997, Edmund S. Bartlett, PH.D., Clinical Psychologist, to conduct a 4 hour Psychological/Psychiatric Evaluation of RODRIGUEZ pending this recommendation and report for suitability selection. Dr. Bartlett gave a positive recommendation for selection for the position of Border Patrol Agent, where he found no underlying psychopathology and found RODRIGUEZ within the range of acceptability

    for the position of Border Patrol Agent and submitted his report to the agency. See Ex. 1.

4.    The agency conducted a secret assessment with Dr. Bruce Butler, where Dr. Butler never contacted RODRIGUEZ at any time or interviewed him, never had Dr. Bartlett evaluate RODRIGUEZ further, had another medical expert examine RODRIGUEZ, nor the agency ever contacted RODRIGUEZ, of the non suitability process or give him a chance to be notified of the pending non selection process, the evidence or documentation used to non select him, never given a chance to refute contradictory evidence or give evidence in support of his selection in violation of the CFP; therefore, RODRIGUEZ, filed an EEOC complaint. During the EEOC investigation, RODRIGUEZ was never given the chance to answer questions by agency personnel, given proper discovery requests/documents, and evidence up to the almost the time of the actual EEOC hearing. See Exhibits 13 through 17.

5.    The agency and the EEOC based there decision of non discrimination based on the erroneous standard "preponderance of the evidence", where the appropriate standard in an administrative EEOC proceeding is "clear and convincing evidence." See Ex.9.

6.    The defendant and the EEOC considered the report of Dr. Butler who is not an expert as more credible than Dr. Bartlett an actual expert in the specific field who actually examined RODRIGUEZ, and where Dr. Butler testified under oath at the hearing that Dr. Bartlett's report had more weight than his based on common sense, that he had a medical malpractice suit against him in the past,

and was once investigated by the Inspector General for allegedly lying in a report against an FBI Agent for his instant employer, swore under oath attesting to his report where he states that he had numerous conversations with Dr. Bartlett, where if Dr. Bartlett had background information he would have changed his opinion of RODRIGUEZ, Dr. Butler also testified that he read no reports by Dr. Saavedra or Dr. Ballentine even though his report states that he clearly considered opinions of Dr. Saavedra or Dr. Ballentine, Dr. Butler also stated that he spoke with Dr. Inwald the founder of Dr.Bartlett's testing, and that Dr Inwald also would have made negative recommendations of RODRIGUEZ based on the recommendations as stated per Dr. Butler. RODRIGUEZ attempted contact with Dr. Saavedra and was contacted by her secretary where she stated that there was no report on file on RODRIGUEZ, or notes on file with conversations with Dr. Butler or any opinions given to him, statement made under the penalties of perjury for not having a sworn affidavit by Dr. Saavedra, but Dr. Saavedera would testify if subpononad. Faced with Dr. Bartlett's Sworn Affidavit and Dr. Inwald affidadavit denying contact with Dr. Butler, Dr. Butler kept his position under oath.  Furthermore, Dr. Butler's report entails numerous pages of exaggerations of having read 90 manuals of delusional disorder and reiterates that to properly diagnose delusional disorder numerous attempts at testing and examining an individual is required to properly obtain an appropriate diagnosis, but contradicts himself in the report that he had sufficient information with the background information based from 1995 and considering what RODRIGUEZ actual

mental health status would be in 1997.  Dr. Bartlett clearly stated that he had no recall of any conversation or notes on file with Dr. Bartlett, nor would he have changed his opinion of RODRIGUEZ based on hearsay information from Dr. Butler, that Dr. Butler report seems to serve his needs (biased and not credible), and that he would only change his opinion based on new information, meaning 1996-1997 at the time frame of testing and examination.  The statements of the EEOC hearing are made under the penalties of perjury in lieu of mailing 600 pages of transcripts. It is undisputed that there were no other reports considered as Dr. Balentine's report was submitted at the hearing which was a 1 hour MMPI which was normal, and a 15 minute interview where RODRIGUEZ was not allowed to explain anything, and the issues were based on personal matters based on RODRIGUEZ being falsely accused of corrupt activities from his previous employer the Bureau of Prisons, with actual accounts that other Officers were accused of, but that RODRIGUEZ was acquainted with but not involved, but in the same area deployed after Hurricane Andrew, where these false accusations and statements were made in his subsequent employer the State of Florida Department of Corrections, where a Probation Officer there formerly worked at the Bureau of Prisons and new employees that worked with RODRIGUEZ and could have started the rumors; however, based on Dr. Balentine's report, RODRIGUEZ was terminated, and the DOC conducted the EEOC investigation thereafter and the employees who made the statements denied them.  Dr. Ballentine was the DOC personal Psychiatrist and used exaggerated statements like

