

Clinical Psychologist

# M E M O R A N D U M

TO:     Vernon Morris
        Immigration & Naturalization Services

FROM:   Edmund S. Bartlett, Ph.D.
        Licensed Clinical Psychologist

    I am responding to your request for information on my preemployment psychological screening  For 20 years I used the (MMPI) Minnesota Multiphasic Personality Inventory, a classic, and the (CPI) California Psychological Inventory along with the Rotter sentences and a verbal skills measure. Now I am using the Hilson Public Safety/Security Test Battery, from Hilson Research, Inc., out of Kew Gardens, New York. Robin Inwald, Ph.D. is the test originator (1-718-805-0063.) She has excellent documentation of each test. I would encourage you to talk with her or request the manuals.

    My procedures require approximately four hours of a candidate's time. The candidate is interviewed somewhere during that period. Test results are not available until later. The interview is standardized in a life-span format. Once the basic developmental areas are assessed, the issues for public safety, law enforcement, fire or criminal justice agent are assessed. Any "special needs" are resolved before the interview has ended.

    The test batter includes the Nelson-Denny Reading and Comprehension Test (Form G) to fulfill the cognitive skills requirement. The Hilson Public Safety/Security Test Battery has six tests.

        Hilson Personnel Profile/Success Quotient (HPP/SQ)
        Hilson Life Adjustment Profile (HLAP)
        Inwald Personality Inventory (IPI)
        Inwald Survey 2 (IS2)
        Inwald Survey 5 (IS5)
        Hilson Safety/Security Risk Inventory (HSRI)

Ex I

VERNON, MORRIS MEMORANDUM
February 12, 1997
Page 2

The HPP/SQ replaces the CPI as a normal variables personality screening instrument. The HLAP replaces the MMPI as a pathological variables personality screening. The IPI is the original test for this battery. It gives an overview that has been amplified by the above instruments. They work well in combination.

The remaining tests are spin-offs from the IPI, too. The IS2, IS5 and HSRI are fairly short tests but their main function is the "rule out" risk behaviors for impulse control, attitude, temperament, internalized and interpersonal conflicts. High scores across these dimensions have a negative implication.

To date, I have run this battery 150 times. The battery is fairly straightforward. If the candidate is having problems on the above dimensions, the scales flag the problems quite well. However, the tests have limited positive attributes. Therefore, for the good candidate, there is less to say in a report. In general, the Hilson battery does a better job than traditional mental health tests for selection in public safety, law enforcement and criminal justice cases.



**Edmund S. Bartlett, Ph.D.**

Clinical Psychologist

**March 7, 1997**

**CONFIDENTIAL PSYCHOLOGICAL REPORT**
**IMMIGRATION AND NATURALIZATION SERVICES**

NAME:   Tyrone Rodriguez            DOT:     03/03/97
DOB:    07/11/63                    STATUS:  Hisp.; Mar.; 1-K
AGE:    33                          EDUC:    HS '81; AA '87; BA '89

**TESTS ADMINISTERED**

   Nelson-Denny Reading Test, Form G (ND-G)
   Hilson Public Safety/Security Test Battery:
      Hilson Personnel Profile/Success Quotient (HPP/SQ)
      Hilson Life Adjustment Profile (HLAP)
      Inwald Personality Inventory (IPI)
      Inwald Survey 2 (IS2)
      Inwald Survey 5 (IS5)
      Hilson Safety/Security Risk Inventory (HSRI)

**BACKGROUND AND BEHAVIORAL OBSERVATIONS**

   Tyrone Rodriguez is a 33-year-old, Hispanic, married male. He was born and raised in the borough of the Bronx in New York City up through junior high school years. However, the parents divorced when he was approximately four years of age. He was the third of their five children. The father remained active with visitation privileges and dollar contributions, but he moved to Puerto Rico where he was a manager of a J.C. Penney for their furniture design section. Then, at age 50, the father started his own business of photography and manning a flea market stand in the Bayamon area of Puerto Rico. Now, he is retired. The mother has been a housewife and raised her children, in part, on welfare. When Tyrone was approximately 12 years of age, the mother moved them to a housing project in the borough of Manhattan. Neither parent remarried.

