Affidavit of Marc Jastremski, Loss Prevention Manager Shoe Carnival #142 9822 Atlantic Blvd. Jacksonville, Florida32211 (904) 720-0188.

I, Marc Jastremski, hereby state the following in lieu of the fact that Tyrone Rodriguez did not receive an employee evaluation for his period of employment February 1996-August 1996:
I personally supervised Mr. Rodriguez during his employment as a Loss Prevention Detective with the Shoe Carnival #136 in Orlando, Florida. Some of Mr. Rodriguez's duties included, but were not limited to, detection and investigation of both internal and external theft, apprehension of shoplifters, ensuring compliance with company policies, and providing a safe environment for the customers and employees. Being tasked with that position made it essential for him to have an outstanding work ethic, sound judgement, and above average communication skills, both oral and written. These are the three topics I will comment on.

Mr. Rodriguez's work ethic is second to none. He maintained a strong level of security at the Orlando store. His ability to work with little to no supervision made him an asset to the store and company as a whole. He would give one hundred percent of himself at all times. Mr. Rodriguez continually strove to gain knowledge of the position in an attempt to further his chances of promotion. I had complete confidence in Mr. Rodriguez to go above and beyond what is required of a Loss Prevention Detective. In fact, if it were not for Mr. Rodriguez finding an advanced position with a different company, I would have promoted him when the opportunity presented itself.

Mr. Rodriguez's judgement was another one of his attributes. Loss Prevention personnel need to be able to make sound judgements in a fraction of an instant to provide for their safety as well as the shoplifter's safety. Mr. Rodriguez was thrust into several situations requiring him to make split second decisions. Each and every time his decisions were correct and unquestionable. His quick decisive actions were paramount in the Orlando store having zero liability suits brought against it. On several occasions Orlando Police Officers stated to me that Mr. Rodriguez was doing a great job in handling his apprehensions. They made the statement that he must have worked in law enforcement before becoming employed with the Shoe Carnival in order to perform his job that efficiently.

Mr. Rodriguez's communication skills were superb. He was able to communicate effectively both orally and in writing. In reference to content, his reports were some of the best that I had ever read. Once again Orlando Police Officers continually made statements lauding his ability to write concise and accurate reports. His attention to detail in these reports added to him having an one hundred percent conviction rate on his cases. This helped the Orlando store to have one of the best Loss Prevention Departments in the company.

Ex. 11

In closing I wish to reiterate that Mr. Rodriguez was an outstanding employee and showed no weaknesses in performing the job of Loss Prevention Detective for the Shoe Carnival in Orlando, Florida. End of statement.

The statement to the foregoing affidavit is true and correct to the best of my knowledge.

[signature]

STATE OF Florida

COUNTY OF Duval

The foregoing instrument was sworn to or affirmed and subscribed before me this 26th day of February 1998, by Marc Zastrebski who is personally known to me or has produced FDL Z236-540-46-105-0 as identification, and who did/did not take an oath.

[signature]
(Signature of Notary Public)

Barbara G. Kozak
(Print or Type Name)

My Commission Expires Barbara G. Kozak MY COMMISSION # CC670055 EXPIRES August 7, 2001 BONDED THRU TROY FAIN INSURANCE, INC

Affidavit of Buddy Jones, Supervisor, NWI Inves_gative Group Inc., 3330a N.E. 32nd Street, Ft. Lauderdale, Florida 33308, Telephone No. 954-537-7770.

I certify and swear that I completed the foregoing Employee Performance Evaluation for my employee, Tyrone Rodriguez, on October 4, 1997. The statements contained therin are true and correct to the best of my knowledge.

[signature]

STATE OF Florida

COUNTY OF Broward

The foregoing instrument was sworn to or affirmed and subscribed before me this 11 day of March 1998, by Buddy E. Jones who is personally known to me or has produced Georgia Dr. License as identification, and who did/did not take an oath.

[signature]
(Signature of Notary Public)

Margaret H. Mitchell
(Print or Type Name)

My Commission Expires 7/18/99

NOTARY PUBLIC STATE OF FLORIDA
Margaret H. Mitchell
Notary Public, State of Florida
Commission No. CC 463572
My Commission Expires 07/18/99
1-800-3-NOTARY - Fla. Notary Service & Bonding Co.

EX-12

EMPLOYEE: Tyrone Rodriguez — Investigator

DEPARTMENT: FL Operations (Mid-State)

EMPLOYEE NO.

DATE OF PRESENT POSITION: 10/01/96

DATE OF LAST EVALUATION: / /

NEXT SCHEDULED EVALUATION: 10/01/98

REASON FOR EVALUATION

- [x] ANNUAL
- [ ] END OF PROBATION
- [ ] MERIT
- [ ] PROMOTION
- [ ] PERFORMANCE
- [ ] OTHER ______

NSTRUCTIONS: Evaluate employee's work performance as it pertains to the job requirements. Circle the letter that best describes the employee's performance since the last evaluation. Add comments if necessary. (N/A if Not Applicable)

E - Excellent   A - Above Average   S - Satisfactory   D - Decreased Performance   U - Unsatisfactory

| FACTORS | SINCE LAST EVALUATION | COMMENTS |
|---|---|---|
| AVAILABILITY The degree to which an employee is prompt, follows rules concerning break and meal periods and overall attendance. | E (A) S D U | Tyrone always make himself available to work any assignment, either be rush or regular basis. |
| ADHERENCE TO POLICY The degree to which an employee follows safety rules and other regulations. | E (A) S D U | Adheres to Company policies concerning NWB rules of surveillances. |
| BEHAVIOR PATTERN The stability, politeness, and judgement shown on the job. | E (A) S D U | Always Polite, a pleasure to work with. Shows good judgement on surveillances. Always calls in when in doubt. |
| CREATIVITY The degree to which an employee suggests ideas, discovers new and better ways of accomplishing goals. | E (A) S D U | Very Creative when conducting surveillances. Always Thinks of new ways to overcome obstacles. |
| DEPENDABILITY The degree to which an employee can be relied upon to complete a job. | (E) A S D U | Very dependable. Always completes assignments. Very productive Investigator. |
| INDEPENDENCE The degree of work accomplished with little or no supervision. | (E) A S D U | Works well and completes assignments w/ little or no supervision. |
| INITIATIVE The degree to which an employee reaches out for new tasks and expands abilities professionally and personally. | E (A) S D U | Always seeking new assignments and duties. will take the extra step to complete assignments. |

Employee Performance Evaluation

CONTINUED ON REVERSE SIDE

| | | |
|---|---|---|
| The willingness and ability to communicate, cooperate, and work with co-workers, supervisors, and customers. | (A) S D U | [illegible] always worked well w/ others. Gets along w/ all employees. |
| KNOWLEDGE OF JOB Useful technical skills and information used at work. | E (A) S D U | Very knowledgeable about job. Uses skills to best complete assignments. Needs to be more creative in mobile surveillances. (not losses so ma elements) |
| PRODUCTIVITY The accuracy of work finished in a specific amount of time | E (A) S D U | Work always completed in a timely and accurate fashion. |
| QUALITY The accuracy, detail, and acceptability of work accomplished. | E (A) S D U | Quality of work never questioned. Always completed accurate. |

E - Excellent  A - Above Average  S - Satisfactory  D - Decreased Performance  U - Unsatisfactor

NEW ACCOMPLISHMENTS OR ABILITIES SINCE LAST EVALUATION:

N/A.

AREAS WHICH NEED IMPROVEMENT

Mobile Surv.

RECOMMENDATIONS FOR CAREER DEVELOPMENT - SCHOOLING, SEMINARS, ETC.

Rate Employee's Performance overall in comparison to the Job Requirements involved with his/her position.

☐ EXCELLENT ☐ AVERAGE ☐ UNSATISFACTORY
☑ ABOVE AVERAGE ☐ BELOW AVERAGE ☐ NOT RATED

COMMENTS

Excellent employee. Great Investigator. Recommend pay raise to $12[00] per hour.

