UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TYRONE RODRIGUEZ, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-359 (ESH) |
| | ) |
| MICHAEL CHERTOFF, | ) |
| Secretary, Department of | ) |
| Homeland Security, | ) |
| | ) |
|     Defendant. | ) |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Michael Chertoff ("Defendant" or "Agency"), through counsel, the United States Attorney for the District of Columbia, respectfully submits his reply to Plaintiff's "Notice of Change of Address and Plaintiff's Memorandum Opposition to Defendant's Motion for Summary Judgment. Plaintiff Also Files a Motion to Compel Discovery and Motion for a Continuance of Summary Judgement Attached [*sic*]" ("Pl.'s Opp."). Defendant responds to Plaintiff's "Motion to Compel Discovery and Motion for a Continuance of Summary Judgment" separately.

**ARGUMENT**

**I.     THERE IS NO GENUINE ISSUE AS TO ANY MATERIAL FACT**

In his Opposition, Plaintiff provides nine numbered paragraphs under the heading "Issues [of] Material Fact Which Preclude Summary Judgment," which provide the following facts: (1) Plaintiff was not selected by Defendant based on his background investigation, medical history and the recommendation of Dr. Bruce Butler, M.D.; (2) prior to Dr. Butler's recommendation, clinical psychologist Edmund Bartlett, "gave a positive recommendation and report" regarding Plaintiff's suitability; (3) Dr. Butler did not interview Plaintiff; (4) Bartlett did not interview

Plaintiff again after Dr. Butler made his recommendation regarding Plaintiff's suitability; and (5) Bartlett stated in a letter to Plaintiff dated October 26, 2000, that he did not recall speaking to Dr. Butler in 1997, and that he would not change his opinion of Plaintiff "based on 'here say' [sic] information from Dr. Butler" (Pl.'s Opp., Ex. 3).  While Defendant does not believe all of these facts are material, they are not disputed.  The remainder of Plaintiff's statements consist of opinion, unsubstantiated allegations, and assertions regarding his displeasure with the investigation, hearing and decision in his administrative EEO case.  Such statements do not constitute material facts.

Plaintiff does not contest Defendant's Statement of Material Facts as to Which There is No Genuine Issue, filed concurrently with Defendant's Motion for Summary Judgment ("Def.'s Mot.").  Therefore, they should be deemed admitted.  "In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h).  See also, Felder v. Johanns, 2007 U.S. Dist. LEXIS 38001, *3 (D.D.C. 2007); Arrington v. United States, 374 U.S. App. D.C. 189, 473 F.3d 329, 335 (D.C. Cir. 2006).  Those facts not controverted by Plaintiff include the following: Plaintiff told Defendant's background investigator that while employed by the Bureau of Prisons ("BOP") in Miami, Florida, from 1990 to 1993, he was subjected to harassment by other employees because they were jealous of him, and that these employees accused him of "being a pervert, a pimp, a drug dealer, and even a pedophile" (Def.'s Mot., Ex. F); Plaintiff told Defendant's background investigator that in 1993, he transferred to a prison in Colorado, where he was subjected to the same harassment from his new coworkers (Def.'s Mot., Ex. F); Plaintiff told Defendant's background investigator that he resigned from BOP and began working for the

