UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TYRONE RODRIGUEZ, | ) <br> ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) Civil Action No. 06-359 (ESH) <br> ) |
| MICHAEL CHERTOFF, | ) <br> ) <br> ) |
| Defendant. | ) <br> ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Tyrone Rodriguez, has filed a *pro se* action against the Secretary of the Department of Homeland Security ("defendant" or "Agency"), alleging national origin discrimination and retaliation in violation of Title VII and disability discrimination in violation of the Americans with Disabilities Act ("ADA"). 42 U.S.C. § 12131 *et seq.*  Currently before the Court is defendant's motion for summary judgment and plaintiff's opposition thereto. Upon careful consideration of the motion and the parties' memoranda, the applicable law, and the entire record, the Court grants defendant's motion.

### BACKGROUND

In 1992 plaintiff applied for the position of Border Patrol Agent with the Immigration and Naturalization Service.[1] (Def.'s Statement of Material Facts for Which There Is No Genuine Issue

---

[1] The Immigration and Naturalization Service was abolished in March 2003, and its functions were transferred to three newly created agencies within the Department of Homeland Security. The U.S. Border Patrol was transferred to U.S. Customs and Border Protection, an agency within the Department of Homeland Security. Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 471, 116 Stat. 2135, 2192, 2205 (codified at 6 U.S.C. §§ 251, 271, 291

["Def.'s Facts"] at ¶ 1; Def.'s Ex. A [Rodriguez Affidavit] at p. 2-3.)  At that time that he applied, Rodriguez held two college degrees, was fluent in Spanish, and had previous experience working with the Bureau of Prisons as a Senior Correctional Officer/Case Manager and as a "State of Florida Investigator."  (Compl. at 2.)  He was also an Army veteran. *Id.*  Rodriguez claims that at the time he applied to the agency, he was entitled to priority placement as a three year federal employee. *Id.*

In August 27, 1993, the agency notified plaintiff by letter that because no trainee agents had been hired in almost a year, the agency was updating its "current inventory of candidates to determine interest and availability for the position." (Def.'s Facts at ¶ 2; Def.'s Ex. B [Aug. 27, 1993 Letter from INS to Tyrone Rodriguez].)  Plaintiff was instructed to fill out and return the attached inventory form to indicate his continued interest in the position. *Id.*  On July 11, 1994, plaintiff was sent a second letter informing him that the INS had adopted a new process for screening applications for Border Patrol Agents, and that as a result, plaintiff would have to reapply through the new system. (Def.'s Facts at ¶ 3; Def.'s Ex. C [July 11, 1994 Letter from INS to Tyrone Rodriguez].)

On July 27, 1994, plaintiff contacted and was interviewed by an Equal Employment Opportunity ("EEO") counselor in the agency's EEO office.   (Def.'s Facts at ¶ 4.)  Plaintiff explained to the counselor that he had completed most of the application process prior to receiving the second letter instructing him to reapply.  (Def.'s Ex. D [Dept. Of Justice Report of EEO Counseling] at 2.)  He believed that he had not been selected because he was Hispanic, and maintained that he knew other candidates who were white who had completed the process and started training. *Id.*  On August 11, 1994, plaintiff was sent a letter notifying him that he had been tentatively selected for the position of Border Patrol Agent (Trainee) pending satisfactory

---

(2006)).

completion of his security clearance, medical examination, and drug testing. (Def.'s Ex. E [August 11, 1994 Letter from INS to Rodriguez].)

As part of the background investigation, the agency conducted an interview with plaintiff on March 27, 1996. (Def.'s Ex. F [Personal Subject Interview] at 1.) During the interview, plaintiff told the investigator that while employed with the Bureau of Prisons in Miami, Florida, he was harassed by supervisors, correctional officers, and inmates who were envious that plaintiff was being considered for a job with the Drug Enforcement Agency. *Id.* Plaintiff related that they accused him of being "a pervert, a pimp, a drug dealer, and even a pedophile." *Id.* He explained to the investigator that he was ultimately not hired by the DEA because of a hiring freeze, but that the harassment continued unabated and even after plaintiff transferred from Miami to the federal prison in Florence, Colorado. *Id.* Plaintiff believed that his supervisors and co-workers from Miami must have contacted employees in Colorado to spread the accusations. *Id.* Plaintiff filed an internal complaint with BOP, but was unsatisfied with the results, so he filed a complaint with the EEOC shortly before resigning from that position in September 1994. *Id.*