RODRIGUEZ had a world wide belief of a conspiracy, where the situation is a common defamation case from employer to a subsequent employer. RODRIGUEZ has never experienced the same accusations again, nor has he ever worked with anyone that was previously employed at the BOP or the DOC. See Exhibits 2, 3, 4. 5, 6. Delusional Disorder inflicts only 0.003 percent of the population and is not common and there are numerous manuals based on misclassifications of individuals with this type of disorder, see exhibits 7, 8, 9, and 10.

7. The agency also contends that key officials did not know of RODRIGUEZ prior EEOC activity, which cannot be believed due to the fact that the second page of the background report, clearly states ISSSUE: EEOC Activity, BOP, and Dr. Butler testified under oath at the hearing that he was aware of RODRIGUEZ prior EEOC activity, Statement made under the penalty of perjury inliu of submitting 600 pages of transcripts. See exhibit 4.

8. The agency by way of there actions, there secret assessment, not allowing RODRIGUEZ an opportunity to refute evidence, provide evidence, submit expert reports in his favor, the agency violated EEOC rules and regulations, see Enforcement Guidance: Disability related inquiries and medical examinations of employees under the ADA: an employer should be cautious about eying solely on the opinion of its own health care professional that an employee posses a direct threat where that opinion is contradicted by documentation from employee's own treating physician, who is knowledgeable about the employee's medical condition and job functions, and/or other objective evidence. In evaluating conflicting medical information, the employer may find it helpful to consider 91) the area of expertise of each medical professional who has provided information (2) the kind of information each person providing documentation; (3) where a particular opinion is based on speculation or on current, objectively verifiable information about the risks associated with a particular condition; and (4) whether the medical opinion is contradicted by information known to or observed by the employer ( e.g. information about the employee's actual experience in job in question or in previous similar jobs). In addition, a

> "Direct threat" assessment means a significant risk of substantial harm that cannot be eliminated or reduced by reasonable accommodation. 29 C.F.R. 1630.2®(1998). Direct threat determinations must be based on an individualized assessment of the individual's **present** ability to safely perform the essential functions of the job, considering a reasonable medical judgment relying on the most **current** medical knowledge and/or best available evidence. To determine whether an employee posses a direct threat, the following factors should be considered: (1) the duration of the risk; (2) the nature and severity of the potential harm; (3) the likelihood that the potential harm will occur; and (4) the immeninence of potential harm. Where the agency does not utter a single example or previous or current behavior or actions by RODRIGUEZ that are substantiated as fact that poses a direct threat. All they content is that RODRIGUEZ has this disorder based on background information and his past medical history with no specific mentioning on actual actions or acts that constitute a Direct Threat.

Nor does the agency offer the opportunity to visit RODRIGUEZ employment history from 1995 to 1997 through the time of assessment where he was instated as a Licensed Private Investigator in 1995 where the State of Florida Department of Agriculture conducted a thorough background investigation and found no substantial evidence of a mental illness or a Direct Threat to Preclude RODRIGUEZ from obtaining a Private Investigator license and working in the field of security and Private Investigations with excellent reviews, see exhibits 11 and 12. These facts with a proper assessment would have given RODRIGUEZ the proper proof to reverse the non selection decision, but the agency conveniently denied RODRIGUEZ this opportunity as of right and shows motive to discriminate and a pretex for discrimination.