   Tyrone graduated from a Manhattan high school in 1981 with academics in the "B-A" range. He did not participate in sports, clubs, or band, but he liked leisure sports with friends. In the summers, he worked for the city of New York's youth programs. His hobbies were reading and leisure sports. He does not use tobaccos or street drugs, and alcohol consumption is social and

C00580

TYRONE RODRIGUEZ
March 7, 1997
Page 2

nonexcessive. He has been physically fit over the years. Although he has some allergies to dust and cats. He was raised in the Catholic faith, but currently is not active.

After high school, Tyrone attended John Jay Criminal Justice College in the city for a year and one-half and otherwise did not work. Then, in 1984, he joined the United States Army where he was trained for Infantry. He was assigned to Louisiana. He took his discharge in 1986 as an E-4. However, he accumulated the maximum educational VA benefits.

After the military, Tyrone elected to move to his sister's home in Miami where she had recently divorced, although she had a son. His mother had remained in Manhattan. Tyrone could help his sister financially since he had the VA educational dollars and intended to begin at Miami-Dade Community College. In fact, he completed his AA degree by December 1987 and through the local VA Administration, he could work in a temporary labor pool and get jobs in between semesters or what would otherwise fit his work schedule. In July 1988, he entered Florida International University and completed his BS degree in criminal justice in May 1989. Then, he went to work for Florida Power & Light as a technician doing some data processing.

However, Tyrone had set a goal that he had wanted to work in federal law enforcement and in May 1989, he was accepted as an investigator for the state of Florida's Office of the Auditor General. His area was general public assistance fraudulent activities. Tyrone is fully bilingual. He remained in that investigative position until July 1990, when he joined the Federal Department of Justice, Bureau of Prisons. He did his academy in Brunswick, Georgia. He married in 1992 but, in January 1993, he was transferred to Colorado Springs when he was promoted to a case manager position. At that time, they had no children, although in May 1996, they had a son born.

In February 1992, Tyrone had been processing with the Immigration and Naturalization Services (INS,) but the process had been slow. Therefore, in September 1994, he resigned from federal corrections and was accepted by the state of Florida's Department of Parole and Probation for Brevard County. He had to redo part of his corrections standards at Glenco, but his probationary period began in January 1995. His wife became a travel agent for Disney World and they lived on the east side of Orlando in order to accommodate both of their travel times to and from work.

Unfortunately, Tyrone got fired from his job in June 1995. This examiner agreed with Tyrone not to discuss the incident in particular detail. However, he stated that he had filed a complaint concerning the behavior of at least two other probation officers. Tyrone was still in the probationary period of his

000281

TYRONE RODRIGUEZ
March 7, 1997
Page 3

employment and could be terminated without explanation or cause. He began collecting unemployment dollars for the first six months and went to bail bonds school, as well as getting his private investigator license with the state. By the fall of 1995, his wife was pregnant and he finally landed what appeared to be a good private investigation position. However, he did not have the dollars to procure a camera or a cellular phone.

As a result, Tyrone elected to work as a loss prevention officer at the Shoe Carnival at the Belz discount mall in southwest Orlando. In August 1996, he went to work for Special Response Corporation that did security work for top private officials. The money was supposed to be good enough that he could eventually get his camera and cell phone but, after a first assignment in New Jersey, he went back to the temporary labor pools for some source of steady dollars. Also, his sister from Miami had relocated to the Orlando area and was willing to live with them for financial reasons, at least temporarily. Tyrone has worked temporary labor pools until September 1996 when he began working his current employment with NWI Investigative Group out of Fort Lauderdale, Florida. He is the Orlando associate and their primary work is insurance fraud for Workers' Compensation and automobile insurance. Also, he does background and address verifications.