Individual was evaluated on 10/4/97 Employee's Signature [signature]

Follow up evaluation requested ☐ Yes ☐ No Follow Up Date 10/4/97

Evaluator [signature] Date 10/4/97

Evaluator's Supervisor ______ Date ______

EXHIBIT B1

RECEIVED
OCT 27 1997
US IMM & NATZ SVC (ACB)
ACEEO

U.S. Department of Justice
Office of EEO, Room 2232
Immigration and Naturalization Service
425 I Street, N.W.
Washington, D.C. 20536

**REPORT OF EEO COUNSELING**

The Matter Complained of By: Tyrone RODRIGUEZ
(Charging Party's Name)
If charging Party gives his/her Permission)

Organizational Unit: Private Investigator

Submitted by: MariaElena Hernandez
(Name and Signature of Counselor)

Organizational Unit/Location: EEO Counselor/Detroit

Telephone Number: Commercial (313)568-6051

# INSTRUCTIONS FOR THE USE OF FORM

If the individual does not allege discrimination because of race, color, sex, national origin, religion, age or mental or physical handicap in connection with the matter complained of, complete only the above portion of this page; Items 1, 2, and 9 of Part A and Items 1, 2, and 3 of part B before submitting the Report of Counseling. Note under item 3 of part B any corrective action the individual received.

If discrimination of one of the above factors is alleged, complete ALL items before submitting the Report of Counseling and use Item 8 of Part B to report any corrective action received. Attach supplemental sheets referencing item number if additional space is required.

lex-13

PART A

KEY DATES

1. Initial Contact: 06/02/97
(Date the aggrieved person contacted counselor to schedule an interview.)

2. Initial Interview: 06/26/97
(Date)

3. 30-Day Notice*: 08/04/97
(Date)

4. Counseling Extension(s)*: NONE
(Date)

5. Final Interview Notice*: 08/06/97
(Date)

6. Most Recent Action Identified as Discriminatory By Charging Party:
Reprisal/Regarding a previous discrimination complaint by the U.S. Border Patrol.
(Action and Date of Occurrence)
Last week of May 1997 Informed telephonically from HQ/Security that he would not be hired for Border Patrol due to his background.

7. Offer of Assistance in completing DOJ 201-A: a) Made by

Counselor: 08/04/97
Date

b) Accepted: ________ c) Rejected: x

8. Counseling Report Prepared: 07/08/97
Date

9. Report Submitted: 08/06/97
Date

10. Date Formal Complaint of Discrimination must be filed: 08/20/97
(15 days after issuance of "Notice of Final Interview)

* x Copy of Notice Attached

PART B

REASON(S) FOR SEEKING COUNSELING

1. Alleged Discrimination Based on:

a. (x) Race (Specify) Hispanic

b. ( ) Sex (Specify) ________________

c. ( ) Age (Specify) ________________

d. (x) National Origin (Specify) Puerto Rican

e. ( ) Color (Specify) ________________

f. ( ) Religion (Specify) ________________

g. ( ) Mental Handicap ________________

h. ( ) Physical Handicap ________________

i. (x) Other (Specify) Reprisal

2. Matter(s)/Action(s) Complained of:
On April 1992, Mr. Rodriguez states he applied for a position with the U.S. Border Patrol. He was not contacted for two years. In February 1994 Mr. Rodriguez was contacted from HeadQuarters Border Patrol and informed he had been taken off the list and had to reapply for a position with Border Patrol. In July 1994, he contacted EEO/NRO and they requested he be placed on a priority list to attend the next Border Patrol Training Class. Mr. Rodriguez states he was informed the names selected from the list were computer generated and he would have to reapply as no vacancies were available. Also no room was available for the class. Mr. Rodriguez states he has not been able to get selected based on his EEO complaint filed previously.

3. Corrective Action Sought:

Mr. Rodriguez is requesting the opportunity to be selected for the Border Patrol and demonstrate he is capable and would be willing to accept a non-enforcement position for a probationary period to prove his "excellent work ethics".

4. Chronology of Events: (Explain the events causing the aggrieved person to believe he/she has been discriminated against.)

April 1992-Applied for the position of Border Patrol with HQ. Mr. Rodriguez, did not hear anthing, Mr. Rodriguez called HQ constantly, bearing the expense of long-distance telephone calls and was informed he would be sent to Glynco.

Feb. 1994-Mr. Rodriguez received a letter from HQ/BP stating he had to reapply for the position as his name was taken off the list, Mr. Rodriguez was employed with the Bureau of Prisons and observed fellow officers in lower staff capacity being selected for Border Patrol positions long after he had applied.

July 1994- Mr. Rodriguez contacted EEO/NRO, Darlene Jedlicki and initial interview took place on 7/27/97, on 08/15/94, for the final interview. She spoke with three persons basically durning informal negotiations and requeste priority, and advised by personel that he was qualified.

Sept 1994- Mr. Rodriguez received the Formal complaint form, fifteen days prior to filling out and submitting he received a medical package via Federal Express advising him they would continue the process but due to the time period, he would have to retake the medical examination.

Note: (Mr. Rodriguez states he has all the documentation and stated he would send to me, but they never arrived).

June 1995- Mr. Rodriguez stated he spoke with a person in Examining Unit and stated he would need another Background investigation from 1994 & 1995.

5. Counselor's Plan of Action: (May include contacting Servicing Equal Opportunity Officer for technical guidance.)

Contacted EEO/ERO as he immediately wanted to proceed with the Formal Complaint process based on his past EEO contact and the time he has waited to receive a decision. I sent the announcement to be placed on the list for qualifying veterans.

6. INQUIRY

**a. Review of records:(indicate name of records reviewed and the date of each review).**

I had no records to review, Mr. Rodriguez stated he had full documentation for incidents and records of action that had taken place and would provide them, none were provided. I requested documentation from the Border Patrol Specializing Unit and Ms. Stanley stated they would have to be requested by a FOIA request, signed by Mr. Rodriguez.

**b. Personal Interviews:(Include date, name, title, organizational position, matter(s)discussed).**

1. On June 26, 1997, I spoke with Tyrone Rodriguez regarding this request to submit a EEO complaint. On April 1992, Tyrone Rodriguez applied for a position with the U.S. Border Patrol as an agent. Mr. Rodriguez stated he has endured many years and humiliating requests in attempts to be hired for the position of Border Patrol agent.

Mr. Rodriguez stated he contacted EEO in 1994 and on July 7, 1994, Darlene Jedlicki handled his case. The final interview took place on August 15, 1994. Mr. Rodriguez was informed of her discussions with three persons, basically doing the informal negotiations and requesting priority for Mr. Rodriguez to gain admittance into the next Border Patrol Agent class. Val Stanley informed Ms. Jedlicki they had no space and he would have to reapply.

On August 24, 1994, she again contacted Mr. Walstirether, Acting Chief Personnel Management Branch and requested priority to place him on the list, Mr. Walstirether stated seventy applicants got as far as Mr. Rodriguez and were also eliminated from the computer generated list, no space was available at the academy to train new agents. In September of 1994, Mr. Rodriguez received a Formal complaint form, he was given fifteen days to submit prior to filling out, Mr. Rodriguez received a Federal Express package from HQ/BP containing a medical form advising him they would continue the process, but due to the length of time it took to inform him, he would need to retake the medical again. For this reason, Mr. Rodriguez insists on filing a formal complaint and believes this prior action resulted in not getting hired with the U.S. Border Patrol.

In June of 1995, Mr. Rodriguez called the Examining Unit and was informed he would need another background investigation from 1994 and 1995. The Investigator stated she would obtained the old investigation and would re-investigate, and stated she was shocked as she had seen his qualifications and was apologetic he had not been hired as of yet, and advised him, people with lower qualifications had been hired, and stated he had a great background, with alot of experience. He waited for a reply, in 1996, he made calls from his personal phone, racking up the expense of long-distance calls(he states he has kept the phone bills) and repeatedly got the "run-around".

In January of 1997, Mr. Rodriguez insisted on speaking with the Head person of the Border Patrol Specializing Unit in HQ, and a man at (202)616-2614, stated he

would have to go through psychiatric exams. On February 28, 1997, Mr. Rodriguez received a letter dated February 24, 1997, which stated he had five days to take the psychiatric examination, thereby allowing Mr. Rodriguez only one day to take the examination. Mr. Rodriguez made an appointment with Dr. Ted Barlett and he endured the seven hour humiliating experience of participating in the examination. Dr. Barlett advised him that the examination would be the property of the U.S. Government and to request a copy he would have to file a FOIA request.

In April of 1997, Mr. Rodriguez submitted a FOIA request to receive a copy and was informed that a physician would have to request it, which he did. Mr. Rodriguez has insisted on filing a formal complaint as soon as possible as he has waited for a final decision to be made, and informed that a decision is still pending within the Border Patrol Specializing Unit regarding the position of Border Patrol Agent, he has submitted full qualifications and experience, he's been informed required for the position.