Florida Department of Corrections ("DOC") in 1994, where he was again subjected to the same harassment from coworkers, and additionally accused of having AIDS (Def.'s Mot., Ex. F); in 1995, Plaintiff wrote a letter to the Secretary of DOC that was interpreted as threatening (Def.'s Mot., Ex. F); DOC thereafter sent a letter to psychiatrist R.E. Ballentine, M.D., indicating that DOC was concerned with Plaintiff's ability to perform his duties, his welfare, and the safety of other employees and requesting that Dr. Ballentine evaluate Plaintiff (Def.'s Mot., Ex. G); Dr. Ballentine evaluated Plaintiff and reported on May 31, 1995, that he believed Plaintiff suffered from "a DSM IV diagnosis of Delusional Disorder-Persecutory Type," and that Plaintiff's delusions interfered with his ability to deal rationally with other people on the job (Def.'s Mot., Ex. H); thereafter Plaintiff sought a second opinion from another psychiatrist, Lillian Saveedra, M.D., who prescribed an anti-psychotic drug to Plaintiff (Def.'s Mot., Ex. F); Plaintiff was dismissed by DOC (Def.'s Mot., Ex. F); when Plaintiff was examined on March 3, 1997, by clinical psychologist Ted Bartlett, who was requested by Defendant to examine Plaintiff during his background investigation, Bartlett agreed not to discuss the events surrounding Plaintiff's firing from DOC (Def.'s Mot., Ex. K); Bartlett's report makes no mention of the harassment Plaintiff claimed to have been subjected to while employed by both BOP and DOC (Def,'s Mot., Ex. K); Dr. Saveedra told Defendant's background investigator that she agreed with Dr. Ballentine's diagnosis of Plaintiff, but stated that she did not tell Plaintiff this because she was afraid of how he might react (Def.'s Mot., Ex. I, pp. 3-4); Ted Schwartz, ACSW, reviewed Plaintiff's background investigation materials and concluded that Bartlett did not have sufficient background information which would have allowed him to uncover Plaintiff's delusional disorder (Def.'s Mot., Ex. L, p. 2); after Dr. Butler recommended Defendant not hire Plaintiff (Def.'s Mot., Ex. O), Defendant submitted an Agency Request to Pass Over a Preference

3

Eligible to the Office of Personnel Management ("Agency's Request to OPM") (Def.'s Mot., Ex. Q); and OPM concluded that Plaintiff's medical condition presented an unacceptable safety and health risk, and was likely to adversely affect Plaintiff's ability to perform the full range of duties required of the position of Border Patrol agent.  Def.'s Mot., Ex. S.  Because there is no genuine issue as to any material fact presented in the parties' submissions, summary judgment is appropriate.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, (1986); Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995).

II.  **DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW**

    A.  **Plaintiff Cannot Establish a Prima Facie Case of Discrimination Based on National Origin**

To establish a *prima facie* case of discrimination for a non-selection, Plaintiff must show that (1) he is a member of a protected class; (2) he applied for and was qualified for an available position; (3) despite his qualifications he was rejected; and (4) either someone not of his protected class filled the position or the position remained vacant and the employer continued to seek applicants. See McDonnell Douglas, 411 U.S. at 802; Kolstad v. American Dental Association, 108 F.3d 1431, 1436 (D.C. Cir. 1997), rev'd in part on other grounds en banc, 139 F.3d 958 (D.C. Cir. 1998), en banc opinion vacated, 119 S. Ct. 2118 (1999).  As set forth in Defendant's Motion, the Agency determined that Plaintiff was not qualified for the position.  Plaintiff cannot show that he was qualified, nor that someone not of his protected class filled the position or that the position remained vacant and the Agency continued to seek applicants.

In his Opposition, Plaintiff states that he is "a veteran of the U.S. Army Combat Infantry, has a A.A. & B.S. Degree in Criminal Justice, was a former State of Florida Investigator, A State

4

Probation Officer, a Federal Correctional Officer[1], Federal Case Manager, and has held Security Officer positions [*sic*]," and was therefore qualified for the position of Border Patrol agent.  Pl.'s Opp., p.14.  However, Plaintiff's assessment of his own qualifications is not relevant. See Waterhouse v. District of Columbia, 124 F. Supp. 2d 1, 7 (D.D.C. 2000) (plaintiff "cannot establish pretext simply based on her own subjective assessment of her own performance"), aff'd, 353 U.S. App. D.C. 205, 298 F.3d 989 (D.C. Cir. 2002).  Rather, "[i]t is the perception of the decisionmaker which is relevant." Smith v. Chamber of Commerce of the United States, 645 F. Supp. 604, 608 (D.D.C. 1986) (noting also that "plaintiff's perception of himself, and of his work performance, is not relevant").  Velmenia Stanley, Chief, Border Patrol Hiring Unit, submitted the Agency's Request to OPM, in which Defendant objected to Plaintiff's eligibility based on his mental/emotional condition.  In her request, Ms. Stanley stated that "[a]ny mental or emotional condition affecting cognitive reasoning ability and judgmental processes which would impair the full performance of duties and responsibilities of the position is disqualifying[.] Def.'s Mot., Ex. Q, Ex. R, p. 2.  Furthermore, by letter dated March 9, 1998, Phillip Spottswood of OPM notified Plaintiff of OPM's conclusion that Plaintiff's medical condition presents an unacceptable safety and health risk and is likely to adversely affect his ability to perform the full range of duties required for the position of Border Patrol Agent.  Def.'s Mot., Ex. S.