Plaintiff then took a position with the Florida Department of Corrections, where he told the investigator that he again experienced harassment similar to that which he had endured while working for the BOP. *Id.* at 2. He was additionally accused of having tuberculosis and AIDS. *Id.* Plaintiff speculated that someone at BOP was retaliating against him and requested that the Florida DOC conduct an internal investigation. *Id.* In May 1995 plaintiff wrote a letter to the Secretary of DOC complaining about the harassment. *Id.* at 3. He wrote the letter after drinking and while

angry, and the Secretary interpreted it as threatening. *Id.*[2] As a result, plaintiff underwent an evaluation by a psychiatrist, Dr. Ballentine, and was thereafter dismissed for failing to complete successfully his probationary period. *Id.*

After he was dismissed, plaintiff requested a copy of his psychiatric evaluation from Dr. Ballentine, which he provided to the investigator during the personal subject interview. *Id.* Dr. Ballentine concluded that plaintiff suffered from "a DSM IV diagnosis of Delusional Disorder - Persecutory Type" and determined that plaintiff's delusions interfered with his ability to deal rationally with his colleagues and supervisors on the job. (Def.'s Ex. H [Dr. Ballentine's Psychiatric Evaluation of Rodriguez] at 2.) Plaintiff told the investigator that he went to another psychiatrist, Dr. Saavedra, for a second opinion. (Def.'s Ex. F at 5.) Dr. Saavedra prescribed medication, but plaintiff decided not to take it when he learned it was an anti-psychotic drug. *Id.* Plaintiff did not seek further psychiatric evaluation or treatment. *Id.* After the personal subject interview, an agency investigator contacted Dr. Saavedra, who stated that she agreed with Dr. Ballentine's diagnosis, but did not advise plaintiff because she was afraid of how he might react. (Def.'s Ex. I [Report of Investigation] at 27-28.)

On February 21, 1997, the Agency informed plaintiff that he would be required to undergo

---

[2] In the letter, plaintiff wrote:

> I no longer feel that I can tolerate this situation, and if I do something irrational, I want to feel justified that I have tried my best to inform everyone and put a stop to this behavior. In the event something happens, I am prepared to be fired, and also declare bankruptcy. If at worst I get arrested for assault, god forbid, everyone including the Governor has been informed of my situation.

(Def.'s Ex. G [Letter from Florida Dept. of Corrections to Dr. Ballentine] at 1.)

a psychiatric evaluation before consideration of his application could be completed. (Def.'s Ex. J [Feb. 21, 1997 Letter from INS to Rodriguez].) Dr. Edmund S. Bartlett, Ph.D., conducted a psychological examination, during which he agreed with plaintiff not to discuss the conditions under which plaintiff had been fired from DOC. (Def.'s Ex. K [Bartlett's Psychological Report] at 281.) Bartlett's report includes no mention of the harassment plaintiff experienced at BOP or DOC. *Id.* Bartlett found plaintiff within the range of acceptability for the position of Border Patrol Agent. *Id.* at 283.

On May 21, 1997, Ted Schwartz, ACSW, conducted a review of plaintiff's application and concluded, based on plaintiff's past work history and the assessments of Drs. Ballentine and Saavedra, that plaintiff suffers from a delusional disorder. (Def.'s Ex. L [Report of Ted Schwartz] at 1.) Schwartz determined that Dr. Bartlett was unable to discover plaintiff's delusional disorder because he failed to question plaintiff about his previous job experiences and because plaintiff misrepresented certain parts of his work history. (*Id.* at 2.)

In May 2007 plaintiff was informed by Security Officer Larry Kitt that plaintiff was unlikely to be hired by the Agency based on the results of plaintiff's background investigation. (Def.'s Ex. M [Report of EEO Counseling] at 6.) Kitt explained to plaintiff that Kitt was not responsible for the final employment decision, but that based on his personal experience, plaintiff was unlikely to be accepted for employment with the Agency. *Id.* On June 2, 1997, plaintiff sought EEO counseling, alleging that he was discriminated against on the basis of his national origin (Puerto Rican) and retaliated against for his prior EEO activity. *Id.* at 1-2. On August 14, 1997, plaintiff filed his formal EEO complaint. (Def.'s Ex. N [EEO Complaint].)