9. The opposing counsel own assertion that the plaintiff cannot prevail because he cannot proof that he was not suffering from a mental impairment at the time of non selection that he cannot prevail. This statement is unfair as the agency denied RODRIGUEZ to attempt to prove that point by keeping him

out of the selection process and the assessment process, which can be viewed as a mixed motive criteria.

## THE SUMMARY JUDGEMENT STANDARD

Summary Judgment should be viewed, viewing the materials presented and drawing all factual inferences in light most favorable to the non-moving party. D'Angelo v. Conagra Foods, Inc. 422 F.3d 1220, 1225 (11th Cir. 2005) quoting Boschese v. Town of Ponce Inlet, 405F.3d 964, 975 (11th Cir. 2005). Summary Judgment is properly granted when "there is no genuine issue as to any material fact" and the "moving party is entitled to a judgment as a matter of law." Fed/R/Civ.P.56©.

## ARGUMENT

### A. Prima Facie Case

In order to establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate that he (1) has a disability, is perceived to have a disability, or has a record of a disability; 92) is qualified for the position; and (3) that he was unlawfully discriminated against due to his disability. Carruthers v. BSA Advertising, Inc., 357 F.3d 1212, 1215 (11th Cir. 2004).

### 1. RECORD OF DIABILITY

In Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 645 (2nd Cir. 1998), the court held that if an individual had a record of impairment, "this part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment." Colwell at 645. In other words, "the impairment indicated in the record must be an impairment that

would substantially limit one or more of the individual's major life activities. Id. At 645.

Moreover, in Sherrod v. American Airlines, Inc. 132 F3d 112, 1120-21 (5th Cir. 1998), the court held that the plaintiff must demonstrate that she or he has been classified or misclassified as having an impairment that effects a major life activity. Sherrod at 1120-21. Likewise, Davison v. Midelfort Clinic, Ltd., 133 F.3d 499, 509 (7th Cir. 1998), the court held that "Setion 12102(2)(B) extends the coverage of the ADA to persons who "ha[ve] ahistory of, or ha[ve] been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R 1630.2(k)." Davidson at 509 citing 29 C.F.R. pt. 1630, App 1630.2)k) (interpretive Guiduance); 2 EEOC Compliance Manual 6887 907(a), at 5323-24; see School Bd. Of Nassau County, Fla. v. Airline, 480 U.S. 273, 279, 107 S.Ct. 1123, 1126-27 (1987) (Rehabilitation Act) (quoting Southeastern Community College v. Davis, 442 U.S. 397, 405-06 n. 6, 99 S.Ct. 2361, 2366-67 n. 6 (1979); history of or a misclassification as having, a mental or physical impairment that "substantially limits one or more  major life activities.") As the EEOC regulations recognize, as long as the employer relies on a record that classifies a person as having a physical or mental impairment that substantially limits a major life activity, that person is considered disabled under the ADA – even if the classification was erroneous. Id.; 29 C.F.R. Section 1630.2(k).In Phillips v Wal-Mart Stores, Inc., 78 F. Suupp.2d 1274, 1287 (S.D.Ala. 1999) (emphasis added), the court held that in order to establish the firs prong of a pram facie case based upon  record of disability, a plaintiff must show

that the employer elide upon a record which either classified or misclassified that individual as having a physical or mental impairment that substantially limits a major life activity. Id. (emphasis added). The Phillips court recognized Congress' intent in passing Section 12102(2)(B) was to unsure that individuals are not discriminated against because they have been misclassified as disabled. Phillips 78 F.Supp. 2d at 1287. As such, " an individual need not have an actual disability under the ADA to have a record of diability." F.Supp.2d at 1287. Thus, RODRIGUEZ, only show that Defendant relied upon a record that misclassified him as having a substantially limiting impairment to satisfy the definition of disability set forth in section 12102(2)(B).Id. Here, a reasonable jury could find that Defendant did not hire RODRIGUEZ relied on heresay background information 2 to 3 years old and Dr. Butler's unqualified biased self serving inner agency report as contradicted, sworn, and attested to by Dr. Bartlett who submitted a positive report and recommendation of RODRIGUEZ for the position based on the agency's request and hired Dr. Bartlett. By contrast, Dr. Butler's report in and itself establishes a record of impairment (delusional disorder) which effected the major life function of working and perceived him as not being able to perform a broad range of jobs. All RODRIGUEZ needs to show is that Defendant relied on the heresay background information and Dr. Butler's unqualified report, and past 2 and 3 year old medical record to make an employment decision, which would be a compounding factor…" in considering RODRIGUEZ for employment. See Hernandez v. Hughes Missile Systems, 362 F.3d. 564, 570 (9th Cir. 2004)(Summary Judgment reversed because a reasonable juror could