Now, INS is pursuing his application once again. He believes he would enter as an agent at the GS-7 level. Also, he assumes that as a border patrol trainee, he would be assigned to the southwestern United States. Tyrone perceives himself to be dependable and responsible. Currently, he is working 60 to 70 hours a week since he has to serve Tampa, as well as Daytona Beach. He enjoys his time with his wife and young son, yet he is ready to get started on his federal law enforcement career. He believes he could successfully appeal the termination from the state of Florida's Department of Corrections, but if accepted by INS now, he would rather move on with his career objectives.

## SUMMARY OF TEST RESULTS

1. **ND-G:**

|  | Raw Score | Percentile | G.E. |
| --- | --- | --- | --- |
| Vocabulary | 58 | 41 | 14.6 |
| Comprehension | 52 | 43 | 13.7 |
| Total | 110 | 41 | 14.3 |

The Total Percentile score is considered average when compared to high school seniors. The Total Raw score is near the mean expectancy for minority male candidates entering public safety and criminal justice fields.

TYRONE RODRIGUEZ
March 7, 1997
Page 4

   2. **HPP/SQ**: This questionnaire assesses factors of personality and attributes that are considered positive indicators for work in criminal justice. Higher scores have positive implications.

   Tyrone was slightly defensive in his response style, yet he presents as being bright, capable, and well-oriented for new academic learning. Also, he is comfortable with most people. However, he seeks popularity over leadership. Tyrone is not particularly competitive and has some questions of his own ability. However, he likes to get work done on time, with or without direct supervision. The social quotient (SQ) score is in the average range at T-score 52.

   3. **HLAP**: This questionnaire assesses factors of personality and attributes that could be detrimental to the performance of duties as a border patrol officer. Therefore, higher scores have negative implications.

   Tyrone was more open in his responses. He is not experiencing significant underlying psychopathology. Descriptively, Tyrone has some concerns about limitation of his social network and, at times, feels there is not enough challenge in his daily activities. Nevertheless, his overall adjustment score is comfortably in the average range at T-score 40.

   4. **IPI**: This questionnaire provides an overall assessment of personality factors and attributes that could contribute to performance difficulties or eventual termination of employment. Higher scores have negative implications.

   Tyrone has remained open in his responses, and he acknowledged that he has had multiple jobs in the past year or so but, in the interview, the reason for most of those jobs was documented. Tyrone is not experiencing particular difficulties with impulse control or basic temperament. He is social and conventional in his thinking and does not tend to be "driven" or rigid. However, Tyrone avoids direct confrontation with angry people. He works well with males and females, and seems to be enjoying his marriage. Tyrone is not considered to be a serious risk for work performance difficulties or termination of employment.

   5. **IS2/IS5/HSRI**: These questionnaires assess specific risk factors that are considered important to emotional stability and suitability for work in criminal justice. Higher scores have negative implications.

   Tyrone acknowledges the need for possession and accurate use of firearms, and he acknowledges that he, at times, has some insensitivity to the needs of others.

000283

TYRONE RODRIGUEZ
March 7, 1997
Page 5

The IS5 further amplifies that insensitivity as an aspect of work ethic. At times, Tyrone's motivation for productive work will fluctuate as a result of the changes in his work effort. Tyrone likes to feel the direct reward for work well done or he can lose interest in the job.

The HSRI has documented no difficulties maintaining emotional control in public settings, and he will adhere to basic safety standards. The relative areas of concern are Tyrone's work preparation as relates to basic social judgment. When he is feeling negative or self-critical, he becomes inefficient.

**CONCLUSION**

Tyrone Rodriguez has completed the interview and psychological testing. The social/historical investigation describes a middle sibling of a single-parent mother from the boroughs of the Bronx and then Manhattan in New York City. Tyrone's parents divorced early, but the father stayed active. Tyrone completed high school on schedule with excellence in academics, but was limited in his extra-curricular activities. He tried to get his law enforcement career started by going to John Jay Criminal Justice College, but ran out of money. Therefore, he served his country in the United States Army and built up his VA educational benefits. In the mid-1980s, he completed an AA degree, as well as a BS degree in criminal justice. At that time, he was living in South Florida. Now, he is married with one child born, and he has been part of a criminal justice system since 1990 at the federal level, but since 1989 at the state level.