In May of 1997, Mr. Vernon Morris notified him that he had passed and his application for Border Patrol was with the General Counsel. Mr. Rodriguez called Larry Kitt at (202)514-6389 and informed it was his opinion, he would not be hired due to things that have happened, however the final decision would not be determined by him, it would be determined by somebody other than himself and it was his experience that Mr. Rodriguez would not be hired.

2. On July 8, 1997, I called and spoke with Larry Kitt/Security Officer from HQ Security office at (202)514-6389 and requested information relating to the pending case of Mr. Rodriguez. Mr. Kitt verified they performed a background investigation and issued a decision which was forwarded to the Attention of Val Stanley at the office of the Border Patrol Specializing Unit in HQ. Mr. Kitt could not recall the date this occurred, he did state "this case did take an unusually long time to complete due to his background and was not able to disclose information contained in report". Mr. Kitt did state he informed Mr. Rodriguez that the decision he reached was unfavorable and it was approved by his Chief Security Officer, however they are not the deciding factor, and the final decision would be determined by the Border Patrol Specializing Unit.

3. I then attempted to reach Val Stanley from the Border Patrol Specializing Unit and left a message on her voice mail. Ms. Stanley promptly called me back and informed me of the following information:

The Border Patrol Specializing Unit requested the Security Officer and the Employee Assistance Officer to make a recommendation. The recommendations will be needed to make a decision to Show Cause. Mr. Rodriguez will have to answer to the allegations in his background. Previous requests for information were not submitted by Mr. Rodriguez. I then asked if the information in Mr. Rodriguez background were disclosed to him, she states he would have to do a FOIA request to obtain. It was requested

**6 continued**

how Mr. Rodriguez could submit answers to allegations he is unaware of, and Ms. Stanley stated they could provide a synopsis. I asked Ms. Stanley, why it has taken five years to pass and Mr. Rodriguez has not received a reply, and has not received a decision. Ms. Stanley stated that Mr. Rodriguez did not respond to previous requests for information. I then asked the reason that Mr. Rodriguez has been subjected to various psychological examinations and Ms. Stanley stated previous obtained information submitted and received were "too old to use".

**END OF PERSONAL INTERVIEWS**

**7. Summary: (Reports of Findings.)**

In April 1992, Mr. Rodriguez initially applied for a position with the U.S. Border Patrol in the capacity of Border Patrol Agent. Mr. Rodriguez believed he was well-qualified, based on: 1) his education, a Bachelor's degree in Criminal Justice. 2) Military background as an Honorable Discharged Veteran in the Army, 1984 through 1986. 3)Past Job experiences, three years in the capacity of Bureau of Prisons (BOP) Officer and promoted to Case Manager in the BOP. 4)presently employed as an investigator (over fifteen months). In addition he is also a native Spanish speaker, and experienced the humiliation of knowing the other BOP officers that had applied for the same position with qualifications known not comparable to his own, get hired. The Border Patrol Specializing Unit stated the names/persons selected for the positions of Border Patrol agent were obtained by a computer-generated list without regards to sex, race and National Origin and at least seventy other applicants were also not selected. The Headquarters Examining Unit stated that no race statistics were kept, it was not explained or understood the selection process used by HQ/Examining Unit to retrieve Names, Qualifications, for the vacancy positions. Mr. Rodriguez states by his own admission that he had a troubled past due to harrassment endured by fellow employees when he transferred to another location out of Florida while employed with the BOP, and resulted in the unfair termination with the BOP. This action of termination did not occur until after June 1995, years after applying for the Border Patrol. Mr. Rodriguez states he was never informed properly of his options available. Mr. Rodriguez has had to endure the humiliating experience of retaking psychological evaluations involving long hours to justify and prove he is "okay" , and states all reports he has obtained have stated the same. Mr. Rodriguez states he has the documentation to indicate dates and incidents that he has had to endure during these years, he has not shared copies or documentation to present with report, this report was prepared based on the statements made by Mr. Rodriguez. BP Headquarters has corresponded with the same facts involving the time it has taken for Mr. Rodriguez to attempt to receive a final decision.

**8. Results:**

Val Stanley, HQ/BP, stated a request was made to the Security Officer and the Employee Assistance Officer to make their recommendations to prepare a decision to Show Cause. Ms. Stanley stated that a "final decision, HAD NOT BEEN MADE", and they will send out paperwork to allow Mr. Rodriguez to answer to allegations in his background and they could not disclose the allegations needed to be responded. Mr. Rodriguez stated he did not receive any paperwork from HQ/BP. Ms. Stanley could not give an estimated time as to when a decision will be rendered however she stressed he has never received a definite "NO", the case is considered pending.

This is notice of final counseling interview. If you believe you have been discriminated against on the basis of race, color, religion, sex, age, national origin, or handicap, you have the right to file a complaint of discrimination within fifteen (15) days after receipt of this notice.

The complaint must be in writing and may be filed in person or by mail with the

Director of Equal Employment Opportunity
Immigration and Naturalization Service
425 I Street, N.W. Room 2232
Washington, D.C. 20536

NOTE: Your acknowledged receipt and dating of this "Notice of Final Interview" concludes the counseling process.

SIGNATURE OF RECEIPT: [signature] Sr.

DATE: 10-17-97

Recieved Counselor's report via Federal Express overnight Dilevary on 10-16-97. [signature], Sr. End. —

To: Maria Hernandez, EEO Counselor

CERTIFICATION

I, Tyrone RODRIGUEZ (aggrieved person), hereby certify that

MariaElena HERNANDEZ (EEO Counselor) has informed me of the possible applicability of 5 U.S.C. 7121 (d) to my allegation(s) of discrimination and that he/she has communicated to me the substance of Title 29 C.F.R. section 1614.105 and has furnished me with a copy of this notice. I understand that the original or a copy of this notice will be made a part of the EEO counselor's report as evidence of the EEO counselor's compliance with Title 29 C.F.R. Section 1614.105 (b).

7-21-97
(Date)

Tyrone Rodriguez Sr.
(Aggrieved Person)

6/13/97 Maria E. Hernandez
(EEO Counselor)

(Aggrieved Person's Representative)

Exhibit I part (H)

To: Maria Hernandez, EEO Counselor

U.S. Department of Justice
Immigration and Naturalization Service
425 I Street, N.W.
Washington, D.C. 20536

**RIGHT TO ANONYMITY**

I have been advised that I have the right to remain anonymous during EEO Counseling.

I understand that if the matter is not resolved to my satisfaction and I file a formal complaint of discrimination, I lose the right to remain anonymous.

_✓_ I do not wish to remain anonymous.

___ I do wish to remain anonymous.

Tyrone Rodriguez, Sr. — 7/21/97
(Aggrieved Person) — Date

_______________ — _______________
(Aggrieved Person's Representative) — Date

Maria E. Hernandez — 6/13/97
(EEO Counselor) — Date

Exhibit I part I



U.S. DEPARTMENT OF JUSTICE

Immigration and Naturalization Service

*Southern Regional Office*
*7701 N. Stemmons Freeway*
*Dallas, Texas 75247*

TYRONE RODRIGUEZ
11169 SW 88TH STREET APT E-108
MAIMI, FLORIDA 33176

Please report for the oral interview for Border Patrol Agent at:

US Border Patrol Station
7201 Pembroke Road
Pembroke Pines, Florida 33023

July 21, 1992, 8:00 AM

You are encouraged to be on time, as the orientation session begins promptly at 8:00 AM. Bring the forms listed below to the interview.

SF-86, Questionnaire for Sensitive Positions Complete this form fully without signature or date. Duplicate this form once and affix an original signature and date on both copies.

If you will not be attending your interview, please complete the appropriate enclosed letter and return it to the above address immediately. (See enclosed form.)

If you have served on active duty in any branch of the Armed Forces, you must bring a copy of your DD-214 with you to the oral interview.

If you are rated by the interview panel as eligible to continue the examining process, you will be required to successfully complete other steps such as physical examination, drug test, and pre-employment check. There will be no charge to applicant for the above steps.

Travel expenses incurred by applicants in connection with the oral interview will be paid by the applicant. Applicants are encouraged to have their spouses attend the general orientation which precedes the individual interview. The entire oral interview process will take a minimum of 3-4 hours, possibly the entire day, so please make your plans accordingly.