   Plaintiff also cannot show that someone not of his protected class filled the position or that the position remained vacant and Defendant continued to seek applicants.  Plaintiff states that "[t]he agency openly admits that they hired quite considerably more Mexican American applicants than Puerto Rican Americans [*sic*]," but does not provide evidence supporting this

---

[1] Plaintiff admits, however, that he was "terminated" by DOC based on Dr. Ballentine's report that Plaintiff suffered from Delusional Disorder- Persecutory Type.  Pl.'s Opp, p. 5. This indicates that Plaintiff was not likely qualified for the position of correctional officer due to his diagnosis.

5

assertion. However, even if Defendant did hire more Mexican-Americans than Puerto Rican-Americans, there is no evidence that a Mexican-American filled the position for which Plaintiff applied. Additionally, as provided during the processing of Plaintiff's EEO complaint, Defendant did not collect information regarding applicants whose national origin is Puerto Rican. Def.'s Mot., Ex. U, pp. 2-3.

### B.    Plaintiff Cannot Establish a Prima Facie Case of Discrimination Based on Disability

Plaintiff also contends that Defendant did not hire him because Defendant regarded him as having a disability. Under this theory, Plaintiff must first show that: (1) he was perceived to have a physical or mental impairment, and (2) the impairment was perceived to substantially limit one or more of his major life activities. Mack v. Strauss, 134 F. Supp. 2d 103, 110, (D.D.C. 2001) (citing Siragy v. Georgetown Univ., 1999 U.S. Dist. LEXIS 21021, 1999 WL 767831, *4 (D.D.C. Aug. 20, 1999)). While Defendant agrees that it perceived Plaintiff as having a mental impairment, Plaintiff cannot, as a matter of law, show that this impairment was perceived by Defendant to substantially limit one or more of Plaintiff's major activities.

Plaintiff argues that "Dr. Butler's report in and itself establishes a record of impairment (delusional disorder) which effected the major life function of working and perceived him as not being able to perform a broad range of jobs [*sic*]." Pl.'s Opp., p.10. However, to establish that an impairment substantially limits the ability to work, Plaintiff must "allege and prove that in his particular circumstances … his impairment prevents him from performing a 'substantial class' or 'broad range' of jobs otherwise available to him." Thompson v. Rice, 422 F. Supp. 2d 158, 171 (D.D.C. 2006) (citing Duncan v. Washington Metro. Area Transit Auth., 240 F.3d 1110, 1115 (D.C. Cir. 2001)). To be substantially limited in working, "one must be precluded from more

6

than one type of job, a specialized job, or a particular job of choice." Id., (citing Sutton v. United Air Lines, Inc., 527 U.S. 471, 492 (1999)).   In making its determination, a court may consider factors such as "the geographical area to which the individual has reasonable access and 'the number and types of jobs utilizing similar training, knowledge, skills or abilities, within the geographical area, from which the individual is also disqualified.'" Id. (citing Duncan, 240 F.3d at 1114).   The plaintiff must "produce some evidence of the number and types of jobs in the local employment market in order to show that he is disqualified from a substantial class or broad range of such jobs." Id. (citing Duncan 240 F.3d at 1115-16.)   Plaintiff has made no such showing here.[2]

### C. Plaintiff Cannot Establish a Prima Facie Case of Retaliation Based on Prior EEO Activity

Plaintiff carries the initial burden of establishing a *prima facie* case of retaliation by showing (1) he engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action. Woodruff v. Peters, 482 F.3d 521, 529 (D.C. Cir. 2007) (citing to Smith v. District of Columbia, 430 F.3d 450, 455 (D.C. Cir. 2005)).