On November 12, 1997, Agency Medical Review Officer Bruce Butler submitted his report,

which concluded that plaintiff's diagnosis of delusional disorder was sufficiently supported by the evidence in his application; that a delusional disorder is incompatible with the performance of the duties and responsibilities of a Border Patrol Agent; and that plaintiff should not be hired as a Border Patrol Agent. (Def.'s Ex. O [Report of Bruce N. Butler] at 18-19.) On January 15, 1998, Velmenia Stanley, Chief of the Border Patrol Hiring Unit, submitted an "Agency Request to Pass Over a Preference Eligible or Object to an Eligible to the Office of Personnel Management," explaining why plaintiff's mental condition is incompatible with the duties of a Border Patrol Agent. (Def.'s Ex. Q [Agency Request]). By letter dated March 9, 1998, Phillips Spottswood of the Office of Personnel Management ("OPM") notified plaintiff of OPM's conclusion that his medical condition presents an unacceptable safety and health risk and would likely adversely affect his ability to perform the full range of duties required of a Border Patrol Agent. (Def.'s Ex. S [Letter from OPM to Rodriguez].)

On June 8, 2000, an EEOC administrative judge granted plaintiff's motion to amend his complaint to include his disability discrimination claim. (Def.'s Ex. T [EEOC Order].) Plaintiff received his right to sue letter from the EEOC on or about September 29, 2004, and filed a complaint with this Court on December 27, 2005. Defendant then filed the instant motion for summary judgment. No discovery has taken place, but both parties have submitted documentary evidence to support their respective positions.

## ANALYSIS

### A.   *Legal Standard*

Defendant has moved to dismiss for failure to state a claim, or alternatively, for summary

judgment. "Because both parties have submitted and relied upon materials outside the pleadings . . . defendant's motion will be treated as a summary judgment motion under Federal Rule of Civil Procedure 56." *Adams v. Rice*, 484 F.Supp.2d 15, 19 (D.D.C. 2007) (citing Fed. R. Civ. P. 12(b)). Summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *see also Wash. Post. Co. v. United States Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989). The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

### B.    *Discrimination Claim Under the Rehabilitation Act*

Plaintiff argues that defendant discriminated against him on the basis of his perceived disability.[3] The Rehabilitation Act protects an "otherwise qualified" federal worker against discrimination "solely by reason of his or her disability." 29 U.S.C. § 794(a). To establish a *prima*

---

[3] Plaintiff sets out his claim as one for relief under the ADA. Defendant correctly notes that plaintiff may not seek relief under the ADA because the statute is not applicable to the agency because the Rehabilitation Act of 1973 ("RHA") provides the exclusive remedy for employment discrimination based on disability for federal employees. *Ward v. Kennard*, 133 F.Supp.2d 54, 57 (D.D.C. 2000). Following the well-established rule that the complaint of a *pro se* plaintiff must be liberally construed, *see Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007), the Court will consider plaintiff's allegations of disability discrimination under the RHA.

*facie* case of employment discrimination under the Rehabilitation Act based on disparate treatment, plaintiff must show that he (1) is an individual who has a disability under the Act's definition (2) who, with or without reasonable accommodation, can perform the essential functions of the position, and (3) who suffered an adverse employment action due to his disability. *Duncan v. WMATA*, 240 F.3d 1110, 1114 (D.C. Cir. 2001) (en banc). A person is considered disabled under the Rehabilitation Act if he "has a physical or mental impairment which substantially limits one or more of [his] life activities; has a record of such an impairment; or is regarded as having such an impairment." 29 U.S.C. § 705(20)(B). In the present case, plaintiff contends that defendant regarded him as having an impairment which substantially limits a major life activity.