determine that employer refused to hire plaintiff because of his past record of addiction, which included a positive drug test and a letter from the plaintiff AA Sponsor).

## 2. REGARDED AS DISABLED

As with actual impairments, courts have held that perceived impairments must be substantially limiting and significant. Gordon v. E.L Hamm & Associates, Inc. 100F.3d 907, 913 (11th Cir. 1996); Standard v. A.B.L.E., Inc., 161 F.3d 1318, 1327 (11th Cir. 1998). Significant impairments are viewed by the employer as generally foreclosing the types of employment involved. Defendant foreclosed all employment from RODRIGUEZ they perceived RODRIGUEZ as substantially limited in his ability to work to his perceived record of delusional disorder, where a reasonable jury can deduce that RODRIGUEZ was not hired based on that fact, and based on the Defendants or statements on there fears of RODRIGUEZ being tasks with making life threatening decisions and carrying a weapon, which shows myths and stereotypical fears based with no factual evidence of any dangerous behavior in previous or current positions held with similar experience. In other words, a reasonable jury could determine that based in the above, the Defendant regarded RODRIGUEZ a suffering from a perceived Delusional Disorder. See Sutton v. United Air Lines, Inc. 527 U.S. 471, 489 (1999). Because Defendant perceived RODRIGUEZ as unable to work due to perceived (record of) Delusional Disorder, RODRIGUEZ must produce evidence showing that Defendant regarded him as being significantly restricted in the ability to perform a class of jobs or a broad range of jobs. Witter v. Delta Airlines, Inc., 138 F.3d

1366, 1370 (11th Cir. 1998); Rodriguez v. ConAgra Grocery Products Co., 431 F.3d 204, 212 (5th Cir. 2005). RODRIGUEZ at the time of his application and the EEOC process was qualified for numerous non law enforcement positions to include Case Manager, Immigration Examiner, and Immigration Analyst which had nation wide appointments nationwide, where RODRIGUEZ applied under priority veteran status and Spanish speaker status on an open wide register. Defendant refused to hire RODRIGUEZ for any non law enforcement positions clearly documented in transcripts at the EEOC hearing, the EEOC hearing accounts are given under the penalties of perjury in lieu of not providing 600 pages of transcripts. Refusing to consider a plaintiff for any of its jobs is evidence that the employer regarded the Plaintiff as substantially limited in the major activity of working. See Rodriguez 431 F.3d at 214. Here, a reasonable jury could determine that the Defendant refused to consider RODRIGUEZ from not only law enforcement, but non law enforcement position in its blanket refusal of employment. In Golldsmith v. Jackson Memorial Hospital Public Health, 33 F. Supp 2d 1336, 1340-41 (S.D.Fla. 1998), a doctor with a record of alcoholism applied for a surgical position with the defendant hospital. The plaintiff proceeded under a theory that the hospital regarded him as an alcoholic substantially limited in the major life activity of working because the hospital failed to offer him a surgical position. However, the court held that the employer did not perceive the doctor as significantly limited to perform a broad range of jobs since it offered him an alterative position as a primary care physician. Defendant made no such offer of alterative employment within the agency even

though available positions – even non law enforcement positions were available nationwide. Refusing to consider a plaintiff for a non law enforcement position is further evidence that the defendant regards the plaintiff as substantially limited in the major life activity of working. Rodriguez 431 F.3d at 214. Moreove, Defendant's perception about RODRIGUEZ inability to work within the Border Patrol Unit " also constitutes competent evidence of the employer's perception about the plaintiff's ability to perform the same broad class of work anywhere else. " See Moorer v. Baptist Memorial Helath Care, 398 F.3d 469, 438-84 (6th Cir. 2005).