In 1994, Tyrone elected to return to Florida, but had to take a state of Florida's Department of Corrections job for Brevard County. Unfortunately, by the summer of 1995, he had become involved in an EEOC complaint and found himself without a job.

The past year and one-half has been a significant struggle since Tyrone had to make due with jobs either outside of the criminal justice field or investigative jobs in the private sector. Now, however, he is being processed once again by INS for a border patrol trainee position. He is eager to move on with his career goals of federal law enforcement, and would be willing to terminate the appeals process of his state of Florida's Parole and Probation position.

The psychological testing has documented adequate Verbal skills to meet the complexities of work in the criminal justice field. The personality assessment has not indicated underlying psychopathology. Descriptively, Tyrone has presented himself as cautious, yet self-confident to be academically oriented. He likes to be with people and be liked by them. However, he does not have a high drive to be overly achievement-oriented or have to be the

000284

TYRONE RODRIGUEZ
March 7, 1997
Page 6

"winner" most of the time. He likes to get his work done on schedule, but also to feel that when he is not at work, he has a private life of his own. Tyrone is a man of strong opinion and, at times, will be insensitive to others. Since he has had a variety of work positions in the last several years, his fluctuations in motivation can affect his work performance.

From the psychological viewpoint, Tyrone is rated as being within the range of acceptability for the position of border patrol officer for the Immigration and Naturalization Services. On the asset side, he is reasonably bright, physically fit, and positively motivated for the job he is seeking. On the liability side, there are few, other than to set goals that will result in adequate productivity, as well as some job satisfaction.

Edmund S. Bartlett, Ph.D.
Licensed Psychologist

ESB/pbb

# Edmund S. Bartlett, Ph.D.

Clinical Psychologist

November 27, 2001

Tyrone Rodriguez
111 Caterham Way
Kissimmee, FL 34758

Dear Mr. Rodriguez:

I am responding to your request to confirm that I sent you a letter dated 10/26/00. This letter was in response to your letter to me dated 10/13/00.

Sincerely,

Edmund S. Bartlett, Ph.D.
Licensed Psychologist

ESB/l

STATE OF FLORIDA
COUNTY OF ORANGE

The foregoing instrument was sworn before me this day November 27th, 2001, under the penalties of perjury.

Sharon Ruer

SHARON RUER
Notary Public, State of Florida
My comm. exp. May 29, 2004
Comm. No. CC940555

itilly Court • Suite C-210 • 1555 Howell Branch Road • Winter Park, FL 32789 • (407) 234-9504 • Fax (407) 539-0348 • Lic. # PY0002035

Ex. II

# Edmund S. Bartlett, Ph.D.

Clinical Psychologist

February 25, 1998

Tyrone Rodriguez
7265 Gatorshead Circle, #5
Orlando, FL 32822

Dear Mr. Rodriguez:

I am responding to your request to confirm a psychological evaluation of you done by me on 3/8/97. Vernon Morris of Immigration & Naturalization Services, Border Patrol, Special Exam Unit, requested the service. That report was sent to him.

Sincerely,

Edmund S. Bartlett, Ph.D.
Licensed Psychologist

ESB/l

Sworn to and subscribed before me this 25th day of February 1998 by Mr. Edmund S. Bartlett, Ph.D. Who has produced a Florida Drivers License #B634-217-43-377 as identification.

Notary

ANN COLLINGWOOD-ROWE
MY COMMISSION # CC 608040
EXPIRES: February 13, 2000
Bonded Thru Notary Public Underwriters

Tyrone Rodriguez / Darryl Himes, INC

illy Court • Suite C-210 • 1555 Howell Branch Road • Winter Park, FL 32789 • (407) 740-0033 • Fax (407) 740-8360 • Lic. # PY0002035

ED EX I

# Edmund S. Bartlett, Ph.D.

Clinical Psychologist

October 26, 2000

Tyrone Rodriguez, Sr.
111 Caterham Way
Kissimmee, FL 34758

Dear Mr. Rodriguez:

I have reviewed your letter of 10/13/00. In addition, you provided a copy from Bruce N. Butler, M.D., M.P.H. He presented himself as the Medical Review Officer for the Immigration and Naturalization Service. He made numerous references to my report dated 3/7/97 as well as a phone conversation with me on 11/12/97.