We urge you to make every effort to attend your interview if you want to be considered for existing vacancies.

Exhibit I
part (A)

U.S. Department of Justice

Immigration and Naturalization Service

425 Eye Street N.W.
Washington, D.C. 20536
Aug. 27, 1993

Tyrone Rodriguez

Dear Applicant:

This is in reference to your application for a Border Patrol Agent (Trainee) position with the Immigration and Naturalization Service.

It has been almost a year since any individuals have been hired as trainee Agents. Due to this time lapse, it is necessary for us to update the current inventory of candidates to determine interest and availability for the position. In this regard, you are requested to complete the attached inquiry form and return it by September 17, to the following address:

Immigration and Naturalization Service
Personnel Management Branch
Recruitment & Employment Services
Border Patrol Special Examining Unit
425 I Street N.W., Room 6023
Washington, DC 20430

If we do not receive your form by the requested date, we will assume that you are no longer interested in the position and your application will receive no further consideration.

We appreciate your interest in employment with the Immigration and Naturalization Service.

Sincerely,

for Rosemary Cortino

Sidney Waldstreicher
Headquarters
Acting Personnel Officer

Exhibit I part (B)

# Memorandum

| Subject | Date |
| --- | --- |
| OUR APPLICATION FOR A BORDER PATROL AGENT (TRAINEE) POSITION | JAN 31 1996 |

To

From BORDER PATROL SPECIAL EXAMINING UNIT

IN ORDER FOR THIS OFFICE TO CONTINUE PROCESSING YOUR APPLICATION FOR EMPLOYMENT AS A BORDER PATROL AGENT (TRAINEE) IT WILL BE NECESSARY FOR YOU TO PROVIDE OR COMPLETE THE FOLLOWING INFORMATION:

COMPLETE THE ENCLOSED SF-86 FORM (QUESTIONNAIRE FOR NATIONAL SECURITY POSITIONS) SPECIFICALLY THE ITEMS LISTED BELOW:

**OR**

YOU MUST GO TO YOUR LOCAL POLICE PRECINCT OR GOVERNMENT AGENCY AND HAVE YOUR FINGERPRINTS TAKEN ON THE ENCLOSED FINGERPRINT CARDS MAKING SURE THE INFORMATION IN ALL AREAS IS COMPLETED.

REMEMBER INCOMPLETE FORMS DELAY THE PROCESSING PHASE, THEREFORE YOU SHOULD RETURN THE REQUESTED FORMS COMPLETED IN THEIR ENTIRETY IN THE ENCLOSED PRIORITY ENVELOPE (NO POSTAGE NEEDED)

RETURN DATE Feb. 9, 1996

Exhibit I part (E)

Form G-2
(Rev. 1-2-80)

U.S. Department of Justice
Immigration and Naturalization Service

425 I Street NW.
Washington, DC 20536

FEB 21 1997

Mr. Tyrone Rodriguez
7265 Gateshead Circle, Apt. 5
Orlando, FL. 32822

Dear Mr. Rodriguez:

This is in reference to your application for a Border Patrol Agent (Trainee) position with the Immigration and Naturalization Service.

Before we can make a final determination on your application, you must complete a psychological and psychiatric examination as part of the processing at our expense. The evaluations will be conducted by Dr. Ted Bartlett. You must contact him directly for an appointment at (407) 740-0033. You have 5 days from the date of this letter to make the appointment. His office address is as follows:

1555 Howell Branch St.
Suite C-210
Winterpark, FL. 32789

If you do not comply with this request, we will assume you are no longer interested and your application will be removed from any further consideration.

Sincerely,

for Denise J. Adams

Steven A. Park
Acting Chief
Headquarters Human Resources

(F) Exhibit I
pt

EXHIBIT C1

HQEEO 60/8

DEC 31 1997

Mr. Tyrone Rodriguez
7265 Gateshead Circle, #5
Orlando, FL 32822

Dear Mr. Rodriguez:

The purpose of this letter is to inform you of the acceptance of the complaint of discrimination which you filed on August 14, 1997. Your complaint was assigned number I-97-0220 and has been accepted on the bases of national origin (Puerto Rican) and reprisal (for previously seeking EEO counseling). The following issue will be investigated:

> In May 1997, you were informed that you may not be hired for the position of Border Patrol Agent (Trainee) as a result of your background investigation.

Please be advised that all other references contained in your complaint will be used as background information to support the issue as stated.

You will receive notification regarding the assignment of an EEO Investigator under separate cover.

Sincerely,

D. Diane Weaver

D. Diane Weaver
Acting Director
Office of EEO

RECEIVED
JAN 09 1998
DSZ-BOSTON

cc: WF-T. Rodriguez
~~cc:~~ BETSY CHRISTIE, EEO Manager, ERO
INS:HQEEO:DWeaver:JTaylor:KSmith:514-2732 kes:12/31/97

RECEIVED
DEC 17 1998
DSZ-BOSTON

BC. 14

CAUTION: NOT TO BE USED FOR IDENTIFICATION PURPOSES

PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE

CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY

DD FORM 214, 1 JUL 79

1. NAME (Last, first, middle): RODRIGUEZ, TYRONE

2. DEPARTMENT, COMPONENT AND BRANCH: ARMY/RA

3. SOCIAL SECURITY NO.: [redacted]

4a. GRADE, RATE OR RANK: SP4

4b. PAY GRADE: E-4

5. DATE OF BIRTH: [redacted]

6. PLACE OF ENTRY INTO ACTIVE DUTY: NEW YORK, NY

7. LAST DUTY ASSIGNMENT AND MAJOR COMMAND: CO C, 3D BN, 6TH INF, 5TH INF DIV, FC

8. STATION WHERE SEPARATED: FORT POLK, LA

9. COMMAND TO WHICH TRANSFERRED: USAR CON GP (ANL TNG) RCPAC, ST. LOUIS, MO 63132

10. SGLI COVERAGE AMOUNT: $ 50,000 ☐ NONE

11. PRIMARY SPECIALTY NUMBER, TITLE AND YEARS AND MONTHS IN SPECIALTY (Additional specialty numbers and titles involving periods of one or more years)
11B10 INFANTRYMAN, 1 YEAR, 9 MONTHS//NOTHING FOLLOWS

| 12. RECORD OF SERVICE | YEAR(S) | MON(S) | DAY(S) |
|---|---|---|---|
| a. Date Entered AD This Period | 84 | [illegible] | [illegible] |
| b. Separation Date This Period | 86 | [illegible] | [illegible] |
| c. Net Active Service This Period | [illegible] | [illegible] | [illegible] |
| d. Total Prior Active Service | 00 | [illegible] | [illegible] |
| e. Total Prior Inactive Service | 00 | [illegible] | 19 |
| f. Foreign Service | 00 | [illegible] | [illegible] |
| g. Sea Service | 00 | [illegible] | [illegible] |
| h. Effective Date of Pay Grade | 85 | 11 | [illegible] |
| i. Reserve Oblig. Term. Date | 90 | [illegible] | [illegible] |

13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED (All periods of service)
ARMY SERVICE RIBBON//ARMY ACHIEVEMENT MEDAL//NOTHING FOLLOWS

14. MILITARY EDUCATION (Course Title, number weeks, and month and year completed)
NONE//NOTHING FOLLOWS

15. MEMBER CONTRIBUTED TO POST-VIETNAM ERA VETERANS' EDUCATIONAL ASSISTANCE PROGRAM ☒ YES ☐ NO

16. HIGH SCHOOL GRADUATE OR EQUIVALENT ☒ YES ☐ NO

17. DAYS ACCRUED LEAVE PAID: 0

18. REMARKS
DENTAL CARE WAS NOT PROVIDED WITHIN 90 DAYS PRIOR TO SEPARATION//NOTHING FOLLOWS

19. MAILING ADDRESS AFTER SEPARATION
242 W. 62D ST, APT 3-E
NEW YORK, NY 10023

20. MEMBER REQUESTS COPY 6 BE SENT TO DIR. OF VET AFFAIRS ☒ YES ☐ NO

21. SIGNATURE OF MEMBER BEING SEPARATED: [signature]

22. TYPED NAME, GRADE, TITLE AND SIGNATURE OF OFFICIAL AUTHORIZED TO SIGN: [signature]

SPECIAL ADDITIONAL INFORMATION (For use by authorized agencies only)

23. TYPE OF SEPARATION: RELEASE FROM ACTIVE DUTY FM 523

24. CHARACTER OF SERVICE (Includes upgrades): HONORABLE

25. SEPARATION AUTHORITY: CHAPTER 4, AR 635-200

26. SEPARATION CODE: LBK

27. REENLISTMENT CODE: 1

28. NARRATIVE REASON FOR SEPARATION: COMPLETION OF REQUIRED SERVICE

29. DATES OF TIME LOST DURING THIS PERIOD: NONE

30. MEMBER REQUESTS COPY 4 INITIAL: T.R.

Ex. 15 (A1)

**PHYSICAL DATA AND APTITUDE TEST SCORES UPON RELEASE FROM ACTIVE DUTY**

For use of this form, see AR 635-5; the proponent agency is MILPERCEN.