In his Opposition, Plaintiff does not argue that he was subjected to retaliation.  His only mention of his EEO activity is in the section of his Opposition entitled, "Issues Material Fact Which Preclude Summary Judgment [*sic*]," wherein Plaintiff states:

> The agency also contends that key official did not know of RODRIGUEZ prior EEOC activity, which cannot be believed due to the fact that the second page of the background report, clearly states ISSSUE: EEOC Activity, BOP, and Dr. Butler testified under oath at the hearing that he was aware of RODRIGUEZ

---

[2] Plaintiff further states that "[r]efusing to consider a plaintiff for a non law enforcement position is further evidence that the defendant regards the plaintiff as substantially limited in the major life activity of working."  However, Plaintiff provides no evidence that Defendant refused to consider Plaintiff for a non-law enforcement position.

7

>prior EEOC activity, Statement made under the penalty of perjury inliu of submitting 600 pages of transcripts [*sic*]. See exhibit 4.

Pl.'s Opp., p. 6.

Defendant does not contend that it did not know of Plaintiff's prior EEO activity. Plaintiff is correct that the Agency's background investigation mentions that Plaintiff told the investigator that he was fired from his position at DOC because "he was complaining of harassment and because of retaliation for filing a complaint against [DOC] with the EEOC." Def.'s Mot., Ex. F, p. 2. However, Plaintiff has not shown that there was a causal link between the protected activity and the adverse action.

>**D.    The Agency Had a Legitimate, Non-Discriminatory Reason for Not Selecting Plaintiff and Plaintiff Cannot Establish that Discrimination was a Motivating Factor in his Nonselection**

In Fogg v. Gonzales, 492 F.3d 447 (D.C. Cir. 2007), the D.C. Circuit held, *inter alia*, that the 1991 amendments to Title VII codified two alternative ways of establishing liability for intentional discrimination: (1) a single motive theory requiring that the plaintiff establish that discrimination was the "sole" or "but for" reason for the challenged employment action; and (2) a "mixed-motive" theory requiring only that the plaintiff demonstrate that discrimination played a "motivating part" or was a "substantial factor" in the employment decision. Id. at 451. Under either theory, plaintiff must demonstrate discrimination by a preponderance of the evidence[3] and may rely on direct or circumstantial evidence to meet that burden. Desert Palace, Inc. v. Costa, 539 U.S. 90, 92-102 (2003).

---

[3] "Preponderance of the evidence" means such evidence as, when weighed against that opposing it, has the more convincing force that something is so. Hopkins v. Price Waterhouse, 737 F. Supp. 1202 (D.D.C. 1990), *aff'd* 920 F.2d 967 (D.C. Cir. 1990); Metropolitan Stevedore Company v. Rambo, 521 U.S. 121, 137 n.9 (1997). "[W]hen the evidence is evenly balanced, the [party with the burden of persuasion] must lose." Id.

8

In the absence of direct evidence, Plaintiff may attempt to establish that he was the victim of intentional discrimination by relying on circumstantial evidence analyzed using the scheme first set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973).[4]  Under that scheme, the plaintiff must first, by a preponderance of the evidence, establish a prima facie case of discrimination.  See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993).  If the employee succeeds, the employer then must introduce evidence of a legitimate, nondiscriminatory reason for its action.  See McDonnell Douglas, 411 U.S. at 802.  Once it is established that both parties have met their respective burdens of production (i.e., plaintiff by presenting a prima facie case and defendant by producing a non-discriminatory reason for its actions), the burden shifting scheme becomes irrelevant.  Hicks, 509 U.S. at 510.  Then, the plaintiff must establish, by a preponderance of the evidence, that "race, color, religion, sex, or national origin was a motivating factor for any employment practice."  Desert Palace, Inc. v. Costa, 539 U.S. 90, 101 (2003) (citing 42 U.S.C. § 2000e-2(m)).