"In 'regarded as' cases, not every adverse employment action gives rise to liability under the [RHA]." *Gasser v. District of Columbia*, 442 F.3d 758, 763 (D.C. Cir. 2006). Rather, under this theory, plaintiff must show that: (1) he was perceived to have a physical or mental impairment, and (2) the impairment was perceived to substantially limit one or more of his major life activities. *Mack v. Strauss*, 134 F.Supp.2d 103, 110 (D.D.C. 2001). While conceding that it regards plaintiff as having a mental impairment, defendant maintains that plaintiff cannot demonstrate that this impairment was perceived as substantially limiting one or more of plaintiff's major life activities. (Def.'s Mot. at 17.)

Although not specified by plaintiff in his complaint, the Court gathers from his pleading that plaintiff believes that the major life activity at issue in this case is that of "working." (Pl.'s Opp'n at 12.) Both the Supreme Court and the D.C. Circuit have assumed without deciding that working is a major life activity. *See Sutton v. United Air Lines Inc.*, 527 U.S. 471, 492 (1999); *Duncan*, 240 F.3d at 1114 n. 1. To establish that an impairment substantially limits the ability to work, a plaintiff

must "allege and prove that in his particular circumstances . . . his impairment prevents him from performing 'a substantial class' or 'broad range' of jobs otherwise available to him." *Duncan*, 240 F.3d . To meet this burden, the D.C. Circuit has held that a plaintiff must

> produce some evidence of the number and types of jobs in the local employment market in order to show that he is disqualified from a substantial class or broad range of such jobs; that is, the total number of such jobs that remain available to the plaintiff in such a class or range in the relevant market must sufficiently low that he is effectively precluded from working in that class or range.

*Id.* at 1115-16. *See also Thompson v. Rice*, 422 F.Supp.2d 158, 171 (D.D.C. 2006). Plaintiff has failed to produce *any* evidence demonstrating that he is disqualified from a substantial class or broad range of jobs within his local employment market,[4] and therefore he has failed to create a material issue of fact as to whether defendant regarded him as having an impairment that substantially limits one or more major life activities.[5]

---

[4] Plaintiff argues instead that defendant's failure to offer him another position within the Department of Homeland Security "is evidence that the employer regarded [him] as substantially limited in the major life activity of working." (Opp'n at 12.) Plaintiff does not, however, offer any evidence that he applied for or was denied any position other than Border Patrol Agent. Regardless, even if plaintiff could show that his perceived disability disqualified him from working for the Department of Homeland Security, this would be insufficient to show that he is "precluded from more than one type of job, a specialized job, or a particular job of choice." *Sutton*, 527 U.S. at 492. *See Adams*, 484 F.Supp.2d at 23 (rejecting plaintiff's claim that working in the Foreign Service is a "broad class of jobs."). Plaintiff would not be precluded from working, as he has in the past, in other law enforcement and security positions. Furthermore, plaintiff expressed willingness to consider other non-law enforcement positions within the Agency, such as "Case Manager, Immigration Examiner, and Immigration Analyst" (Opp'n at 12), which would further expand the range of positions available to him.

[5] In fact, the record indicates that defendant evaluated and rejected plaintiff only for the position of Border Patrol Agent. Dr. Butler's report outlines the requirements of the position and explains, in detail, the effect that a delusional disorder could have on an agent's ability to perform these duties. (*See* Gov't Ex. O.)

### C.    *Discrimination and Retaliation Claims Under Title VII*

Plaintiff also argues that defendant discriminated against him on the basis of his national origin and retaliated against him for filing his complaint with the EEOC. Title VII prohibits an employer from discriminating on the basis of race, color, religion, sex, or national origin in hiring decisions, in compensation, and conditions of employment, and in classifying employees in a way that would adversely affect their status as employees. 42 U.S.C. § 2000e-16. To establish a *prima facie* case of discrimination based upon non-selection, a plaintiff must demonstrate: (1) he is a member of a protected class; (2) that he applied and was qualified for an available position; (3) that despite his qualifications, he was rejected, and (4) someone filled the position or it remained vacant and the employer continued to seek applicants. *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).

Title VII also prohibits an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this title, or because [he] has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation, plaintiff must demonstrate that: (1) he engaged in a statutorily protected activity; (2) the employer took an adverse personnel action; and (3) a causal connection existed between the two. *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999).