## QUALIFIED INDIVIDUAL AND AS AN INDIVIDUAL OF A PROTECTED CLASS (PUERTO RICAN)

The next prong of the prima facie case requires that RODRIGUEZ that he was qualified for the position sought. All the plaintiff must show is that he possesses the basic skills to perform the job to satisfy this prong. See Gregory v. Daly, 243 F.3d 687, 696 (2nd Cir. 2001). See also DelaCruz v. New York Human Resources Administration, 82 F.3d 20(2nd Cir. 1996) (Limited meaning of "qualified in context of prima facie case: Plaintiff must show only that he possessed the skills necessary to perform the job); Davenport v. Riverview Gardens, 30 F.3d 940, 944 (8th Cir. 1994). RODRIGUEZ is a veteran of the U.S. Army Combat Infantry, has a A.A & B.S. Degree in Criminal Justice, was a former State of Florida Investigator, A State Probation Officer, a Federal Correctional Officer, Federal Case Manager, and has held Security Officer positions, see exhibit 15. Since RODRIGUEZA posses the skills necessary to be

a Border Patrol Agent, he was qualified for the position. In arguing that the Plaintiff was not qualified for the position because of his background, Defendant conflaes the prima facie by bringing pretex analyss into the prima facie case. In Benson v. Tocco, 113 F.3d 1203, 1209 n.5 (11th Cir. 1997) 11th Circuit rejected the District Court's analysis in age discrimination case because it "conflate" element of primae facie case with the pretext showing that plaintiff must make in order to overcome defedant's assertion of legitmte, non discriminatory reasons for its action.

A primae facie standard that includes relative qualifications as a necessary
element runs contrary to the policies underlying the McDonnell Douglas prima
facie case..the prima facie case enables the plaintiff to reach the legal presumption
of discrimination that shifts the burden of producing evidence to the defendant
employer. This presumption ensures that a plaintiff who cannot establish that the
employer harbored a discriminatory animus towards her may still survive a
motion for judgment as a matter of law at the close of her case and thus force the
employer to articulate its motives for the challenged employment decision so that
the plaintiff has an opportunity to raise an inference of intentional discrimination
by circumstantial evidence. The presumption, therefore, accounts for the
disparity in access to information between employee and employer regarding the
employer's true motives for making the challenged employment decision…Only
the employer knows whether to [promote] the plaintiff, and only the employer can
establish what qualifications it actually used to make its promotion decisions.
Further, if the employer utilized subjective qualifications in making the
challenged decision, there is no way for the plaintiff employee to determine how
he "ranked" according to those subjective qualifications in the decision maker's
mind. It is therefore appropriate to place the burden of articulating those
qualifications, if relevant, on the employer, not the employee. See Walker v.
Morthan, 158 F.3d 1177, 1192-1193 (11th Cir. 1998).

As a result, the Defendant's subjective assessment of the plaintiff's qualifications are better discussed in the pretex phase. Vessels v. Atlanta Indep Sch Dist, 408 F.3d 763 (11th Cir. 2005). The agency openly admits that they hired quite considerably more Mexican American applicants than Puerto Rican Americans; therefore, the national origin discrimination portion is quite moot.

## ADVERSE ACTION

A reasonable jury could determine that the Defendant did not hire RODRIGUEZ in part because based on his background and Dr. Butler's unqualified opinion of RODRIGUEZ having a delusional disorder and was a compounding factor in the employment decision.