I have no recall or notes on file for a phone conversation with Dr. Butler. However, for his needs, he may have made such a call to me. Nevertheless, I would not have had the need nor release from the referring party, Vernon Morris of INS, to talk with Dr. Butler.

Therefore, the only information I have to offer in your case is stated in my written report of 3/7/97. Dr. Butler has implied that I might not have had sufficient background information on you to adequately interpret the test battery. For me, test results are interpreted by your answers at the time of testing. In the Conclusion section of the report, I made my interpretations and conclusions for the preemployment evaluation of you for border patrol officer.

In my view, the INS should not have sent you for the psychological assessment if they were uncomfortable with any aspect of your background. In particular, the diagnosis from Dr. Ed Ballentine, psychiatrist, has serious implications and was made in 1995. Also, Dr. Butler appears to have had difficulty with some of your employments from 1994 to 1996.

EXIII

• Suite C-210 • 1555 Howell Branch Road • Winter Park, FL 32789 • (407) 234-9504 • Fax (407) 539-0348 • Lic. # PY0002035

TYRONE RODRIGUEZ
October 26, 2000
Page 2

 I cannot speak for Dr. Butler, but also, he cannot speak for me. My expertise on you does not extend beyond my report of 3/7/97. Any changes of it would have to be an addendum based on "new" information. No one has asked me to evaluate you further. More importantly, I would not change my opinion of you based on "here say" information from Dr. Butler. His current interpretations of my report appear to meet his "needs," not mine and not yours.

       Sincerely,

       Edmund S. Bartlett, Ph.D.
       Licensed Psychologist

ESB/l

# HILSON RESEARCH, INC.

June 19, 2001

Mr. Tyrone Rodriguez, Sr.
111 Caterham Way
Kissimmee, FL 34758

Dear Mr. Rodriguez:

I have reviewed the information you sent with your letter on May 16. I do not have any other information or notes on your particular case.

As a test publisher, I frequently provide assistance to evaluators in interpreting various Hilson Research tests. However, these tests are used by evaluators only to aid in their conclusions regarding an applicant's suitability for employment. The tests are not intended to be used in the absence of comprehensive background and other job-related information.

Different evaluators often become aware of new and/or different biographical/behavioral information that may affect their final ratings. Therefore, they legitimately may reach different conclusions based on new and/or amended information. Ultimately, it is the hiring organization's decision whether or not to offer employment to an individual.

Sincerely,

Robin Inwald, Ph.D.

Ex. III

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 19848
Washington, D.C. 20036

Tyrone Rodriguez, Sr.,
Complainant,

v.

John Ashcroft,
Attorney General,
Department of Justice,
Agency.

Appeal No. 01A11038

Agency No. I-97-0220
Hearing No. 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X

## DECISION

On November 16, 2000, Tyrone Rodriguez, Sr. (hereinafter referred to as complainant) initiated an appeal to the Equal Employment Opportunity Commission (Commission) with regard to his complaint of discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*; and § 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 *et seq*. The final agency action was dated November 6, 2000. Accordingly, the appeal is timely and is accepted by this Commission in accordance with 29 C.F.R. § 1614.405. Based upon a review of the record, and for the reasons stated herein, it is the decision of the Commission to REVERSE the final agency action.

The issue on appeal is whether complainant proved, by a preponderance of the evidence, that he was discriminated against on the bases of his national origin (Puerto Rican), disability (perceived delusional disorder), and in reprisal for prior EEO activity under Title VII and the Rehabilitation Act when he was not selected for the position of Border Patrol Trainee in May 1997.