DATE: 21 AUG 86

**DATA REQUIRED BY THE PRIVACY ACT OF 1974**

AUTHORITY: Section 301, Title 5, USC.

PRINCIPAL PURPOSE: To authorize your reenlistment within a specified time, without physical examination or without the requirement for mental retesting.

ROUTINE USES: To document your physical status at time of separation and to record results of prior mental aptitude tests. *(A copy of this form will be placed in your Military Personnel Records Jacket, U.S. Army.)*

DISCLOSURE OF YOUR SSN AND OTHER PERSONAL INFORMATION IS VOLUNTARY. HOWEVER, INDIVIDUALS WHO DO NOT DISCLOSE THE INFORMATION WILL BE REQUIRED TO TAKE THE PHYSICAL EXAMINATION AND THE MENTAL APTITUDE TESTS REQUIRED FOR REENLISTMENT.

*INSTRUCTIONS*

*Prepare in triplicate. Original and duplicate will be given to individual concerned. Triplicate will be filed in individual's Military Personnel Records Jacket.*

| LAST NAME – FIRST – MIDDLE INITIAL | GRADE | SSN |
|---|---|---|
| RODRIGUEZ, TYRONE | SP4 | 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 |

**APTITUDE TEST SCORES**

ENLISTMENT OR REENLISTMENT WITHOUT MENTAL RETEST IS AUTHORIZED PROVIDED ENLISTMENT OR REENLISTMENT IS ACCOMPLISHED WITHIN ONE YEAR AFTER DATE OF SEPARATION. YOUR RECORDED APTITUDE AREA SCORES ARE AS FOLLOWS:

**ASVAB SCORES**

| | | | |
|---|---|---|---|
| GT | 114 | GM | 87 |
| EL | 103 | CL | 118 |
| MM | 91 | SC | 103 |
| CO | 98 | FA | 112 |
| OF | 93 | ST | 95 |

AFQT/WST SCORE: DNA

**ACB – 73 SCORES**

| | | | |
|---|---|---|---|
| CO | | FA | |
| (IN, CO-A) | | AE, CO-B) | |
| EL | | OF | |
| GM | | MM | |
| CL | | ST | |
| GT | | SC | |

**PHYSICAL STATUS**

YOUR PHYSICAL CONDITION ON 21 AUG 86 *(Date of Separation)* IS SUCH THAT YOU ARE CONSIDERED PHYSICALLY QUALIFIED FOR SEPARATION OR FOR REENLISTMENT WITHOUT REEXAMINATION, PROVIDED YOU REENLIST WITHIN 6 MONTHS AND STATE THAT YOU HAVE NOT ACQUIRED NEW DISEASES OR INJURIES DURING THE INTERVAL PERIOD WHEN NOT A MEMBER OF THE MILITARY SERVICE.

YOUR PHYSICAL PROFILE ON DATE OF SEPARATION IS: N/A

| TYPED NAME, GRADE, AND TITLE OF PERSONNEL OFFICER | SIGNATURE |
|---|---|
| SIDNEY P. GUIDRY, GS7, CHIEF, TRANSFER POINT | [signature] |

**STATEMENT OF PHYSICAL STATUS AT TIME OF ENLISTMENT**

HAS THERE BEEN ANY CHANGE IN YOUR PHYSICAL CONDITION SINCE YOU WERE SEPARATED?

☐ YES ☐ NO *(IF YES, DESCRIBE BELOW)*

(A2)

| DATE | SIGNATURE OF INDIVIDUAL BEING SEPARATED |
|---|---|
| 21 Aug 86 | X Tyrone Rodriguez |

DA FORM 1011 EDITION OF 1 SEP 68 IS OBSOLETE.



from the Armed Forces of the United States of America

This is to certify that

was Honorably Discharged from the

United States Army

on the ______ day of ______ 19__ This certificate is

as a testimonial of Honest and Faithful Ser

DD FORM NO 256A 1 MAY 50

(B)



# DEPARTMENT OF THE ARMY

THIS IS TO CERTIFY THAT THE SECRETARY OF THE ARMY HAS AWARDED

## THE ARMY ACHIEVEMENT MEDAL

TO PRIVATE FIRST CLASS [illegible]
UNITED STATES ARMY

FOR OUTSTANDING PERFORMANCE OF DUTY DURING THE DEPLOYMENT OF TASK FORCE [illegible] BATTALION [illegible] TO THE NATIONAL TRAINING CENTER [illegible] DISPLAYED A [illegible] CONTRIBUTED TO THE SUCCESS OF THE TASK FORCE IN DEFEATING THE OPPOSING FORCES. PRIVATE [illegible] WARRIOR SPIRIT AND WILL TO WIN REFLECTS GREAT CREDIT UPON HIMSELF, THE ART OF SOLDIERING AND HIS UNIT.

GIVEN UNDER MY HAND IN THE CITY OF WASHINGTON
THIS 20[illegible] DAY OF NOVEMBER 19 85

GARY A. JONES
LTC, IN
Commanding

SECRETARY OF THE ARMY

BEST COPY AVAILABLE

# DEPARTMENT OF THE ARMY

## CERTIFICATE OF ACHIEVEMENT

AWARDED TO

[illegible]

[illegible]

FOR ACHIEVING THE [illegible] SCORE ON THE [illegible] CYCLE [illegible]

20TH NOVEMBER 1984

EDISEN [illegible] SCHOLKE
Colonel, Infantry
Commanding

BEST COPY AVAILABLE

# DEPARTMENT OF THE ARMY

THIS IS TO CERTIFY THAT THE SECRETARY OF THE ARMY HAS AWARDED

## THE ARMY ACHIEVEMENT MEDAL

TO PRIVATE FIRST CLASS TRYONE RODRIGUEZ
CHARLIE COMPANY, 3D BATTALION, 6TH INFANTRY REGIMENT
FORT POLK, LOUISIANA 71459-5000

FOR MERITORIOUS ACHIEVEMENT IN SUPPORT OF TASK FORCE 3D BATTALION, 70TH ARMOR AND THE 2D BRIGADE, 5TH INFANTRY DIVISION (MECHANIZED), DURING OPERATION DESERT STEEL IV AT THE NATIONAL TRAINING CENTER, 1 OCTOBER THROUGH 30 OCTOBER 1985. HIS ATTENTION TO DETAIL, PROFESSIONAL ATTITUDE AND EXCEPTIONAL TECHNICAL SKILLS CONTRIBUTED DIRECTLY TO THE SUCCESS OF THE TASK FORCE, AND THE 2D BRIGADE DURING THIS RIGOROUS AND DEMANDING TRAINING EXERCISE. HIS MERITORIOUS ACHIEVEMENT IS IN KEEPING WITH THE FINEST TRADITIONS OF THE AMERICAN FIGHTING SOLDIER AND REFLECTS GREAT CREDIT UPON HIMSELF, THE 5TH INFANTRY DIVISION (MECHANIZED), AND THE UNITED STATES ARMY.

GIVEN UNDER MY HAND IN THE CITY OF WASHINGTON
THIS SIXTH DAY OF NOVEMBER 1985

ANTHONY GIUSTI
Lieutenant Colonel, Armor
Commanding

SECRETARY OF THE ARMY

BEST COPY AVAILABLE



5th Infantry Division (Mechanized)
Fort Polk, [illegible] 71459-5000
[illegible] 1986

[illegible] Commander
[illegible]

[illegible] Specialist Four Tyrone Rodriguez
Company C, [illegible] Battalion, [illegible] Infantry
5th Infantry Division (Mechanized)
Fort Polk, Louisiana 71459-5000

[illegible]

[illegible] Infantry Division (Mechanized) [illegible] Chip for your exemplary performance of duty. Your excep[illegible] achievement demonstrates your desire to excel and a sense of [illegible]

[illegible] outstanding soldiers has spread throughout the Army. [illegible] "Red Devil Chip" demonstrates that [illegible] "Red Devil." Thank you for a job well done.