Even if Plaintiff were able to establish a *prima facie* case of discrimination based on national origin, perceived disability, or reprisal for prior EEO activity, Defendant had a legitimate, non-discriminatory and non-retaliatory reason for not selecting Plaintiff in that Plaintiff was not qualified for the position due to his mental disorder.  See Def.'s Mot., pp. 18-19.  The undisputed facts illustrate that plaintiff cannot demonstrate that discrimination was a motivating factor, much less that it was the sole motivating factor in the challenged decision.
 Plaintiff argues:

> Defendant['s] claim that it did not hire RODRIGUEZ because of his background check and Dr. Butler's report, there own employee and Medical Review Officer, General Physician, not a qualified expert in the precise field in question are

---

[4]  Reliance on the McDonnell Douglas scheme for testing the viability of plaintiff's circumstantial evidence is not limited to the "single-motive" theory of liability.  See Fogg v. Gonzales, 492 F.3d 447, 451 n.*

9

> pretext for discrimination because defendant failed to follow its own policies and procedures by not allowing RODRIGUEZ to know about Dr. Butler's assessment, not allow Rodriguez to be properly reexamined by Dr. Bartlett or any agency psychologist in the field of expertise, not reviewing RODRIGUEZ employments from 1995 to 1997 with a history of employment in Security and Private Investigations with high level apprehensions and investigations during the current instant period in question, not providing verifiable medical reports from his hearsay statements of negative opinions of Dr. Bartlett, Dr. Inwald, Dr. Saavedra, and Dr. Ballentine which were always absent and proven by sworn affidavits to be false [*sic*].

Pl.'s Opp., p.15.

Plaintiff provides without reference, Exhibit 6, the text of 5 C.F.R. § 731.302. Presumably, Plaintiff believes this regulation contains the "policies and procedures" the Agency allegedly failed to follow. However, 5 C.F.R. § 731 et seq. addresses final suitability actions and is irrelevant to this case. Section 731.301(a) provides, "Coverage. This subpart sets forth the procedures to be followed when OPM proposes to take, or instructs an agency to take, a final suitability action against an applicant, appointee or employee." As set forth in the Agency's Request to OPM, Defendant objected to Plaintiff on the basis of his "qualifications," not his "suitability." Def.'s Mot., Ex. Q. Therefore, Plaintiff's reliance upon 5 C.F.R. § 731 et seq. is misplaced. Rather, 5 C.F.R. § 339 et seq. addresses medical qualification standards and is applicable here. 5 C.F.R. § 339.102(c) provides that "[f]ailure to meet a properly established medical standard or physical requirement under this part means that the individual is not qualified for the position…." As set forth in the Agency's Request to OPM, "[a]ny mental or emotional condition affecting cognitive reasoning ability and judgmental processes which would impair the full performance of duties and responsibilities of the position is disqualifying[.]" Def.'s Mot., Ex. Q, p. 2.

Additionally, Plaintiff has not provided any evidence supporting his contention that Dr. Butler was "not a qualified expert," or that the opinions of Dr. Inwald, Dr. Saavedra, and Dr. Ballentine were "proven by sworn affidavits to be false." Pl.'s Opp., p.15. Unsubstantiated allegations create no genuine issue of fact and will not withstand summary judgment Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993); see also Keeley v. Small, 391 F. Supp. 2d 30, 49 (D.D.C. 2005) ("plaintiff's unsubstantiated and self-serving statement . . . is not sufficient to create a genuine issue as to material fact").

## CONCLUSION

For the reasons stated herein and in his Motion, Defendant respectfully requests that he be granted summary judgment on all claims herein.

Respectfully submitted,

\_\_\_/s\_/_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


\_\_/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


\_\_/s/_____
ALEXANDER D. SHOAIBI,
Assistant United States Attorney
501 Third Street, N.W., Rm E-4218
Washington, D.C. 20530
(202) 514-7236