Once a plaintiff has established a *prima facie* case of discrimination or retaliation, the burden shifts to defendant to articulate some legitimate, nondiscriminatory reason for its actions. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Defendant's burden is only one of production, and it "need

not persuade the court that it was actually motivated by the proffered reasons." *Id.* If defendant is successful, then "the *McDonnell Douglas* framework -- with its presumptions and burdens -- disappear[s], and the sole remaining issue [is] discrimination *vel non*." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000) (internal citations and quotation marks omitted). At that point, plaintiff has the opportunity to prove, by a preponderance of the evidence, that defendant's proffered nondiscriminatory reason was not the true reason for the employment decision. *Burdine*, 450 U.S. at 256; *see also Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003) ("[a]lthough the *McDonnell Douglas* framework shifts intermediate evidentiary burdens between the parties, [t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.") (internal citations and quotation marks omitted). "At this stage, if [plaintiff] is unable to adduce evidence that could allow a reasonable trier of fact to conclude that [defendant's] proffered reason was a pretext for discrimination [or retaliation], summary judgment must be entered against [plaintiff]." *Paquin v. Fed. Nat'l Mortgage Ass'n*, 119 F.3d 23, 27-28 (D.C. Cir. 1997).

Defendant concedes that as a Puerto Rican male who applied for the position of Border Patrol Agent and was rejected, plaintiff can satisfy the first two elements of his *prima facie* case for discrimination. Defendant argues, however, that plaintiff cannot demonstrate that he was qualified for the position of Border Patrol Agent, given his mental health history. Plaintiff does not challenge defendant's contention that a person with delusional disorder would not be qualified to serve as a Border Patrol Agent. Rather, he argues that he was qualified and that defendant erred in its diagnosis of his mental condition. The Court need not resolve this factual

-11-

dispute, nor is it material to the resolution of plaintiff's Title VII discrimination claim. Regardless of whether plaintiff can make out his *prima facie* case, defendant has articulated a legitimate, non-discriminatory reason for its hiring decision. The question, therefore, is whether plaintiff can show that defendant's reliance on its diagnosis was pretextual.

Plaintiff offers two arguments to support his position that defendant's proffered rationale was pretextual. First, he argues that pretext may be inferred because defendant failed to follow its own policies and procedures in evaluating plaintiff's application. (Opp'n at 15.) Plaintiff cites to 5 C.F.R. § 731.302, which provides that "[b]efore OPM shall take a final suitability disqualification action against an applicant . . . under this Part, the person against whom the action is proposed shall be given notice of the proposed action, an opportunity to answer, notice of the final decision of the action, and notice of rights of appeal, if any . . . ." 5 C.F.R. § 731.302(e). (Pl.'s Ex. 6 [5 C.F.R. § 731.302].) Plaintiff argues that defendant's failure to comply with this process should give rise to an inference of pretext. (Opp'n at 15.) As defendant explains however, this Part is relevant only to "suitability" determinations, which assess an individual's "character and conduct." 5 C.F.R. § 731.202(a). Thus, this section applies when OPM finds an individual unsuitable due to, *inter alia*, misconduct in employment, criminal misconduct, material intentional false statement, or drug or alcohol abuse. *See* 5 C.F.R. § 731.202(b). Medical disqualifications are covered by 5 C.F.R. § 339 *et seq.*, and plaintiff has not demonstrated, nor could he, that defendant failed to comply with the process outlined therein. Plaintiff also argues that pretext may be inferred because Dr. Butler was not a qualified expert and because the opinions of the other doctors were "proven by sworn affidavits to be false." (Pl.'s Opp'n at 15.) These allegations are unsubstantiated and therefore cannot create a

genuine issue of material fact sufficient to survive summary judgment.  *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993).  Accordingly, plaintiff has failed to introduce evidence sufficient to demonstrate a genuine issue of material fact as to his Title VII discrimination claim.

Plaintiff's retaliation claim fails for similar reasons.[6]  Even assuming that plaintiff could make out his *prima facie* case (which he cannot),[7] he has failed to introduce any evidence that would permit a trier of fact to believe that defendant's proffered rationale for its decision was pretextual or that its decision was motivated by a retaliatory animus.