### B. Pretext

Defendant claims that it did not hire RODRIGUEZ because of his background check and Dr. Butler's report, there own employee and Medical Review Officer, General Physician, not a qualified expert in the precise field in question are a pretext for discrimination because defendant failed to follow its own policies and procedures by not allowing RODRIGUEZ to know about Dr. Butler's assessment, not allow RODRIGUEZ to bring forward contrary evidence, not allowing RODRIGUEZ to be properly reexamined by Dr. Bartlett or any agency psychologist in the field of expertise, not reviewing RODRIGUEZ employments from 1995 to 1997 with a history of employment in Security and Private Investigations with high level apprehensions and investigations during the current instant period in question, not providing verifiable medical reports from his hearsay statements of negative opinions of Dr. Bartlett, Dr. Inwald, Dr. Saavedra, and Dr. Ballentine which were always absent and proven by sworn affidavits to be false. A reasonable jury could also disbelieve Defendants shifting arguments, with there descision being based on background information, or on the sole basis of Dr. Butler's report, or that RODRIGUEZ can't prove that he was not mentally impaired between 1995 and 1997, where this is impossible because RODRIGUEZ

was intentionally not given the opportunity to present such evidence. See Young v. Warner-Jenkinson Co., 152 F.3d 1018, 1024 & n.6 (8th Cir. 1998) (An employer's failure to follow its own policies may support an inference of pretex). Defendant's shifting reasons for effusing to hire RODRIGUEZ is evidence of pretex. Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1193-95 (11th Cir. 2004)reasons allow the jury to question credibility and infer that a plaintiff was fired because of her disability); and Bell v. Birmingham Linen Services, 715 F.2d 1552, 1559 (11th Cir. 1983).

## **MOTIVATING FACTOR**

Even if the background check, Dr. Butler's report, and or the fact that the Defendant alleges that RODRIGUEZ cannot prove that he was not mentally impaired between 1995 and 1997, these were not the sole reasons. The ADA causation standard does not require a showing of sole cause. See Head v.Glacier Northwest, Inc., 413 F3d 1053, 1064 (9th Cir. 2005), quoting McNely v. Ocala Star Banner Corp., 99 F.3d 1068, 1073-78 (11th Cir.1996). Eight Circuits have held that under the plain language of the ADA, a "motivating factor" standard is appropriate.Id Defendant was motivated at least in part to deny RODRIGUEZ application in part by his background check and Dr. Butler's unqualified report, which Dr. Butler testified under oath that Dr. Bartlett's report had more weight than his at the hearing. Under Title VII, the ADA does not allow for the 'same decision" defense nor does it provide for "a reduction in damages depending on whether discriminatory animus motivated the employer's actions in whole part." See head at 413 F.3d 1068-69, (Nelson, T.G. concurring). The statutory language

of Title VII allows for the "same decision" defense in cases in which plaintiff argues that discrimination was a motivating factor and also allows for severe reduction indamages if the defendant would have made the same employment decision even if discrimination were not involved. There is no similar language in the ADA Id..

To incorporate Title VII's "same Decision: defense into the ADA analysis would run contrary to congressional intent. As the McNealy court noted, " a liability standard that tolerates decisions that would not have been made in the absence of discrimination, but were nonetheless influenced by at least one other factor does little to eliminate discrimination." McNealy 99 F.3d at 074. As a result, the ADA outlaws employment decisions motivated even in part by animus based on a person's (perceived; record of) disability and does not allow for a reduction in damages even if another factor played a role in the employment decision. Head, 413 F.3d. 1068-69.

Therefore, if a plaintiff can show that the defendant's employment decision was motivated at least in part by discriminatory animus, the Plaintiff will prevail. Here, a reasonable jury could determine that Defendant was motivated in part by RODRIGUEZ PERCEIVED/RECORD OF Delusional Disorder, RODRIGUEZ prevails on the issue of liability. Thus, it becomes irrelevant as to whether defendant had other reasons to deny RODRIGUEZ EMPLOYMENT.

## CONCLUSION

WHEREFORE, for the reasons set forth above, plaintiff respectfully prays that this honorable court denies Defendant's Motion for Summary Judgment.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed via regular mail to the following party: Alexander D. Shoaibi, Assistant United States Attorney, 501 3rd Street, N.W., Rm E-4218, Washington, D.C. 20530.


Respectfully Submitted,

*[signature]*

Tyrone Rodriguez, Sr.
Plaintiff/Pro Se/Forma Pauperis