Complainant filed a formal EEO complaint in August 1997, raising the above-referenced allegation of discrimination. The agency accepted complainant's complaint for processing, and conducted an investigation with regard to the matter at issue. At the conclusion of the investigation, complainant requested a hearing before an EEOC Administrative Judge (AJ). On September 29, 2000, the AJ issued a decision finding that complainant had not been subjected to discrimination as alleged. The AJ initially found that the matter was appropriate for summary judgment, holding that no genuine issues of material fact were in dispute. The AJ then determined that the agency perceived complainant as having a disability (delusional disorder with persecutory features). Nevertheless, the AJ concluded that complainant was not a qualified individual with a disability based upon his condition. The AJ also found no evidence of national origin or reprisal



2                                                                           01A11038

discrimination. The agency implemented the AJ's findings in its November 2000 decision. It is from this decision that complainant now appeals.

The Commission's regulations allow an AJ to issue a decision without a hearing when s/he finds that there is no genuine issue of material fact or credibility after applying the proper legal analysis. 29 C.F.R. § 1614.109(g). This regulation is patterned after the summary judgment procedure set forth in Rule 56 of the Federal Rules of Civil Procedure. The U.S. Supreme Court has held that summary judgment is appropriate where a court determines that, given the substantive legal and evidentiary standards that apply to the case, there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In ruling on a motion for summary judgment, a court does not sit as a fact finder. *Id*. The evidence of the non-moving party must be believed at the summary judgment stage, and all justifiable inferences must be drawn in the non-moving party's favor. *Id*. A disputed issue of fact is "genuine" if the evidence is such that a reasonable fact finder could find in favor of the non-moving party. *Celotex v. Catrett,* 477 U.S. 317, 322-23 (1986); *Oliver v. Digital Equip. Corp.*, 846 F. 2D 103, 105 (1st Cir. 1988). A fact is "material" if it has the potential to affect the outcome of the case. If a case can only be resolved by weighing conflicting evidence, summary judgment is not appropriate. In the context of an administrative proceeding under Title VII, an AJ may properly consider summary judgment only upon a determination that the record has been adequately developed.

After a careful review of the record, we find that the AJ erred when she concluded that there was no genuine issue of material fact in this case. In finding no discrimination, the AJ relied on a statement of the agency's Medical Review Officer who reviewed two prior medical reports which diagnosed complainant with a delusional disorder. Nevertheless, the prior reports are not present in the record. Furthermore, the record contains a report from a psychologist, who examined complainant at the agency's request, stating that complainant had no underlying psychopathology, and was within the range of acceptability for the position. We note that the hearing process is intended to be an extension of the investigative process, designed to "ensure that the parties have a fair and reasonable opportunity to explain and supplement the record and to examine and cross-examine witnesses." See EEOC Management Directive (MD) 110, as revised, November 9, 1999, Chapter 6, page 6-1; *see also* 29 C.F.R. §§ 1614.109(d) and (e). Accordingly, we find that the summary judgment was not appropriate in this case.

## CONCLUSION

Accordingly, the agency's final action is REVERSED, and this matter is REMANDED in accordance with this decision and the ORDER, below.

## ORDER

The agency shall submit to the Hearings Unit of the appropriate EEOC field office the request for a hearing within fifteen (15) calendar days of the date this decision becomes final. The agency is directed to submit a copy of the complaint file to the EEOC Hearings Unit within fifteen (15)

calendar days of the date this decision becomes final. The agency shall provide written notification to the Compliance Officer at the address set forth below that the complaint file has been transmitted to the Hearings Unit. Thereafter, the Administrative Judge shall issue a decision on the complaint in accordance with 29 C.F.R. § 1614.109 and the agency shall issue a final action in accordance with 29 C.F.R. § 1614.110.

### IMPLEMENTATION OF THE COMMISSION'S DECISION (K0900)

Compliance with the Commission's corrective action is mandatory. The agency shall submit its compliance report within thirty (30) calendar days of the completion of all ordered corrective action. The report shall be submitted to the Compliance Officer, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. The agency's report must contain supporting documentation, and the agency must send a copy of all submissions to the complainant. If the agency does not comply with the Commission's order, the complainant may petition the Commission for enforcement of the order. 29 C.F.R. § 1614.503(a). The complainant also has the right to file a civil action to enforce compliance with the Commission's order prior to or following an administrative petition for enforcement. *See* 29 C.F.R. §§ 1614.407, 1614.408, and 29 C.F.R. § 1614.503(g). Alternatively, the complainant has the right to file a civil action on the underlying complaint in accordance with the paragraph below entitled "Right to File A Civil Action." 29 C.F.R. §§ 1614.407 and 1614.408. A civil action for enforcement or a civil action on the underlying complaint is subject to the deadline stated in 42 U.S.C. § 2000e-16(c)(Supp. V 1993). If the complainant files a civil action, the administrative processing of the complaint, including any petition for enforcement, will be terminated. *See* 29 C.F.R. § 1614.409.