K. C. Leuer

K. C. LEUER
Major General, USA
Commanding

BEST COPY AVAILABLE



(4)

# Florida International University

On recommendation of the Faculty and by virtue of the authority vested in it by the Florida Board of Regents hereby confers upon

## Tyrone Rodriguez

the degree of

## Bachelor of Science in Criminal Justice

School of Public Affairs and Services

In Testimony Whereof, the signatures of the University's officers are hereto affixed in Miami, Florida,

April 21, 1989

Chairman, Board of Regents

Governor

President of the University

Chancellor, State University System

Dean



(H)

Has conferred on

Tyrone Rodriguez

the degree

Associate in Arts

and all the rights and privileges thereunto appertaining.

In Witness Whereof, this diploma, duly signed, has been issued and the seal of the College affixed.

Issued by the District Board of Trustees of Miami-Dade Community College upon recommendation of the Faculty of the College at Miami, this month of December, A.D. 1987.

Chairman, District Board of Trustees

President



U.S. Department of Justice

Federal Bureau of Prisons

*United States Penitentiary*

*P.O. Box 7500*
*Florence, CO 81226-7500*

April 27, 1994

Tyrone Rodriguez
Correctional Treatment Specialist
United States Penitentiary
Florence, CO 81226

Dear Mr. Rodriguez:

It is a pleasure to approve a Sustained Superior Performance Award for you in the amount of $300.00. You were recommended for the award for demonstrating dependability and maintaining a high quality of work production during the past months.

Your dedication to duty is appreciated. It is performance such as yours that contributes to making USP Florence such a good place to work.

Sincerely,

Patrick Whalen
Warden

(I)

U.S. Department of Justice

Federal Bureau of Prisons

*Federal Correctional Complex*

*123 S. Pikes Peak*
*Florence, Colorado 81226*

May 13, 1993

Tyrone Rodriguez
Correctional Treatment Specialist
Metropolitan Correctional Center
15801 S.W. 137th Avenue
Miami, FL 33177

Dear Mr. Rodriguez:

Congratulations! This is to confirm your selection as a Correctional Treatment Specialist, GS-101-05/10, at the United States Penitentiary in Florence, Colorado. Your reporting date is 08-22-93, with a base salary of $28,116.00 per annum.

We are happy to have you join our team and we know you are looking forward to the challenges and opportunities ahead of us. Our Human Resource Department has put together some informative material about the Florence area and surrounding communities to help with your move. Please feel free to contact us if you have any questions or need assistance.

Again, congratulations on your new assignment and welcome to the USP Florence family.

Sincerely,

Patrick Whalen
Warden

PW:ag

Enclosures

cc: Warden: MCC Miami
HRM, MCC Miami

(J)

**U.S. Department of Justice**
Federal Bureau of Prisons

# Employee Performance Appraisal

| A. 1. Name of Employee (Last, First, MI) | 2. SSN | 3. Position Title | 4. Department/Duty Station | 5. Rating Period |
|---|---|---|---|---|
| RODRIGUEZ, Tyrone | [redacted] | Correctional Treatment Spec. | Unit Management USP, Florence, CO | 08/23/93-03/31/94 (From / To) |

| 6. Series/Grade | 7. Standard Set # | 8. Standards Received and Understood |
|---|---|---|
| GS-101-05 | 6 | Employee: ______ Date: ______ Rating Official: [signature] Date: 9-7-93 |

## B. PROGRESS REVIEW

1. Job Element #1 Plans, Monitors, & Evaluates
Mr. Rodriguez while training at the FCI, performed numerous unit management tasks in conjunctions with case managers certification.

2. Job Element #2 Performs Professional Duties
Mr. Rodriguez continues to maintain routine case management duties as he works toward his case management certification.

3. Job Element #3 Communicates
Mr. Rodriguez advises his supervisor of the completion of unit management tasks via memorandums and oral presentations.

4. Job Element #4 Maintains & Provides Expertise
Mr. Rodriguez completed classroom training in all mandatory case mgmt. topics and received certification in [illegible] procedures.

5. Job Element #5 Maintains Security of Instit.
Mr. Rodriguez maintained the security of unit files and records while assigned the FCI.

6. Job Element #6

7. Job Element #7

8. PROGRESS REVIEW. Sign and date to acknowledge that progress to date has been discussed.
Employee: [signature] Date: 1/13/94
Rating Official: [signature] Date: 1-13-94

## C. PERFORMANCE ACHIEVEMENTS

1. Job Element #1 (U / MS / **FS** / EX / O — FS circled)
Mr. Rodriguez has been [illegible] initial classifications with no noted problems. He continues to pre-team inmates to identify [illegible] classification.

2. Job Element #2 (U / MS / FS / **EX** / O — EX circled)
Mr. Rodriguez [illegible] CIMS and [illegible] in a timely manner. Mr. Rodriguez continues to assist with inmate screening, with little or no [illegible].

3. Job Element #3 (U / MS / FS / **EX** / O — EX circled)
Mr. Rodriguez continues to provide routine updates to his supervisor of his caseload.

4. Job Element #4 (U / MS / **FS** / EX / O — FS circled)
Mr. Rodriguez continues to work toward his case management certification. He continues to learn his position and required certifications.

5. Job Element #5 (U / MS / **FS** / EX / O — FS circled)
Mr. Rodriguez has no [illegible] with [illegible] and responds to emergency situations appropriately.

6. Job Element #6 (U / MS / FS / EX / O)

7. Job Element #7 (U / MS / FS / EX / O)

## D. RATER'S COMMENTS:

[illegible] case [illegible] he continues to learn [illegible].

Rating Official: [signature] Date: 3-17-94

## E. REVIEWER'S COMMENTS:

Tyrone displays a interest and is continually improving his Case Manager duties. Presently progressing well as a new Case Manager.

Overall Performance Rating

| U | MS | FS | EX | O |
|---|---|---|---|---|
| | | | X | |

[signature]
J.B. Davis, AW(P)
Reviewing Official Date: 3/18/94

## F. CHIEF EXECUTIVE OFFICER'S COMMENTS:

BEST COPY AVAILABLE

Chief Executive Officer ______ Date ______

## G. FINAL DISCUSSION.

My Supervisor has discussed my overall performance with me. Employee ______ Date ______

## H. TRAINING AND CAREER DEVELOPMENT

1. Specify areas in which employee should receive training to improve skills and/or knowledge required in present position and the type of training recommended.

2. Specify training and other developmental activities where change is required to enhance career advancement and promotion potential.

(14)

A. 1. Name of Employee (Last, First, MI): RODRIGUEZ, Tyrone
3. Position Title: Correctional Officer
4. Department/Agency Station: Correctional Services
5. Rating Period: From 4-1-91 To 3-30-92
6. Series/Grade: GS-06
7. Standard Set #: 3
8. Standards Received and Understood — Employee / Date / Rating Official / Date

B. PROGRESS REVIEW

1. Job Element #1 SUPERVISE INMATES: No problems noted with supervising inmates this past six months. Gets along with all ethnic groups.

2. Job Element #2 CONTROL, INSPECTS, OPERATES EQUIPMENT. ACCOUNTED FOR ALL EQUIPMENT such as keys, tools. No problems noted.

3. Job Element #3 CONTROL CONTRABAND: Made his routine shakedowns of inmate and living quarters.

4. Job Element #4 FOLLOWED SECURITY PROCEDURES: Checked all secured areas, such as bars windows doors and air vents.

5. Job Element #5 COMMUNICATION: Works well with the younger staff and assist them with their new assignments. Reports to duty in a timely manner.