---

[6] Plaintiff has not contradicted defendant's motion on the retaliation claim, and thus it may be treated as conceded.  "It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by a defendant, a court may treat those arguments that the plaintiff failed to address as conceded."  *Hopkins v. Women's Div., General Bd. of Global Ministries*, 238 F.Supp.2d 174, 178 (D.D.C. 2002) (citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997).  *See also Day v. D.C. Dep't of Consumer & Regulatory Affairs*, 191 F.Supp.2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.").  However, since plaintiff is proceeding *pro se*, the Court will address his claim on the merits.

[7] Plaintiff has offered no evidence to establish a causal link between either of his EEO complaints and the decision not to hire him.  Plaintiff filed his first EEO complaint in July 1994.  The decision not to hire him was not made until approximately three and a half years later, in early 1998, far outside the time frame for which causation may be presumed.  *See Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007) (inferring causality when retaliatory event occurred less than a month after protected activity)*; Clark County School Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing with approval cases finding temporal proximity of four and three months insufficient to demonstrate a causal connection).  Furthermore, the only action that did occur within a reasonable period after plaintiff's complaint was filed was his notification that he had been tentatively selected for the position of Border Patrol Agent pending completion of the Agency's security and medical requirements.

Plaintiff filed a second EEO complaint in May 2007 *after* learning from Officer Kitt that he was unlikely to be hired based on the results of his background investigation, and at least seven months before the final decision not to hire him was made.  Plaintiff has offered no evidence from which a reasonable fact finder could conclude that plaintiff was not hired because of this complaint and not, as Kitt informed plaintiff, because of the results of his background check.

Although plaintiff's frustration with what he believes is an inaccurate diagnosis is understandable, the Court may not "second-guess an employer's personnel decision absent [a] demonstrably discriminatory motive." *Fischbach v. D.C. Dep't of Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting *Milton v. Weinberger*, 696 F.2d 94, 100 (D.C. Cir. 1982)). Because there is no evidence of such a motive here, summary judgment will be granted as to plaintiff's Title VII claims.

## CONCLUSION

For the reasons explained herein, defendant's [31] motion for summary judgment is GRANTED,[8] and the above-captioned case is dismissed with prejudice.

---

[8] Plaintiff's [39] motion to compel discovery and motion for continuance are DENIED. Plaintiff has identified three types of material that he seeks to obtain through discovery. First, plaintiff argues that he needs discovery in order to obtain the medical reports upon which Dr. Butler relied in drafting his report. (Pl.'s Motion to Compel at 1.) As defendant explains, all the reports upon which Dr. Butler relied in forming his opinion of plaintiff were provided as exhibits to defendant's motion for summary judgment. (Def.'s Opp'n to Pl.'s Mot. to Compel at 2-3.) Second, plaintiff argues that he needs discovery in order to obtain "impartial expert opinions and reports." (Pl.'s Motion to Compel at 1.) As the Court has explained, however, the accuracy of Dr. Butler's diagnosis is not at issue in this case, s*ee* Section C *supra*, and additional expert opinions would therefore be irrelevant to its outcome. Finally, plaintiff maintains that he needs "sworn affidavits or depositions contradicting Dr. Butler['s] report and previous sworn testimony . . . ." (Pl.'s Motion to Compel at 1.) It is well-established, however, that absent "some reason to question the veracity of affiants, [plaintiff]'s desire to 'test and elaborate' affiants' testimony" does not justify discovery. *Dunning v. Quander*, -- F.3d -- , 2007 WL 3404022, at * 2 (D.C. Cir. Nov. 16, 2007) (quoting *Strang v. U.S. Arms Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir. 1989) (alteration in original)). Because plaintiff has offered no grounds for questioning the veracity of any of the medical reports presented, no further discovery is required.

Plaintiff has also filed a motion requesting an extension of time to file a surreply. The Court will construe plaintiff's motion as a motion for leave to file a surreply. "The standard for granting leave to file a surreply is whether the party making the motion would be unable to contest matters represented to the court for the first time in the opposing party's reply." *Lewis v.*

**This is a final appealable order**.  *See* Fed. R. App. P. 4(a).

_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date:   November 26, 2007

---

*Rumsfeld*, 154 F.Supp.2d 56, 61 (D.D.C. 2001).  Because defendant's reply presents no new arguments, plaintiff's [48] motion for a ten day extension of time to file a response to defendant's reply to opposition to motion of summary judgment is DENIED.