### STATEMENT OF RIGHTS - ON APPEAL

### RECONSIDERATION (M0900)

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:

1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the office of federal operations (OFO) **within thirty (30) calendar days** of receipt of this decision or **within twenty (20) calendar days** of receipt of another party's timely request for reconsideration. *See* 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614

4                                                                 01A11038

(EEO MD-110), 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. *See* 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. *See* 29 C.F.R. § 1614.604(c).

### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (R0900)

This is a decision requiring the agency to continue its administrative processing of your complaint. However, if you wish to file a civil action, you have the right to file such action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. In the alternative, you may file a civil action **after one hundred and eighty (180) calendar days** of the date you filed your complaint with the agency, or filed your appeal with the Commission. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. **Filing a civil action will terminate the administrative processing of your complaint.**

### RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the sole**

5                                        01A11038

discretion of the Court. Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

*[signature]*

_____
Carlton M. Hadden, Director
Office of Federal Operations

___JUL 1 3 2001_____
Date

## CERTIFICATE OF MAILING

For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days of mailing. I certify that the decision was mailed to claimant, claimant's representative (if applicable), and the agency on:

___JUL 1 3 2001___
Date

*[signature]*
_____
Equal Opportunity Assistant

```
DATE: 05/10/96        00096239055                          PAGE:   2

CASE #: 96001840    TYPE/SERVICE: PRELIMINARY BI - 35    EXTRA COVERAGE: L7
NAME: RODRIGUEZ, TYRONE (NMN)
SSN: 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         DOB: 07/11/1963  POSITION: BORDER PATROL AGENT TRNEE

ITM   TYPE    ITEM IDENTIFICATION/LOCATION                CH    RESULTS
***   ****    *****************************               **    *******
012   GENL    NPRC-CIVILIAN PERSONNEL RECORDS              R     ACCEPTABLE
              ST. LOUIS, MO
013   GENL    U.S. BUREAU OF PRISONS                       R     NO RECORD
              FLORENCE, CO
014   GENL    U.S. BOP                                     R     NO RECORD
              FLORENCE, CO
015   GENL    EQUAL EMPLOYMENT OPPORTUNITY COMM            R     ISSUE(S)
              MIAMI, FL
016   GENL    FL DEPARTMENT OF JOBS & BENEFITS             R     ISSUE(S)
              ORLANDO, FL
017   GENL    ORANGE COUNTY                                R     ISSUE(S)
              ORLANDO, FL
018   MEDI    FLORIDA DEPARTMENT OF CORRECTIONS            R     ISSUE(S)
              ORLANDO, FL
019   MEDI    ORLANDO PSYCHIATRIC GROUP, INC               P     ISSUE(S)
              ORLANDO, FL
020   GENL    JANE B. REUMON                               R     ACCEPTABLE
              WASHINGTON, DC
A01   SII                                                  L     RECORD
A02   SIIF                                                 I     ISSUE(S)
A03   SIIF                                                 I     ISSUE(S)
B01   FBIF                                                 I     NO RECORD
B02   FOFN                                                 I     NO RECORD
C01   FBIN                                                 L     NO PERTINENT
D01   DCII                                                 L     NO PERTINENT
E01   CRED    CBM EQUIFAX                                  L     ISSUE(S)
              BALTIMORE, MD
F01   SESE    SELECTIVE SER                                L     ACCEPTABLE
              GREAT LAKES, IL
G01   MILR    ARMY                                         I     REFERRED

******************** END CASE CLOSING TRANSMITTAL ********************
```

000002