6. Job Element #6

7. Job Element #7

C. PERFORMANCE ACHIEVEMENTS

1. Job Element #1 Officer Rodriguez enforces rules consistently while working the inmate housing units and notes when an inmate from another unit is in his area. U | MS | FS | EX | O

2. Job Element #2 He test annunciator panels, fire alarm and other security devices as required to ensure proper working condition and reports malfunctions to appropriate officials. U | MS | FS | EX | O

3. Job Element #3 He recognizes nuisance contraband and disposes of it appropriately. He conducts frequent and irregular shakedowns of sections within his assigned area of responsibility. U | MS | FS | EX | O

4. Job Element #4 He checks the crew kit cards for inmates assigned to his detail. He notifies the Duty Lieutenant of any breaches in security and prevent escapes, suicides, and riots by patrolling his post. U | MS | FS | EX | O

5. Job Element #5 Officer Rodriguez communicates effectively with inmates and instructs inmates on institution rules and regulations. U | MS | FS | EX | O

6. Job Element #6 U | MS | FS | EX | O

7. Job Element #7 U | MS | FS | EX | O

B. PROGRESS REVIEW Sign and date to acknowledge that progress to date has been discussed.

Employee / Date

Rating Official / Date

D. RATER'S COMMENTS: Officer Rodriguez continues to work hard and learning at a rapid pace. He continues to improve and displays the BOP uniform in a neat and orderly manner. Also, he works well with other staff.

Rating Official — [signature] Date 4-10-92

E. REVIEWER'S COMMENTS:

Overall Performance Rating: U | MS | FS | EX | O

Officer Rodriguez performs well completing duties as directed by policy, post rules, and regulations.

Reviewing Official [signature] Date 4-10-92

F. CHIEF EXECUTIVE OFFICER'S COMMENTS:

BEST COPY AVAILABLE

Chief Executive Officer / Date

G. FINAL DISCUSSION. My Supervisor has discussed my overall performance with me.

Employee / Date

H. TRAINING AND CAREER DEVELOPMENT

Specify areas in which employee should receive training to improve skills and/or knowledge required in present position and the type of training recommended.

Recommend more training ... for further Development

Training and other developmental activities where change is required to enhance career advancement and promotion potential.

(6)

Previously BP-PERS-1

BP-367(34) August 1986

U.S. Department of Justice
Federal Bureau of Prisons

# Employee Performance Appraisal

| 1. Name of Employee (Last, First, MI) | 2. SSN | 3. Position Title | 4. Department/Duty Station | 5. Rating Period |
|---|---|---|---|---|
| | | CORRECTIONAL OFF. | CORR. SERVC. | 4/1/93 (From) - 3/31/94 (To) |

| 6. Series/Grade | 7. Standard Set # | 8. Standards Received and Understood |
|---|---|---|
| GS-7 | #3 | Employee ____ Date ____ Rating Official ____ Date ____ |

## B. PROGRESS REVIEW

1. Job Element #1
2. Job Element #2
3. Job Element #3
4. Job Element #4
5. Job Element #5
6. Job Element #6
7. Job Element #7

8. PROGRESS REVIEW. Sign and date to acknowledge that progress to date has been discussed.

Employee ____ Date ____

Rating Official ____ Date ____

## C. PERFORMANCE ACHIEVEMENTS

| Job Element | U | MS | FS | EX | O |
|---|---|---|---|---|---|
| 1. Job Element #1 | | | | | |
| 2. Job Element #2 | | | | | |
| 3. Job Element #3 | | | | | |
| 4. Job Element #4 | | | | | |
| 5. Job Element #5 | | | | | |
| 6. Job Element #6 | | | | | |
| 7. Job Element #7 | | | | | |

Spent most of his period in training Case Management

## D. RATER'S COMMENTS:

Rating Official ____ Date ____

## E. REVIEWER'S COMMENTS:

Overall Performance Rating

| U | MS | FS | EX | O |
|---|---|---|---|---|

Reviewing Official ____ Date ____

## F. CHIEF EXECUTIVE OFFICER'S COMMENTS:

Chief Executive Officer ____ Date ____

## G. FINAL DISCUSSION.

My Supervisor has discussed my overall performance with me. Employee ____ Date ____

## H. TRAINING AND CAREER DEVELOPMENT

1. Specify areas in which employee should receive training to improve skills and/or knowledge required in present position and the type of training recommended.

2. Specify training and other developmental activities where change is required to enhance career advancement and promotion potential.

(M)



**U.S. Department of Justice**

Federal Bureau of Prisons

*Metropolitan Correctional Center*

---

*15801 S.W. 137th Avenue*
*Miami, FL 33177-1297*

December 23, 1992

Dear Mr. Rodriguez:

I have just completed reviewing your sick leave usage during 1992. This review revealed that your sick leave usage was under the Bureau of Prison's annual average for staff usage. This is commendable and I want to personally congratulate you for your good fortune. I hope you are able to have an even more fortunate year in 1993 and continue working on a successful career. Again, congratulations on a successful year.

M. Janas

M. Janas, Captain

(N)

U.S. Department of Justice
Federal Bureau of Prisons

# Employee Perfor[illegible]ance Appraisal

| 1. Name of Employee (Last, First, MI) | 2. SSN | 3. Position Title | 4. Department/Duty Station | 5. Rating Period |
|---|---|---|---|---|
| | | CORR. OFFICER | CORR. SVC. | 4/1/92/ 3/31/93 (From / To) |

| 6. Series/Grade | 7. Standard Set # | 8. Standards Received and Understood | | | |
|---|---|---|---|---|---|
| GS-7 | #3 | Employee: [signature] | Date: 5-7-92 | Rating Official: [signature] | Date: 5-9-92 |

| B. PROGRESS REVIEW | C. PERFORMANCE ACHIEVEMENTS |
|---|---|
| 1. Job Element #1 OFFICER RODRIGUEZ IS ABLE TO SUPERVISE INMATES IN LARGE AND SMALL GROUPS. | 1. Job Element #1 OFFICER RODRIGUEZ CAN DIRECT INMATE ACTIVITIES TO COMPLETE A WIDE RANGE OF TASKS. HE WILL CONFRONT INMATES IN AN EFFORT TO ENFORCE RULES AND REGULATIONS. (U / MS / FS / EX / O — EX marked) |
| 2. Job Element #2 HE MAINTAINS ACCOUNTABILITY OF KEYS AND EQUIPMENT WITH NO BREACHES. | 2. Job Element #2 OFFICER RODRIGUEZ ACCOUNTS FOR ANY AND ALL EQUIPMENT ISSUED TO HIM. FIRE AND SECURITY INSPECTIONS ARE COMPLETED AND SUGGESTIONS FOR CORRECTIVE ACTION IS SUBMITTED. (U / MS / FS / EX / O — EX marked) |
| 3. Job Element #3 HE CONTROL CONTRABAND BY CONDUCTING SHAKEDOWNS IN HIS AREA OF RESPONSIBILITY. | 3. Job Element #3 OFFICER RODRIGUEZ SEARCHES INMATES AND THEIR LIVING AREAS. HE HAS DISCOVERED ON MORE THEN ONE OCCASSION ITEMS OF CONTRABAND. (U / MS / FS / EX / O — FS marked) |
| 4. Job Element #4 HE UNDERSTAND POLICY AND ASK QUESTION HIS IS NOT SURE. | 4. Job Element #4 OFFICER RODRIGUEZ UNDERSTANDS POLICY AND PROCEDURE AND WORKS WITHIN THE GUIDELINES. (U / MS / FS / EX / O — EX marked) |
| 5. Job Element #5 HE COMMUNICATES VERY WELL WITH HIS PEERS AND SUPERVISORS. | 5. Job Element #5 OFFICER RODRIGUEZ ISDAN EFFECTIVE COMMUNICATOR IN BOTH ORAL AND WRITTEN FORM. H REPORTS ARE CLEAR, CONCISE AND TIMELY. (U / MS / FS / EX / O — EX marked) |
| 6. Job Element #6 | 6. Job Element #6 (U / MS / FS / EX / O) |
| 7. Job Element #7 | 7. Job Element #7 (U / MS / FS / EX / O) |

8. PROGRESS REVIEW. Sign and date to acknowledge that progress to date has been discussed.

Employee: [signature] Date: 11/4/92

Rating Official: V. Moore Date: 10/23/92

D. RATER'S COMMENTS OFFICER RODRIGUEZ IS AN ENERGETIC OFFICER WANTING TO GIVE %100. HIS WRITTEN AND ORAL COMMUNICATION SKILLS IN SPANISH AND ENGLISH MAKE HIM AN ASSET THROUGHOUT THE FACILITY. KEEP UP THE FINE WORK!!!

THOMAS J. LITWINSKI [signature] — Rating Official — Date: 3-31-93

E. REVIEWER'S COMMENTS: Good year! I concur with the rater's comments.

Overall Performance Rating

| U | MS | FS | EX | O |
|---|---|---|---|---|
| | | | (circled) | |

Reviewing Official: [signature] Date: 4-11

F. CHIEF EXECUTIVE OFFICER'S COMMENTS:

Chief Executive Officer ____ Date ____

G. FINAL DISCUSSION. My Supervisor has discussed my overall performance with me. Employee: [signature] Date: 4-19-93

H. TRAINING AND CAREER DEVELOPMENT

1. Specify areas in which employee should receive training to improve skills and or knowledge required in present position and the type of training recommended.

2. Specify training and other developmental activities where change is required to enhance career advancement and promotion potential.



Department of the Treasury
Federal Law Enforcement Training Center
Glynco, Georgia

# Federal Bureau of Prisons

*By authority of the Board of Directors and on recommendation of the Faculty awards this*

## Certificate of Graduation

TYRONE RODRIGUEZ

*for having completed all requirements in Introduction to Correctional Techniques*

*Chief, Staff Training*

*Director*

October 12, 1990
*Date*



**EXHIBIT F3**

# AFFIDAVIT

DISTRICT OF COLUMBIA

I, Velmenia J. Stanley (female; African American; no prior EEO activity; no disabilities) Supervisory Personnel Staffing Specialist, GS-13, Special Hiring Unit, Employment and Recruitment Services, Human Resources, HQ, INS, DOJ, make the following statement freely and voluntarily to Peter M. Schilling, who has identified himself to me as a Contract EEO Investigator for the following federal agency: INS investigating a complaint of discrimination filed by Tyrone Rodriguez, knowing that this statement may be used in evidence. I understand that this statement is not confidential, and that it may be shown to the interested parties, those with a legal right to know. I hereby solemnly swear:

1. How long have you been in your current position?

1. I have been in my current position as Supervisory Personnel Staffing Specialist, GS-13, since 1980.

2. Who are your current first and second level supervisors?

2. My current first level supervisor is Harry Hoskins, GS-14, Acting Chief of Employment and Recruitment Services. My current second level supervisor is Steven Park, Chief of Human Relations, GS-15.

3. Briefly describe the work of your Unit.

3. My Unit used to be called the Special Examining Unit. About a year ago they changed the name to the Special Hiring Unit. We still do ~~essentially~~ the same work. Our job is to review and process all the applications for the Border Patrol. We ~~will~~ review ~~the~~ medical records, basic qualifications and ~~have~~ the Security Officer ~~review~~ each application to make sure the individual can pass the Security Clearance. We will ~~make an~~ appointment offer if the person is found basically qualified for the position, meets medical and security requirements.

4. Were you involved in the determination regarding the qualification of Tyrone Rodriguez

p 1 of 3

Ex. 16

Init ___

in his application to the Border Patrol?

4. Yes. There was some question raised in the background information as to whether to grant him a Security Clearance or not. We had some concerns based on medical information he provided as to whether he would be a danger to himself or someone else. I asked the representative at Headquarters of the Employee Assistance Program to do an assessment of the information in the file, which related to the psychological fitness of Mr. Rodriguez. Using information that Mr. Rodriguez had provided to us, the EAP person made a recommendation that we should get additional input on Mr. Rodriguez. We then contacted Dr. Bruce Butler, who reviews the medical documentation for our Public Health Section. Dr. Butler did a large writeup on his evaluation of the information in the file on Mr. Rodriguez, including medical documentation and information on past positions held by Mr. Rodriguez. It was his judgement in an opinion letter of November 12, 1997, that Mr. Rodriguez was not suitable for employment with the Border Patrol.

Once we get a determination like this from Dr. Butler, the procedure is for us to then go to OPM, and ask for a final judgement as to the suitability of this candidate based on Dr. Butler's decision. We recommended not employing Mr. Rodriguez. OPM agreed in a decision dated February 19, 1998. It is up to OPM to notify Mr. Rodriguez directly, which it did. According to OPM, Mr. Rodriguez posed an unacceptable safety and healthy risk because of the psychological issues presented in the review.

5. Were you aware that Mr. Rodriguez went to the EEO Office to file a formal complaint about not being hired by the Border Patrol in July of 1994?

5. No.

6. Was any action that you took in regard to the processing of Mr. Rodriguez's

p 2 of 3

application to the Border Patrol discrimination against him on the basis of reprisal for this prior contact with the EEO Office regarding his hiring?

6. No.

I HAVE READ THE ABOVE STATEMENT CONSISTING OF 3 PAGES AND IT IS TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE. I UNDERSTAND THAT THIS STATEMENT IS NOT CONFIDENTIAL, AND THAT IT MAY BE SHOWN TO THE INTERESTED PARTIES.

Velmenia J. Stanley

Subscribed and sworn to me

At Washington, D.C. on this 3

Day of February 1999

Witness or Notary

AFFIDAVIT

EXHIBIT F4

DISTRICT OF COLUMBIA

I, Lawrence Kitt Jr. (no prior EEO) Personnel Security Specialist, GS-12, Personnel Security, HQ, INS, DOJ, make the following statemen freely and voluntarily to Peter M. Schilling, who has identified himself to me as a Contract EEO Investigator for the following federal agency: INS, investigating a complaint of discriminaton filed by Tyrone Rodriguez, knowing that this statement may be used in evidence. I understand that this statement is not confidential, and that it may be shown to the interested parties, those with a legal right to know. I hereby solemnly swear:

1. How long have you been in your current position?

1. I have been in my current position as a Personnel Security Specialist, GS-12, for the past 3 years.

2. Who is your current first level supervisor?

2. My current first level supervisor is Roy A. Judge, Chief, Personnel Security, GS-14.

3. Who is your current second level supervisor?

3. My current second level supervisor is Robert Longo, Assistant Director, Personnel Security, GS-15.

4. Were you aware that Tyrone Rodriguez, in September of 1994, began the process of filing a formal EEO complaint against INS?

4. I may have read in his file that he had filed an EEO complaint, o started to file an EEO complaint. My recollection was that it was relating to another Agency besides INS. I don't remember when I learned this information.

5. Please describe what your job responsibilities entail as a Personnel Security Specialist.

5. I will read background investigations for potential employees, and make determinations regarding the suitability of the individual for employment with INS relating to security issues.

Initials LK

Ex. 17

5. My job is to identify potential security issues from that background investigation, and then take steps to resolve, if possible any potential problems. This may involve making a telephone call to the individual to get additional information, or a personal lette for the same purpose. At the far extreme would be a formal letter asking the individual to show cause why he should be hired. There ar any number of areas that could be potential problems, such as past employment, financial issues or medical issues. There are standards used to make the determinations regarding suitability for security matters. Various factors are considered, such as the individual's conduct, trustworthiness and past employment. The Contract EEO Investigator has asked me to provide a copy of these standards, which I will attach to this affidavit.

6. Did you read the background investigation of Mr. Rodriguez? If so, when?

6. Yes, I did. Sometime in 1997.

7. Did you make any determinations regarding his suitability for employment?

7. I do not believe that I did.

8. Did you send any letter to Mr. Rodriguez, or make any telephone call telling him either that he would not, or might not be hired, because of something that was flagged in his background report?

8. No, I did not, to the best of my recollection.

9. Was there anything in Mr. Rodriguez's background report that woul have caused problems with him being hired?

9. There seems to have been some medical objection to him coming on board. This came from the Office of Personnel Management. I had no involvement. I am not able to discuss any of the specifics of thi

Init. [initials]

issue because of security considerations.

10. Did you make any decision or take any action in regard to Mr. Rodriguez that was designed to discriminate against him on the basis of reprisal for his prior EEO activity?

10. No.

I HAVE READ THE ABOVE STATEMENT CONSISTING OF 3 PAGES AND IT IS TRUE AND ACCURATE TO THE BEST OF MY KNOWLEDGE AND BELIEF. I UNDERSTAND THAT THIS STATEMENT IS NOT CONFIDENTIAL, AND THAT IT MAY BE SHOWN TO THE INTERESTED PARTIES.

Larry Kitt Jr.

Subscribed and sworn to

before me at Washington, D.C.

on this 14th day of January 1999

Witness or Notary

My Commission Expires April 30, 2002

Init